**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| STEPHANIE DORRIS and JOHN AXIOTAKIS, individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>v.<br><br>DANONE WATERS OF AMERICA,<br><br>                              Defendant. | Civil Action No. 7:22-cv-08717-NSR |

**DEFENDANT DANONE WATERS OF AMERICA'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS**
**<u>MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>**

Keara M. Gordon
Colleen Carey Gulliver
Haley D. Torrey*
**DLA PIPER LLP**
1251 Avenue of the Americas
New York, New York 10020
Tel.: (212) 335-4500
Fax: (212) 335-4501
keara.gordon@us.dlapiper.com
colleen.gulliver@us.dlapiper.com
haley.torrey@us.dlapiper.com

George Gigounas*
**DLA PIPER LLP**
555 Mission Street, Suite 2400
San Francisco, CA 94105
Tel.: (415) 836-2500
Fax.: (415) 836-2501
george.gigounas@us.dlapiper.com


*Admission application to be filed

*Attorneys for Defendant*
*Danone Waters of America*

# TABLE OF CONTENTS

Page

INTRODUCTION...................................................................................................1

FACTUAL BACKGROUND ...............................................................................3

    A.    The Carbon Trust Carbon Neutral Certification.........................................3

        1.    The 1L Box ......................................................................................3

        2.    The Single Bottle ............................................................................4

    B.    The Product's Carbon Footprint ..................................................................5

    C.    The Plaintiffs ...............................................................................................5

STANDARD OF REVIEW ...................................................................................6

ARGUMENT ..........................................................................................................7

    I.    The Product's Label is Not Misleading.......................................................7

       A.    The Product States it is Certified as "Carbon Neutral", Which is True. .....................8

       B.    No Reasonable Consumer Would Think Certified "Carbon Neutral" Means the Product Does Not Emit Any Carbon Dioxide During its Lifecycle. ..........................12

       C.    The Plaintiffs Cannot Rely on a Purported Violation of the FTC Green Guides. .......15

    II.    The Plaintiffs Fail to Plead an Injury. ......................................................17

    III.    The 93A Claim Fails. ................................................................................18

    IV.    The Plaintiffs Cannot Invoke New York's GBL.......................................20

    V.    The Fraud Claim Fails...............................................................................20

    VI.    The Breach of Implied Warranty Claims Fail. .........................................21

       A.    The Plaintiffs Do Not Plead Privity Under NY and California Law and The Claim is Barred by the Economic Loss Doctrine Under Massachusetts Law. .........................21

       B.    The Product Was Fit for Human Consumption. ........................................22

       C.    Danone Did Not Know of Any "Particular Purpose."...............................23

    VII.    The Unjust Enrichment Claim Fails..........................................................23

    VIII.    The Claim for Equitable Relief Fails. .......................................................24

    IX.    The Dismissal Should Be with Prejudice. .................................................25

CONCLUSION ....................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Andrade-Heymsfield v. NextFoods, Inc.*,
  2022 WL 1772262 (S.D. Cal. Apr. 27, 2022).........................................................................22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).......................................................................................................................6

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009) ......................................................................................................17

*Brumfield v. Trader Joe's Co.*,
  2018 WL 4168956 (S.D.N.Y. Aug. 30, 2018).........................................................................22

*Bush v. WellPet, LLC*,
  534 F. Supp. 3d 179 (D. Mass. 2021) ......................................................................................12

*Bynum v. Family Dollar Stores, Inc.*,
  592 F. Supp. 3d 304 (S.D.N.Y. 2022).................................................................................16, 17

*Camey v. Force Factor, LLC*,
  2016 WL 10998440 (D. Mass. May 16, 2016) ........................................................................20

*Campbell v. Drink Daily Greens, LLC*,
  2018 WL 4259978 (E.D.N.Y. Sept. 4, 2018) ...........................................................................1

*Caronia v. Philip Morris USA, Inc.*,
  715 F.3d 417 (2d Cir. 2013)........................................................................................................22

*Catalano v. BMW of N. Am., LLC*,
  167 F. Supp. 3d 540 (S.D.N.Y. 2016)................................................................................21, 23

*Chen v. Dunkin' Brands, Inc.*,
  954 F.3d 492 (2d Cir. 2020).........................................................................................................7

*In re Coca-Cola Prods. Mktg.*,
  2021 WL 3878654 (9th Cir. Aug. 31, 2021).............................................................................25

*Colella v. Atkins Nutritionals, Inc.*,
  348 F. Supp. 3d 120 (E.D.N.Y. 2018) .....................................................................................18

*Curtis v. 7-Eleven, Inc.*,
  2022 WL 4182384 (N.D. Ill. Sept. 13, 2022) .........................................................................16

*DaCorta v. AM Retail Grp., Inc.*,
  2018 WL 557909 (S.D.N.Y. Jan. 23, 2018) ......................................................................17, 18

*Daniel v. Mondelez Int'l, Inc.*,
    287 F. Supp. 3d 177 (E.D.N.Y. 2018) ..................................................12

*DiCroce v. McNeil Nutritionals, LLC*,
    2022 WL 16847696 (D. Mass. Nov. 10, 2022) ........................................9

*Dwyer v. Allbirds, Inc.*,
    598 F. Supp. 3d 137 (S.D.N.Y. 2022)............................................. *passim*

*Edlow v. RBW, LLC*,
    688 F.3d 26 (1st Cir. 2012) ......................................................................8

*Ferreira v. Sterling Jewelers, Inc.*,
    130 F. Supp. 3d 471 (D. Mass. 2015) ....................................................16

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013).....................................................................6

*Fink v. Time Warner Cable*,
    810 F. Supp. 2d 633 (S.D.N.Y. 2011).....................................................25

*Fink v. Time Warner Cable*,
    837 F. Supp. 2d 279 (S.D.N.Y. 2011).....................................................24

*Fitzgerald v. Polar Corp.*,
    2020 WL 6586628 (D. Mass. Nov. 10, 2020) ........................................22

*Gedalia v. Whole Foods Mktg. Servs., Inc.*,
    53 F. Supp. 3d 943 (S.D. Tex. 2014) ......................................................11

*Gordon v. Target Corp.*,
    2022 WL 836773 (S.D.N.Y. Mar. 18, 2022) ............................................9

*Gray v. Toyota Motor Sales, U.S.A.*,
    2012 WL 313703 (C.D. Cal. Jan. 23, 2012), *aff'd*, 554 F. App'x 608 (9th Cir.
    2014) ...................................................................................................8, 17

*Green v. SweetWorks Confections, LLC*,
    2019 WL 3958442 (S.D.N.Y. Aug. 21, 2019) ..........................................8

*Harris v. Pfizer, Inc.*,
    586 F. Supp. 3d 231 (S.D.N.Y. 2022).......................................................9

*Hesse v. Godiva Chocolatier, Inc.*,
    463 F. Supp. 3d 453 (S.D.N.Y. 2020).......................................................1

*Hill v. Roll Int'l Corp.*,
    195 Cal. App. 4th 1295 (Cal. Ct. App. 2011) ........................................23

*Hodsdon v. Mars, Inc.*,
   162 F. Supp. 3d 1016 (N.D. Cal. 2016), *aff'd*, 891 F.3d 857 (9th Cir. 2018) ........................17

*Ide v. Foreign Candy Co., Inc.*,
   2006 WL 3361525 (Mass. App. Ct. Nov. 15, 2006)................................................................22

*Izquierdo v. Mondelez Int'l, Inc.*,
   2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ..........................................................................18

*Jessani v. Monini N. Am., Inc.*,
   744 F. App'x 18 (2d Cir. 2018) .......................................................................................7, 15

*Kaufman v. Sirius XM Radio, Inc.*,
   751 F. Supp. 2d 681 (S.D.N.Y. 2010), *aff'd*, 474 F. App'x 5 (2d Cir. 2012)........................20

*Kennard v. Kellogg Sales Co.*,
   2022 WL 4241659 (N.D. Cal. Sept. 14, 2022) .......................................................................22

*Kennedy v. Mondelez Glob. LLC*,
   2020 WL 4006197 (E.D.N.Y. July 10, 2020) .........................................................................21

*In re KIND LLC "Healthy & All Natural" Litig.*,
   2022 WL 4125065 (S.D.N.Y. Sept. 9, 2022)..........................................................................15

*Klaehn v. Cali Bamboo, LLC*,
   2021 WL 3044166 (S.D. Cal. June 14, 2021), *aff'd*, 2022 WL 1830685 (9th
   Cir. June 3, 2022)...................................................................................................................22

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
   313 U.S. 487 (1941)..................................................................................................................7

*Kommer v. Bayer Consumer Health*,
   252 F. Supp. 3d 304 (S.D.N.Y. 2017), *aff'd*, 710 F. App'x 43 (2d Cir. 2018)........................9

*La Vigne v. Costco Wholesale Corp.*,
   284 F. Supp. 3d 496 (S.D.N.Y. 2018)................................................................................7, 8

*Laspesa v. Arrow Int'l, Inc.*,
   2009 WL 5217030 (D. Mass. Dec. 23, 2009) ........................................................................23

*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000)......................................................................................................6

*Makhnevich v. Bougopoulos*,
   2023 WL 197297 (E.D.N.Y. Jan. 15, 2023) ..........................................................................19

*Marino v. Coach, Inc.*,
   264 F. Supp. 3d 558 (S.D.N.Y. 2017)....................................................................................17

*Martelli v. Rite Aid Corp.*,
    2023 WL 2058620 (S.D.N.Y. Feb. 16, 2023) ..........................................................................9

*Mazella v. Coca-Cola Co.*,
    548 F. Supp. 3d 349 (S.D.N.Y. 2021) ..........................................................................8, 9, 22

*Moore v. Trader Joe's Co.*,
    4 F.4th 874 (9th Cir. 2021) ...........................................................................................11

*Myers v. Starbucks Corp.*,
    2020 WL 13302437 (C.D. Cal. July 29, 2020) ...........................................................10, 11

*Myers v. Wakefern Food Corp.*,
    2022 WL 603000 (S.D.N.Y. Mar. 1, 2022) .................................................................. *passim*

*Nelson v. MillerCoors, LLC*,
    246 F. Supp. 3d 666 (E.D.N.Y. 2017) ............................................................................1, 7

*O'Neil v. Argon Med. Devices, Inc.*,
    2020 WL 1149904 (N.D.N.Y. Feb. 13, 2020) ....................................................................23

*Oden v. Bos. Sci. Corp.*,
    330 F. Supp. 3d 877 (E.D.N.Y. 2018) ...............................................................................17

*Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand,
LLP*,
    322 F.3d 147 (2d Cir. 2003) .........................................................................................6, 14

*Oldrey v. Nestle Waters N. Am., Inc.*,
    2022 WL 2971991 (S.D.N.Y. July 27, 2022) ...................................................................7, 8

*Pac. Cycle, Inc. v. PowerGroup Int'l, LLC*,
    969 F. Supp. 2d 1098 (W.D. Wis. 2013) .............................................................................19

*Parks v. Ainsworth Pet Nutrition, LLC*,
    377 F. Supp. 3d 241 (S.D.N.Y. 2019) ...............................................................................17

*Pershouse v. L.L. Bean, Inc.*,
    368 F. Supp. 3d 185 (D. Mass. 2019) ...............................................................................18

*Pittman v. Chick-fil-A, Inc.*,
    2022 WL 2967586 (S.D.N.Y. July 27, 2022) .................................................................18, 24

*Quintana v. B. Braun Med. Inc.*,
    2018 WL 3559091 (S.D.N.Y. July 24, 2018) .......................................................................1

*Roberts v. Bliss*,
    229 F. Supp. 3d 240 (S.D.N.Y. 2017) ................................................................................6

*Rule v. Fort Dodge Animal Health, Inc.*,
   604 F. Supp. 2d 288 (D. Mass. 2009), *aff'd*, 607 F.3d 250 (1st Cir. 2010) .............................17

*Rutherford Holdings, LLC v. Plaza Del Rey*,
   223 Cal. App. 4th 221 (Cal Ct. App. 2014) ..................................................................23

*Safe Step Walk in Tub Co. v. CKH Indus., Inc.*,
   242 F. Supp. 3d 245 (S.D.N.Y. 2017) .........................................................................15

*Schachter v. U.S. Life Ins. Co. in City of New York*,
   77 F. App'x 41 (2d Cir. 2003) ...................................................................................6

*Schlessinger v. Valspar Corp.*,
   21 N.Y.3d 166 (2013) .............................................................................................16

*Segovia v. Vitamin Shoppe, Inc.*,
   2017 WL 6398747 (S.D.N.Y. Dec. 12, 2017) .................................................................18

*Shaulis v. Nordstrom Inc.*,
   120 F. Supp. 3d 40 (D. Mass. 2015), *aff'd*, 865 F.3d 1 (1st Cir. 2017) .....................17, 18, 24

*Sklyar v. Energizer Brands*,
   LLC, 2022 WL 4539573 (E.D.N.Y. Sept. 28, 2022) .........................................................12

*Solak v. Hain Celestial Grp., Inc.*,
   2018 WL 1870474 (N.D.N.Y. Apr. 17, 2018) .............................................................8, 21

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ...............................................................................24, 25

*Spurck v. Demet's Candy Co.*
   2022 WL 2971957 (S.D.N.Y. July 27, 2022) ..................................................................21

*Stearns v. Select Comfort Retail Corp.*,
   763 F. Supp. 2d 1128 (N.D. Cal. 2010) ......................................................................17

*Steckman v. Hart Brewing, Inc.*,
   143 F.3d 1293 (9th Cir. 1998) ..............................................................................6, 14

*Stigman v. Nickerson Enters, Inc.*,
   2000 Mass. App. Div. 223 (Mass. App. Ct. 2000) ...........................................................19

*Swearingen v. Healthy Beverage, LLC*,
   2017 WL 1650552 (N.D. Cal. May 2, 2017) ...................................................................12

*Tears v. Bos. Sci. Corp.*,
   344 F. Supp. 3d 500 (S.D.N.Y. 2018) .........................................................................23

*Tomasella v. Nestle USA, Inc.*,
  962 F.3d 60 (1st Cir. 2020) ...................................................................19

*Turnipseed v. Simply Orange Juice Co.*,
  2022 WL 657413 (S.D.N.Y. Mar. 4, 2022) ...........................................16

*Vasquez v. Soto*,
  61 A.D.3d 968 (2d Dep't 2009) ..............................................................8

*Watkins v. MGA Ent., Inc.*,
  550 F. Supp. 3d 815 (N.D. Cal. 2021) ...................................................23

*Weinstein v. eBay, Inc.*,
  819 F. Supp. 2d 219 (S.D.N.Y. 2011).....................................................13

*Wheeler v. Topps Co.*,
  2023 WL 405015 (S.D.N.Y. Jan. 25, 2023) ..........................................20

*Wilson v. Merrill Lynch & Co.*,
  671 F.3d 120 (2d Cir. 2011)......................................................................1

*Wurtzburger v. Kentucky Fried Chicken*,
  2017 WL 6416296 (S.D.N.Y. Dec. 13, 2017) .......................................13

*Young v. L'Oreal, Inc.*,
  2021 WL 2295625 (S.D.N.Y. May 20, 2021) ..................................8, 15

*Zachmann v. Coleman Co.*,
  2022 WL 161480 (S.D.N.Y. Jan. 18, 2022) ....................................20, 22

*Zotbelle, Inc. v. Kryolan Corp.*,
  416 F. Supp. 3d 33 (D. Mass. 2019) ......................................................16

## Statutes

California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*....................... *passim*

Mass. Gen. Laws ch. 93A ................................................................... *passim*

New York General Business Law section 349 ..................................... *passim*

New York General Business Law section 350 ..................................... *passim*

## Other Authorities

Federal Rule of Civil Procedure 12(b)(6) ......................................................6

## INTRODUCTION

Danone Waters of America ("Danone") sells natural spring water products under the evian® water brand (the "Product"). (First Amended Complaint ("FAC") ¶ 2.) The Product's label accurately informs consumers that the Carbon Trust, an independent third party with a rigorous assessment process and standards, certified the Product as "carbon neutral," the Product includes the Carbon Trust's logo, and it directs them to evian® water's website to "learn more." (Exs. 1-2.)[1] evian® water's website and the Carbon Trust's both explain what that certification means, and the standard used to evaluate it: Publicly Available Standard 2060 ("PAS 2060"), the "Carbon Neutrality Standard and Certification" published by the British Standards Institution. There is no allegation that evian® water has not, in fact, met that standard; it has.

All labels for evian® water prominently declare on the front of the packaging that evian® water is "MADE BY THE FRENCH ALPS." (FAC ¶ 5.) The plaintiffs, who do not live in the French Alps but in California and Massachusetts, allege they bought the Product believing that the "carbon neutral" statement on it meant not that the Product was certified carbon neutral by the Carbon Trust, but that the entire life cycle of the Product's manufacturing "from materials used, to production, to transportation" emitted no carbon dioxide at all. (FAC ¶ 39.) One wonders how the plaintiffs think the Product magically arrived from the French Alps to their homes without the emission of even a molecule of carbon dioxide. The plaintiffs' subjective interpretation is manifestly unreasonable. Not only does it defy science and common sense, it is contrary to evian®

---

[1] Exhibit references are to the declaration of Keara M. Gordon, dated March 13, 2023 ("Gordon Declaration"). This Court may take judicial notice of documents and information from websites that the FAC incorporates. *See Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 123 (2d Cir. 2011). Here, the FAC incorporates iterations of evian® water's and Carbon Trust's website. (*See, e.g.,* FAC ¶¶ 4 n.1, 43, 46.) *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 462-63 (S.D.N.Y. 2020) (considering website) (collecting cases); *Quintana v. B. Braun Med. Inc.*, 2018 WL 3559091, at *1 n.1 (S.D.N.Y. July 24, 2018) (same). The Court may also take judicial notice of the Product's labels. *See, e.g., Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 672–73 (E.D.N.Y. 2017) (considering entirety of product's label); *see also Campbell v. Drink Daily Greens, LLC*, 2018 WL 4259978, at *2 (E.D.N.Y. Sept. 4, 2018) (same).

water's website, which, for example, discusses the transport of the product, has a picture of trains, and says, "we transport about 75% of our bottles from our factory by train in France to harbors because trains produce a carbon footprint 10x smaller than trucks." (Exs. 3, 3a, 3b.) That statement plainly discloses that the Product does, in fact, have a carbon footprint.

From their faulty predicate, the plaintiffs attempt to assert eight claims: (1) violation of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"); (2) violation of New York General Business Law ("GBL") section 349; (3) violation of GBL section 350; (4) violation of Mass. Gen. Laws ch. 93A ("93A"); (5) breach of express warranty; (6) breach of implied warranty; (7) unjust enrichment; and (8) fraud on behalf of three putative classes (one nationwide, one of California customers, and one of Massachusetts customers).

All claims fail for the simple reason that Danone did not misrepresent anything. (Section I.) The plaintiffs' claims also fail because:

- The plaintiffs have no cognizable injury because: (1) they improperly conflate deception with injury; and (2) the price premium injury is insufficiently pled (Section II);

- Mr. Axiotakis' 93A claim fails because he purchased the Product *after* Ms. Dorris publicly declared that she believed the Product's "carbon neutral" labeling was misleading and supposedly revealed that the Product did emit carbon during its life cycle, and therefore he cannot claim to have been deceived (Section III);

- The plaintiffs cannot invoke the GBL because they did not purchase the Product in New York and cannot do so on behalf of purchasers who also did not purchase the Product in New York (Section IV);

- The fraud claim fails because the plaintiffs have not adequately pled fraudulent intent (Section V);

- The implied warranty claims fail under New York and California law because the plaintiffs fail to plead privity with Danone and they are barred by the economic loss doctrine under Massachusetts law (Section VI(A));

- The breach of implied warranty of merchantability claim also fails because the plaintiffs do not allege that the product was not fit for consumption (Section VI(B));

- The breach of implied warranty of fitness for a particular purpose claim also fails because the plaintiffs do not adequately allege that Danone knew their "particular purpose" for acquiring the Product (Section VI(C));

- The unjust enrichment claim is duplicative of the plaintiffs' other claims and they have not adequately alleged retention of any gains by Danone would be unjust (Section VII); and

- Ms. Dorris is not entitled to equitable relief under the CLRA because she cannot demonstrate the inadequacy of legal remedies and she does not allege an intent to purchase the Product in the future (Section VIII).

This Court should grant Danone's motion to dismiss in its entirety and with prejudice.

**<u>FACTUAL BACKGROUND</u>**[2]

A.    <u>The Carbon Trust Carbon Neutral Certification</u>

Danone manufactures and sells natural spring bottled water that is "made by the French Alps" under the evian® water brand, including in a box of 1-liter bottles, which Ms. Dorris bought (the "1L Box"), and in single bottles, which Mr. Axiotakis bought (the "Single Bottle"). (FAC ¶¶ 2, 11, 12.) evian® water is not alleged to sell directly to customers, including the plaintiffs.

1.    *The 1L Box*

The Carbon Trust logo is directly next to "carbon neutral" on both the front and back of the packaging. (FAC ¶¶ 5, 42; Ex. 1.)




On Amazon—which is where Ms. Dorris purchased the Product—there is a further

---

[2] For purposes of this motion, Danone accepts the plaintiffs' allegations as true except to the extent that they are otherwise contradicted. Danone reserves the right to dispute the accuracy of any factual allegation if the case proceeds past this motion (which it should not).

explanation that the Product is certified carbon neutral by the Carbon Trust and an invitation to visit evian® water's website to "[l]earn more." (Ex. 4.)



When one visits evian® water's website, as suggested, it explains, "in 2017 our products in the US and Canada were certified as carbon neutral to the international standard PAS 2060 by the Carbon Trust . . .. In April 2020, evian® water was globally certified as carbon neutral by **Carbon Trust.**" (Exs. 3, 3a, 3b.) By clicking on the bold words "**Carbon Trust,**" one is taken to the Carbon Trust's website. There, it explains that the Carbon Trust "advise[s] businesses, governments and the public sector on strategy, risks and opportunities, target-setting, carbon reduction plans and transitioning to a low carbon world." (Exs. 5, 5a, 5b; s*ee also* FAC ¶ 43.) The website explains it certifies products to PAS 2060, "the only recognised international standard for carbon neutrality." (Exs. 6, 6a; FAC ¶ 43 ("The footprint logo indicates that the product's carbon footprint is (1) achieving ongoing reductions and (2) any outstanding emissions are offset in accordance with the international PAS 2060 standard.").)

PAS 2060 "sets out requirements for quantification, reduction and offsetting of greenhouse gas emissions [] for organisations, products, and events." (Exs. 6, 6a.) "A carbon neutral certification demonstrates an organisation's commitment to decarbonization, and the neutralisation of remaining impact through the support of environmental projects." (*Id.*)

    2. *The Single Bottle*

The front of the Single Bottle includes "carbon neutral" (FAC ¶ 5; Ex. 2), and on the back states that evian® water is "certified carbon neutral," next to the Carbon Trust symbol and the

4

words "Carbon Trust," and directs customers to evian® water's website to learn more (FAC ¶ 42):



### B.    The Product's Carbon Footprint

On its website, evian® water explains that carbon neutral does not mean zero carbon: "What does it mean to be carbon neutral? Well, for us, it means bringing you our natural spring water while contributing to reduce our emissions day after day." (Exs. 3, 3a, 3b.) evian® water is "committed to operating sustainably by continuously working to measure and reduce [its] carbon footprint at every stage of [its] bottle's lifecycle: from the materials we use and produce, to production, transportation, and recycling." (*Id.*) "We set our sights on becoming certified as carbon neutral and have achieved it by continuously measuring and reducing our carbon emissions at each stage of our bottle's life cycle: from the materials we use, to production, transportation and recycling. The emissions that remain are then offset through our work with Livelihood Funds that has planted 130 million trees." (*Id.*) The website also describes Danone's efforts to lower evian® water's carbon footprint during the Product's life cycle: production, packaging, and transport. (*Id.*)

### C.    The Plaintiffs

Ms. Dorris bought the "1L Box" from Amazon on August 16, 2022 for approximately $19.99. (FAC ¶ 11.) Mr. Axiotakis allegedly purchased a Single Bottle from a BJ's store in Massachusetts "in or about November 2022" for an unspecified price. (*Id.* ¶ 12.) They both claim that they "understood 'carbon neutral' to mean that the Product's manufacturing did not produce $CO_2$ or otherwise cause pollution." (*Id.* ¶¶ 11-12.) They claim they paid a "substantial price

premium" (*id.*) but provide no details of any comparable products or their prices.

## STANDARD OF REVIEW

"A case is properly dismissed for lack of subject-matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Courts lack jurisdiction when the plaintiff lacks Article III standing. *Schachter v. U.S. Life Ins. Co. in City of New York*, 77 F. App'x 41, 42 (2d Cir. 2003).

On a Rule 12(b)(6) motion to dismiss, courts consider whether a complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). Although the Court must accept a complaint's well-plead allegations as true, this "tenet . . . is inapplicable to legal conclusions," *id.* at 678, and to allegations that a product's label contradicts. *See, e.g.*, *Roberts v. Bliss*, 229 F. Supp. 3d 240, 249 (S.D.N.Y. 2017) (advertisement contradicted allegations); *Fink v. Time Warner Cable*, 714 F.3d 739, 741-42 (2d Cir. 2013) (same). "A plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts." *Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (quoting *Soo Line R.R. v. St. Louis Sw. Ry., Co.*, 125 F.3d 481, 483 (7th Cir. 1997)); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) ("we are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint").

## ARGUMENT

### I.     The Product's Label is Not Misleading.

Each of the plaintiffs' claims is predicated on a theory that the Product's packaging and advertising led them to believe that the Product emitted zero carbon during the entire process of manufacturing it and transporting it from the French Alps to their homes. (FAC ¶¶ 11-12.) To sustain these claims, the plaintiffs must "plausibly allege 'that a significant portion of the general consuming public or of targeted consumers . . . could be misled.'" *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) (citation omitted). "In determining whether a reasonable consumer would be misled, courts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole." *Myers v. Wakefern Food Corp.*, 2022 WL 603000, at *3 (S.D.N.Y. Mar. 1, 2022) (Román, J.) (citation and alterations omitted).[3]

"Ultimately, determining whether a complaint states a facially plausible claim upon which relief may be granted must be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *La Vigne v. Costco Wholesale Corp.*, 284 F. Supp. 3d 496, 504 (S.D.N.Y. 2018) (Román, J.) (quoting *Iqbal*, 556 U.S. at 679), *aff'd*, 772 F. App'x 4 (2d Cir. 2019). "The entire mosaic is viewed rather than each tile separately." *Id.* at 513 (citation omitted). "The idea that consumers purchase products based on certain of a label's statements or images . . . but are blind to others . . . in close proximity on that label strains credibility." *Nelson*, 246 F. Supp. 3d at 674. "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Oldrey v. Nestle Waters N. Am., Inc.*, 2022 WL 2971991, at *2 (S.D.N.Y. July 27, 2022) (Román, J.) (quoting *Fink*,

---

[3] In analyzing these claims, as a federal court sitting in diversity, this Court ordinarily applies the choice of law rules of the forum state, here New York. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). However, no choice of law analysis is required at this stage in the litigation because no conflicts exist between California law (where Ms. Dorris resides), Massachusetts law (where Mr. Axiotakis resides) and New York substantive law regarding the arguments raised herein and the plaintiffs' claims fail under each as outlined below.

714 F.3d at 741); *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500-01 (2d Cir. 2020) (same).

Here, the plaintiffs cannot demonstrate that the statement "carbon neutral" was misleading to a reasonable consumer acting reasonably and the claims must be dismissed.[4] *See, e.g., Oldrey*, 2022 WL 2971991, at *2-8 (dismissing GBL, breach of warranty, fraud, and unjust enrichment claims); *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 149 (S.D.N.Y. 2022) (same); *Myers.*, 2022 WL 603000, at *3 (same); *Mazella v. Coca-Cola Co.*, 548 F. Supp. 3d 349, 361-62 (S.D.N.Y. 2021) (Román, J.) (same); *Young v. L'Oreal, Inc.*, 2021 WL 2295625, at *9 (S.D.N.Y. May 20, 2021), *R&R adopted*, 2021 WL 2292341 (S.D.N.Y. June 4, 2021) (dismissing CLRA, breach of implied warranty, and unjust enrichment claims); *La Vigne*, 284 F. Supp. 3d at 513 (dismissing GBL and 93A claims); *Solak v. Hain Celestial Grp., Inc.*, 2018 WL 1870474, at *9 (N.D.N.Y. Apr. 17, 2018) (dismissing CLRA, GBL, and breach of warranty claims).

Here, (A) the Product's label accurately states that the Carbon Trust, an independent third party, certified the Product as "carbon neutral"; (B) no reasonable consumer would interpret "carbon neutral" to mean that the Product does not emit any carbon dioxide whatsoever during its entire life cycle; and (C) the plaintiffs cannot rely on purported violations of the FTC Green Guides to support their claims.

A.    The Product States it is Certified as "Carbon Neutral", Which is True.

"[A] party does not violate GBL 349 by simply publishing truthful information and allowing consumers to make their own assumptions about the nature of the information." *Dwyer*, 598 F. Supp. 3d at 150 (citation omitted). "Assuming that a reasonable consumer might ignore the

---

[4] For these same reasons, the plaintiffs have not pled justifiable reliance in support of their fraud claim. *See Vasquez v. Soto*, 61 A.D.3d 968, 969 (2d Dep't 2009) (holding an alleged misrepresentation cannot "give rise to liability if the true facts could have been ascertained by the plaintiffs 'by means available to them through the exercise of ordinary intelligence'") (citation omitted); *Green v. SweetWorks Confections, LLC*, 2019 WL 3958442, at *4, *7 (S.D.N.Y. Aug. 21, 2019) (dismissing claim); *Gray v. Toyota Motor Sales, U.S.A.*, 2012 WL 313703, at *8 (C.D. Cal. Jan. 23, 2012), *aff'd*, 554 F. App'x 608 (9th Cir. 2014) (requiring justifiable reliance); *Edlow v. RBW, LLC*, 688 F.3d 26, 36 (1st Cir. 2012) (same).

evidence plainly before [her] 'attributes to consumers a level of stupidity that [courts] cannot countenance and that is not actionable . . ..'" *Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 311-12 (S.D.N.Y. 2017) (citation omitted), *aff'd*, 710 F. App'x 43 (2d Cir. 2018); *see also Harris v. Pfizer, Inc.*, 586 F. Supp. 3d 231, 243-44 (S.D.N.Y. 2022) ("A plaintiff does not have a claim . . . just because she comes away from an advertisement with an incorrect impression."); *DiCroce v. McNeil Nutritionals, LLC*, 2022 WL 16847696, at *4 (D. Mass. Nov. 10, 2022) (finding the plaintiff failed to identify a misstatement of fact and that no reasonable consumer could be misled by the product's label read as a whole).

Here, the evian® water label states that it is "carbon neutral" immediately next to the symbol for the Carbon Trust, on the front or back label,[5] to reflect that the Product is certified as carbon neutral by the Carbon Trust. It is. There is no allegation that that statement is not true. Instead, the plaintiffs advance their subjective belief that the Carbon Trust certification is "inherently problematic" because, they vaguely claim, carbon credits are "questionable." (FAC ¶¶ 30-47.) Their musings on the efficacy of carbon offsets does not render the Product's true statements actionable. *Martelli v. Rite Aid Corp.*, 2023 WL 2058620, at *5 (S.D.N.Y. Feb. 16, 2023) (attack on transition formula industry insufficient); *Gordon v. Target Corp.*, 2022 WL 836773, at *10 (S.D.N.Y. Mar. 18, 2022) (same); *Mazella*, 548 F. Supp. 3d at 357 ("where the allegedly deceptive practice is fully disclosed, there is no deception claim").

In this regard, *Dwyer* is instructive. There, Allbirds represented that its wool sneakers had a "Low Carbon Footprint," among other statements, and it explained that it used a "life cycle assessment ('LCA') tool to estimate its products' carbon footprint" and the "Higg Material

---

[5] In their pre-motion letter opposition, the plaintiffs claim confusion because, on the Single Bottle, the Carbon Trust logo is on the back, not the front, of the product. It is well-settled, however, that the Court can review the "context on the product label or advertisement as a whole." *Myers*, 2022 WL 603000, at *3 (citation omitted). In the unlikely event that someone was confused by what "carbon neutral" meant, they could simply flip the bottle over for clarification.

Sustainability Index ('Higg MSI'), a standard developed by the Sustainable Apparel Coalition" and provided other details about this methodology supporting the product statements. 598 F. Supp. 3d at 145. Nevertheless, the plaintiff claimed that the environmental claims were misleading.

The Court disagreed. Applying a "reasonable consumer" standard, the Court rejected an attack on the LCA tool that Allbirds used, finding it was a "criticism of the tool's methodology, not a description of a false, deceptive, or misleading statement about the Product." *Id.* at 149. "The alleged inadequacy of the standards imposed is not enough to render the statements actionable." *Id.* at 150 (quoting *Lee v. Can. Goose US, Inc.*, 2021 WL 2665955, at *6 (S.D.N.Y. June 29, 2021) (dismissing analogous claim where the plaintiff "argue[d] that [the defendant's] compliance, regulation, and licensing are insufficient and unsatisfactory")). Even if the plaintiff believed that the defendant should "use a different method" to measure its carbon footprint, that "does not plausibly suggest that what Defendant in fact says is materially misleading." *Id.*

A court dismissed similar claims in *Myers v. Starbucks Corp.*, 2020 WL 13302437, at *5 (C.D. Cal. July 29, 2020). There, the Court dismissed claims about Quaker granola bars, which stated Quaker "supports sustainably sourced cocoa" through a third party. Not only was that statement true, but "[n]o reasonable consumer could interpret Quaker's label as a promise to eliminate unethical practices from its supply chain." *Id*. at *5. The Court also dismissed claims regarding Mars's use of the "Rainforest Alliance Certification" on its chocolate bars. *Id*. Again, the plaintiff did not allege the statement was untrue, but claimed that the certification was "bogus" and gave consumers a "false impression" that the cocoa was child-labor-free. *Id*. The Court rejected the plaintiff's arguments and dismissed the claims. *Id*.

The same result is compelled here. The Product's labeling includes the statement "carbon neutral" directly next to the symbol for Carbon Trust, explains it is "certified carbon neutral" next

to the Carbon Trust logo, and prompts curious customers to go to evian® water's website to "learn more," where it (as well as the Carbon Trust's website) explains what that certification means and the standards used to evaluate it: PAS 2060. There is no allegation that evian® water has not, in fact, met that standard and no reasonable consumer could infer that Danone meant something other than what it said. The plaintiffs' subjective belief that the standard and the use of carbon offsets are somehow inadequate is insufficient to state a claim.

The plaintiffs allege that Danone did not adequately convey that carbon neutral refers to Carbon Trust certification because the small water bottle's packaging does not perform a calculation of its carbon neutrality, describe the Carbon Trust standard, or explain what the evian® water business did to qualify for the certification. (FAC ¶¶ 44-46.) This argument is without merit.

A small water bottle label obviously cannot expound at length upon carbon neutrality and calculations in its label, a reasonable consumer would not expect it, and the law does not require it. *See Dwyer*, 2022 WL 1136799, at *6 ("there is no obligation under [the] GBL . . . to provide whatever information a consumer might like to know"); *Moore v. Trader Joe's Co.*, 4 F.4th 874, 884-85 (9th Cir. 2021) (additional details of rating on label not required); *Starbucks*, 2020 WL 13302437, at *5 (use of certification on product did not create duty to disclose nuances of certification). In other contexts, certifications like the Carbon Trust Logo exist precisely to provide a "shorthand" to avoid lengthy explanations. For example, certification seals such as the "USDA Organic" mark are used to communicate to consumers that a product has been evaluated by a third party (e.g., a USDA-accredited certifying agent). Food products labeled "USDA Organic" must meet USDA certification standards, but they do not need to include an analysis of the data considered by the evaluator, the methods used, or even the standard applied. *See Gedalia v. Whole Foods Mktg. Servs., Inc.*, 53 F. Supp. 3d 943, 955 (S.D. Tex. 2014) (dismissing complaint; plaintiff

failed to plead "that the reasonable consumer would assume" that the products were "any more organic than what organic certifying agencies require.").

Moreover, the plaintiffs refer to the FTC Green Guides, which are nonbinding, advisory guidelines. 16 C.F.R. § 260.1(a). Neither they nor Section 5 of the FTC Act require companies to provide calculations or data to substantiate a certification seal on a product's label. 16 C.F.R. § 260; 15 U.S.C. § 45. Under FTC guidance, it is sufficient for a certification to indicate the attribute evaluated by the certifier. *See* 16 C.F.R. § 260.6(d) (noting that the name of the organization or certification may adequately convey the basis for the certification or seal). And the Product clearly directs consumers to its website to learn more.[6]

B.   No Reasonable Consumer Would Think Certified "Carbon Neutral" Means the Product Does Not Emit Any Carbon Dioxide During its Lifecycle.

The plaintiffs' claimed understanding that the "manufacturing of the Product—from materials used, to production, to transportation—is sustainable and does not leave a carbon footprint," and its "manufacturing did not produce $CO_2$ or otherwise cause pollution" (FAC ¶ 11, 39), is contrary to science, logic, the FAC, and controlling case law.

"[C]ourts have dismissed deceptive labeling claims at the pleadings stage where plaintiffs tried to draw highly specific inferences . . . and where the plaintiffs' alleged inference appeared fundamentally incompatible with basic common sense." *Sklyar v. Energizer Brands, LLC*, 2022 WL 4539573, at *3 (E.D.N.Y. Sept. 28, 2022) (citation omitted) (dismissing claim); *see also Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 193 (E.D.N.Y. 2018) ("A reasonable consumer

---

[6] The reference to evian® water's website appears in font larger than the text within the Carbon Trust seal, and the same size as "We are Certified Carbon Neutral," which is directly above it. (FAC ¶ 42; Exs. 1-2.) The web address is also printed in red font, making it all the more prominent. (*Id.*) Because it is printed in red, is the same size as various other important information on the label, and is directly next to the Carbon Trust seal, the reference is clear and conspicuous. A reasonable consumer could not overlook it. *See Swearingen v. Healthy Beverage, LLC*, 2017 WL 1650552, at *4 (N.D. Cal. May 2, 2017) ("Since Plaintiffs specifically allege that they 'read and reasonably relied on the labels' on Defendants' products, the materials they read include the statements on Healthy Beverage's website incorporated into the labels.").

does not lack common sense.") (dismissing complaint); *Bush v. WellPet, LLC*, 534 F. Supp. 3d 179, 185-86 (D. Mass. 2021) (dismissing complaint because reasonable consumers would not share the plaintiff's demonstrably false misinterpretation that "grain free" meant "gluten free"). "[T]he applicable legal standard is whether a reasonable consumer, not the least sophisticated consumer, would be misled by Defendants' actions," and "no reasonable consumer" can ignore "overwhelming evidence" that contradicts their interpretation of a challenged statement. *Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011). Here, no reasonable consumer would interpret "carbon neutral" to mean that no carbon was emitted during the Product's life cycle.

First, the plaintiffs' claimed interpretation of the statements on the Product's labeling is debunked by the FAC's admission that "***no carbon zero products exist yet***." (FAC ¶ 28 (emphasis added).) If "no carbon zero products exist," it is difficult to understand how a significant portion of reasonable consumers could misunderstand "certified carbon neutral" to mean that a company that manufactures and sells beverage products made by the French Alps emits ***no*** carbon whatsoever during its journey to the US. *See Wurtzburger v. Kentucky Fried Chicken*, 2017 WL 6416296, at *3 (S.D.N.Y. Dec. 13, 2017) (Román, J.) (rejecting allegation of deception where it "is inconsistent with Plaintiff's other allegations and lacks reason").

Second, according to the very dictionary the FAC cites, one definition for "carbon-neutral" is "*counterbalancing* the emission of carbon dioxide with carbon offsets"—which Danone does. Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/carbon-neutral (last visited Jan. 18, 2023) (emphasis added); *see also* Dictionary.com, https://dictionary.cambridge.org/us/dictionary/english/carbon-neutral (last visited Jan. 18, 2023) ("If an organization, activity, etc. is carbon neutral, it does not add to the total amount of carbon dioxide in the atmosphere, for example by doing things such as planting trees in order to remove

as much carbon dioxide as it creates."); OED Online, www.oed.com/view/Entry/27743 (last visited Jan. 18, 2023) (defining "carbon-neutral" as "making or resulting in zero net emission of carbon dioxide to the atmosphere; claiming to balance any carbon dioxide emission by some form of carbon offset"). It would be much more reasonable for someone to ascribe that definition to "carbon neutral" than "it emits no carbon, ever, during the Product's life cycle."

Third, even a cursory look at the Product's website, which the plaintiffs cite (FAC ¶ 46), further disabuses anyone of the notion that there is no carbon emitted during the manufacturing, production, and distribution processes. For example, evian® water's website states:

- It is "committed to operating sustainably by continuously working **to measure and reduce our carbon footprint** at every stage of our bottle's lifecycle: from the materials we use and produce, to production, transportation, and recycling." (Exs. 3, 3a, 3b (emphasis added).) This language does not promise that there is no carbon footprint and the words "measuring" and "reducing" clearly indicate that there is, in fact, a carbon footprint to measure and reduce.
- "What does it mean to be carbon neutral? Well, for us, it means bringing you our natural spring water while **contributing to reduce our emissions day after day."** (*Id.* (emphasis added).) Again, this language indicates there are emissions and evian® water is working toward reducing them.
- **"The emissions that remain** are **then offset** through our work with Livelihood Funds that has planted 130 million trees." (*Id.* (emphases added).) The only rational conclusion that a reader can draw from this sentence is that the production process generates emissions, and those are then offset in the manner described.

The website also includes, for example, a picture of trains and an explanation that evian® water uses trains because they "produce a carbon footprint 10x smaller than trucks," necessarily disclosing that there is, in fact, a carbon footprint. (*Id.*)

Given their admissions that (1) no carbon zero products exist, (2) the dictionary definition of "carbon neutral" describes the use of offsets to balance emissions, and (3) the Product's website explains evian® water's approach to reducing and offsetting carbon emissions, the plaintiffs have pled themselves out of any plausible claim that reasonable consumers could expect evian® water products to be "carbon zero" and have no carbon footprint. *Coopers & Lybrand*, 322 F.3d at 167; *Steckman*, 143 F.3d at 1295-96.

Similarly, the plaintiffs' "survey evidence" disproves their case. They allege that "nearly sixty percent of American consumers do not understand what the term 'carbon neutral' means." (FAC ¶ 26.) Even crediting this survey, it reports that forty-one percent of respondents correctly matched "carbon neutral" with the definition that emissions are balanced with offsets. So understood, there is no misstatement. Thirty percent said they did not know what "carbon neutral" meant so when choosing between products, those consumers could not *reasonably* claim to be swayed one way or the other. Together, these total seventy-one percent of those surveyed, meaning that seventy-one percent of these consumers could not reasonably be misled by a "carbon neutral" claim. *Jessani*, 744 App'x at 19; *see also In re KIND LLC "Healthy & All Natural" Litig.*, 2022 WL 4125065, at *9 (S.D.N.Y. Sept. 9, 2022) (allegations showing "diversity of views" as to challenged terms demonstrate that reasonable consumer would not be misled). And, in any event, this survey obviously did not consider how consumers would read the evian® water label specifically. *See Young v. L'Oreal, Inc.*, 2021 WL 2295625, at *8 (S.D.N.Y. May 20, 2021) (rejecting survey evidence where irrelevant to product at issue), *R. & R. adopted sub nom. Young v. L'Oreal USA, Inc.*, 2021 WL 2292341 (S.D.N.Y. June 4, 2021).

      C.      <u>The Plaintiffs Cannot Rely on a Purported Violation of the FTC Green Guides</u>.

The FAC also asserts that the Product does not comply with the plaintiffs' interpretation of the FTC Green Guides because the statement "carbon neutral" is an "unqualified general environmental benefit claim." (*See, e.g.*, FAC ¶¶ 6, 33-36.) However, the FTC Green Guides do not create legal obligations or any private right of action. *See* 16 C.F.R. § 260.1(a) ("The guides help marketers avoid making environmental marketing claims that are unfair or deceptive under . . . the FTC Act . . .. They do not confer any rights on any person and do not operate to bind the FTC or the public."); *Safe Step Walk in Tub Co. v. CKH Indus., Inc.*, 242 F. Supp. 3d 245, 254 n.3 (S.D.N.Y. 2017) (Román, J.) (no regulation promulgated under the FTC Act is enforceable by

private action); *Ferreira v. Sterling Jewelers, Inc.*, 130 F. Supp. 3d 471, 481 (D. Mass. 2015) (FTC commentary not binding on the courts).[7]

"[T]he challenged act must be 'inherently deceptive,' and such acts cannot be re-characterized as 'deceptive' simply on the grounds that they violate another statute which does not allow for private enforcement.'" *Myers*, 2022 WL 603000, at *5 (quoting *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 127-28 (2d Cir. 2017)) (claim premised on alleged violation of FDA regulation must be dismissed as there is no private right of action to enforce); *Turnipseed v. Simply Orange Juice Co.*, 2022 WL 657413, at *5 (S.D.N.Y. Mar. 4, 2022) (Román, J.) (same); *Schlessinger v. Valspar Corp.*, 21 N.Y.3d 166, 172 (2013) (plaintiff cannot use GBL 349 to bootstrap claims for violations of other statutes without private rights of action).

Moreover, the plaintiffs have not alleged that a reasonable consumer would have detailed knowledge of the FTC Green Guides labeling regulations and interpret them in the same way. *See Curtis v. 7-Eleven, Inc.*, 2022 WL 4182384, at *16 (N.D. Ill. Sept. 13, 2022) ("Your average consumer at 7-Eleven probably doesn't have the FTC's policy statements at his or her fingertips when picking up a bag of foam plates for the backyard BBQ"). In analogous circumstances, courts have held that reasonable consumers do not have detailed knowledge of FDA regulations. *Bynum v. Family Dollar Stores, Inc.,* 592 F. Supp. 3d 304, 312 (S.D.N.Y. 2022).

For example, in *Bynum,* the plaintiff "point[ed] to a range of federal labeling regulations as evidence of what consumers should expect different types of labels to imply about the contents of their products." 592 F. Supp. 3d at 312. The Court dismissed the claims for failure to plead a

---

[7] Although some Massachusetts courts have recognized "that a violation of an FTC regulation can state a claim under Chapter 93A," the Court must still consider whether the plaintiffs have a valid claim including causation and damages—which they do not here. *Zotbelle, Inc. v. Kryolan Corp.*, 416 F. Supp. 3d 33, 54 (D. Mass. 2019). In any event, the plaintiffs do not allege a violation of the FTC Act, they allege a "violation" of the FTC Green Guides, which are not a part of the FTC Act.

misstatement because "even if Plaintiff is correct about federal regulatory requirements, the [Complaint] does not allege that reasonable consumers are aware of these complex regulations, ***much less that they incorporate the regulations into their day-to-day marketplace expectations***." *Id.* (emphasis added) (citing *Dashnau v. Unilever Mfg. (US), Inc.,* 529 F. Supp. 3d 235, 242 (S.D.N.Y. 2021)). In *N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, the Court similarly concluded that the plaintiffs had not demonstrated that "the perceptions of ordinary consumers align with [the] labeling standards." 962 F. Supp. 2d 514, 519 (S.D.N.Y. 2013).

In any event, the statement "carbon neutral" comports with the FTC Green Guides. The FTC Green Guides use a reasonable person standard and recommend that claims be supported by scientific, objective analysis generally accepted in the relevant field. 16 C.F.R. § 260.2. The certified "carbon neutral" claim communicates a specific environmental benefit—carbon neutrality—and is supported by third-party certification to the only internationally recognized standard for carbon neutrality. Accordingly, the plaintiffs' claims fail.

## II.    <u>The Plaintiffs Fail to Plead an Injury.</u>

Injury is required for each of the plaintiffs' claims except unjust enrichment.[8] Here, the plaintiffs posit two supposed injuries: (1) they would not have purchased the Product had it been truthfully advertised; and (2) they paid a premium for the Product. (FAC ¶¶ 11-12.) Both fail.

"Simply alleging that a plaintiff 'would not have purchased' the product but for the deceptive practices, is, alone insufficient." *DaCorta v. AM Retail Grp., Inc.*, 2018 WL 557909, at

---

[8] *See Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 248 (S.D.N.Y. 2019) (express warranty); *Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 895-96 (E.D.N.Y. 2018), *adhered to on reconsideration*, 2019 WL 1118052 (E.D.N.Y. Mar. 11, 2019) (implied warranty); *Marino v. Coach, Inc.*, 264 F. Supp. 3d 558, 572 (S.D.N.Y. 2017) (fraud); *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1022 (N.D. Cal. 2016), *aff'd*, 891 F.3d 857 (9th Cir. 2018) (CLRA); *Shaulis v. Nordstrom Inc.*, 120 F. Supp. 3d 40, 53, 54 (D. Mass. 2015), *aff'd*, 865 F.3d 1 (1st Cir. 2017) (93A and fraud); *Gray*, 2012 WL 313703, at *8, *10 (fraud); *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1142 (N.D. Cal. 2010) (express warranty); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009) (implied warranty); *Rule v. Fort Dodge Animal Health, Inc.*, 604 F. Supp. 2d 288, 293-97 (D. Mass. 2009), *aff'd*, 607 F.3d 250 (1st Cir. 2010) (implied warranty); Mass. Gen. Laws Ann. ch. 106, § 2-714 (same).

*7 (S.D.N.Y. Jan. 23, 2018) (Román, J.) (citation omitted) (dismissing claim); *see also Pittman v. Chick-fil-A, Inc.*, 2022 WL 2967586, at *6 (S.D.N.Y. July 27, 2022) (dismissing claim where the "alleged deception is identical to the pleaded injury"); *Shaulis*, 120 F. Supp. 3d at 53 (dismissing claim). In *DaCorta*, the Court explained that such an allegation amounts to an impermissible "deception-as-injury claim." 2018 WL 557909, at *8 (citation omitted). So too here. By alleging that they purchased the Product because of the challenged statement (FAC ¶¶ 11-12, 125), the plaintiffs improperly conflate deception and injury.

The plaintiffs' price premium injury is insufficiently pled. "A well pleaded allegation that a plaintiff paid a premium may be sufficient to allege injury . . .." *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018) (rejecting allegations). However, "[s]imply . . . recit[ing] the word 'premium' multiple times in [the] Complaint does not make Plaintiffs' injury any more cognizable." *Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016) (same). A plaintiff must set forth allegations supported by facts, such as identifying the competitors and how the Product's price was inflated compared thereto. *Id.*; *see also Segovia v. Vitamin Shoppe, Inc.*, 2017 WL 6398747, at *4 (S.D.N.Y. Dec. 12, 2017) (Román, J.) (dismissing claim); *Pershouse v. L.L. Bean, Inc.*, 368 F. Supp. 3d 185, 191 (D. Mass. 2019) (dismissing 93A claim where the plaintiff "d[id] not allege an objective measure of that purported premium"). Here, the plaintiffs fail to allege or identify (1) the premium Danone allegedly charged; (2) any specific competitor's product (or price); or (3) how those products are purportedly comparable to the Product. And Mr. Axiotakis does not even allege how much he paid for the Product. As such, plaintiffs fail to sufficiently allege injury.

## III.   <u>The 93A Claim Fails</u>.

The plaintiffs' 93A claim fails for additional reasons. For a 93A claim alleging deceptive marketing, "(1) there must be a representation, practice, or omission likely to mislead consumers;

(2) the consumers must be interpreting the message reasonably under the circumstances; and (3) the misleading effects must be 'material,' that is likely to affect consumers' conduct or decision with regard to a product." *Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 72 (1st Cir. 2020) (citation omitted). As just established, here, the "carbon neutral" statement is true, reasonable consumers would not interpret it to mean anything other than what it says—that the evian® water brand offsets its carbon emissions and is certified by the Carbon Trust—and there is no injury.

Even if some reasonable consumer could claim to misconstrue "carbon neutral" to mean "zero emissions," which they cannot, Mr. Axiotakis was not deceived by the Product's "carbon neutral" labeling. Mr. Axiotakis alleges he bought the Product in November 2022 (FAC ¶ 12), which was ***after*** Ms. Dorris initiated the present action, publicly declaring her belief that the Product's "carbon neutral" statements were misleading and supposedly exposing that the Product has a carbon footprint, and after the case received press coverage from numerous publications. *See, e.g.*, Julie Steinberg, *Danone Sued Over Evian[®] Water 'Carbon Neutral' Statements*, Bloomberg Law, (Oct. 14, 2022, 2:29 p.m.), https://news.bloomberglaw.com/product-liability-and-toxics-law/danone-sued-over-evian-water-carbon-neutral-representations.

A plaintiff cannot reasonably rely on a false interpretation of a statement when he knows the truth.[9] *See, e.g.*, *Stigman v. Nickerson Enters, Inc.*, 2000 Mass. App. Div. 223, 225 (Mass. App. Ct. 2000) ("[u]nreasonable reliance," including where plaintiff was aware of the facts he later complained of, "is a complete bar to any recovery on a claim for misrepresentation or deceit"); *Makhnevich v. Bougopoulos*, 2023 WL 197297, at *7 (E.D.N.Y. Jan. 15, 2023) ("if a consumer is aware of the false statement, then such a person cannot be misled by that statement he or she knows to be false" (citation omitted)); *Pac. Cycle, Inc. v. PowerGroup Int'l, LLC*, 969 F. Supp. 2d 1098,

---

[9] Danone does not suggest that the statement is false, but only that a consumer cannot misconstrue a statement whose meaning is already known and a matter of public record.

1112-13 (W.D. Wis. 2013) ("The victim of a misrepresentation about a product who learns the truth before he buys, but decides to buy the product anyway, cannot complain about the misrepresentation. Whatever he has relied on, it is not that." (citations omitted)). Accordingly, he was not misled and all of his claims fail.

Finally, to the extent Mr. Axiotakis seeks damages under 93A on behalf of a nationwide putative class of consumers who did not make purchases or reside in Massachusetts, he cannot do so because those consumers did not rely on Danone's alleged misrepresentation in Massachusetts. *Camey v. Force Factor, LLC*, 2016 WL 10998440, at *3 (D. Mass. May 16, 2016) (striking 93A claim asserted on behalf of a putative nationwide class). For this same reason, Ms. Dorris—who bought the Product in California—cannot bring a 93A claim.

## IV.     The Plaintiffs Cannot Invoke New York's GBL.

The GBL "only protect[s] consumers when 'the transaction in which [they are] deceived . . . occur[s] in New York.'" *Zachmann v. Coleman Co.*, 2022 WL 161480, at *3 (S.D.N.Y. Jan. 18, 2022) (quoting *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 324 (2002)). Where a plaintiff "does not allege [she] was deceived in New York" and she purchased the product outside of New York, her GBL claims must be dismissed. *Id.* (dismissing claims); *see also Wheeler v. Topps Co.,* 2023 WL 405015, at *1-3 (S.D.N.Y. Jan. 25, 2023) (dismissing claims).

There is no connection alleged between the plaintiffs and New York: they are California and Massachusetts citizens and bought the Product there. (FAC ¶¶ 11-12.) Their claim, as well as those of any non-New York putative class members, fail. *Kaufman v. Sirius XM Radio, Inc.*, 751 F. Supp. 2d 681, 688 (S.D.N.Y. 2010), *aff'd*, 474 F. App'x 5 (2d Cir. 2012) (dismissing claim).

## V.      The Fraud Claim Fails.

The FAC does not adequately plead fraudulent intent. "[T]he Second Circuit has 'repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of

fraudulent intent.'" *Myers*, 2022 WL 603000, at *7 (quoting *United States ex rel. Tessler v. City of New York*, 712 F. App'x 27, 29 (2d Cir. 2017)). Here, the FAC does not contain allegations to establish a strong inference—or any inference—of fraudulent intent. The plaintiffs merely allege that the alleged misrepresentations "were made with knowledge of their falsehood." (FAC ¶ 143.) Courts routinely reject such conclusory allegations. *See Myers*, 2022 WL 603000, at *7; *Spurck v. Demet's Candy Co.* 2022 WL 2971957, at *6 (S.D.N.Y. July 27, 2022) (Román, J.).

In *Spurck*, the Court dismissed a fraud claim, holding that the allegation that "[d]efendant's intent 'is evinced by its knowledge that the Product was not consistent with its representations'" was insufficient. 2022 WL 2971957, at *6 (citation omitted). Here, as there, there is no hint as to who at Danone supposedly had actual knowledge of any fraud, when he or she purportedly knew of the fraud, or how they arrived at that conclusion. The fraud claim should be dismissed.

## VI.   **The Breach of Implied Warranty Claims Fail**.

Not only was there no misrepresentation,[10] but the implied warranty claims also fail because (A) there is no privity as required in New York and California and they are barred by the economic loss doctrine and (B) the Product was fit for human consumption. In addition, (C) the fitness for a particular purpose claim also fails because the plaintiffs do not allege facts showing that Danone knew the "particular purpose" for which the Product was intended.

### A.    The Plaintiffs Do Not Plead Privity Under NY and California Law and The Claim is Barred by the Economic Loss Doctrine Under Massachusetts Law.

New York and California law both "require privity . . . with respect to claims for breach of the implied warranties of merchantability and fitness for a particular purpose where the only loss alleged is economic." *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 556 (S.D.N.Y.

---

[10] *Kennedy v. Mondelez Glob. LLC*, 2020 WL 4006197, at *14 (E.D.N.Y. July 10, 2020) ("reasonable consumer" standard for purposes of a breach of express warranty claim "is the same" as the GBL; *Solak*, 2018 WL 1870474, at *11 (where allegations insufficient to mislead a reasonable consumer, breach of express warranty" claim fails).

2016); *accord Mazella*, 548 F. Supp. 3d at 361 (dismissing claims). "A remote purchaser, such as a retail purchaser, is not in privity with a good's manufacturer." *Zachmann*, 2022 WL 161480, at *5-6 (dismissing claim). Here, the plaintiffs allege only an economic loss and they purchased from third-party retailers. (FAC ¶¶ 11-12). Thus, they are not in privity with Danone. (*Id.*)[11]

Massachusetts' economic loss doctrine bars the implied and express warranty claims where, like here, they sound in tort and the plaintiffs do not plead non-economic damages. *See, e.g., Fitzgerald v. Polar Corp.*, 2020 WL 6586628, at *4, n.9 (D. Mass. Nov. 10, 2020) (dismissing claims).

B.   The Product Was Fit for Human Consumption.

The implied warranty of merchantability "requires only that the goods sold be of 'a minimal level of quality,'" so that they are "fit for the ordinary purposes for which such goods are used." *Caronia v. Philip Morris USA, Inc*., 715 F.3d 417, 433-34 (2d Cir. 2013) (citations omitted). A food product is merchantable unless it is "unfit to be consumed." *Brumfield v. Trader Joe's Co*., 2018 WL 4168956, at *4 (S.D.N.Y. Aug. 30, 2018); *see also Myers*, 2022 WL 603000, at *7 (dismissing claim); *Kennard v. Kellogg Sales Co.*, 2022 WL 4241659, at *7 (N.D. Cal. Sept. 14, 2022) (same); *Ide v. Foreign Candy Co., Inc.*, 2006 WL 3361525, at *4 (Mass. App. Ct. Nov. 15, 2006) (food only required to be fit for human consumption).

Although the plaintiffs allege in a conclusory fashion that the Product was not merchantable (FAC ¶ 124), they do not allege that it was contaminated, that they could not drink it, or that it was otherwise unfit for consumption. The plaintiffs' implied warranty of

---

[11] Although California courts recognize an exception to the privity requirement for "foodstuff," the exception does not apply where, like here, the plaintiffs allege no physical injury and the product was safe for consumption. *Andrade-Heymsfield v. NextFoods, Inc.*, 2022 WL 1772262, at *6-7 (S.D. Cal. Apr. 27, 2022) (dismissing claim). And the plaintiffs cannot avail themselves of a "third-party beneficiary" exception to the privity requirement because (1) the FAC does not include any allegations to support of theory, and (2) the majority of California courts do not apply the exception "in the context of consumer claims." *Klaehn v. Cali Bamboo, LLC*, 2021 WL 3044166, at *15 (S.D. Cal. June 14, 2021), *aff'd*, 2022 WL 1830685 (9th Cir. June 3, 2022). The Court should follow this line of authority.

merchantability claim fails as a result.

C.   Danone Did Not Know of Any "Particular Purpose."

"[T]he implied warranty of fitness for a particular purpose does not arise in every consumer sale, but only when a seller knows or has reason to know the *particular* purpose for which a buyer requires goods, and also knows or should know that the buyer is relying on his special knowledge." *Catalano*, 167 F. Supp. 3d at 558 (quoting *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 249 (2d Cir. 1986) (emphasis added)). Here, the plaintiffs fail to allege either.

"A 'particular purpose' is different from the 'ordinary purpose' of the goods." *O'Neil v. Argon Med. Devices, Inc.*, 2020 WL 1149904, at *9 (N.D.N.Y. Feb. 13, 2020) (citation omitted), *R. & R. adopted*, 2020 WL 1140511 (N.D.N.Y. Mar. 9, 2020); *see also Tears v. Bos. Sci. Corp.*, 344 F. Supp. 3d 500, 513-14 (S.D.N.Y. 2018) (dismissing warranty of fitness claim that was indistinguishable from merchantability claim); *Watkins v. MGA Ent., Inc.*, 550 F. Supp. 3d 815, 832 (N.D. Cal. 2021) (dismissing claim); *Laspesa v. Arrow Int'l, Inc.*, 2009 WL 5217030, *4 (D. Mass. Dec. 23, 2009) ("When the buyer plans to use the product for its ordinary purpose, the only implied warranty is the warranty of merchantability[.]") (citations omitted). Here, the plaintiffs fail to allege that they purchased the Product for something other than its ordinary purpose—consumption. This claim must be dismissed.

**VII.   The Unjust Enrichment Claim Fails.**

The unjust enrichment claim fails. Under California law, unjust enrichment is not a cause of action, but rather a "general principle . . . synonymous with restitution." *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (Cal Ct. App. 2014) (citation omitted); *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (Cal. Ct. App. 2011) ("Unjust enrichment is not a cause of action, just a restitution claim."). Following this line of cases, the plaintiffs' unjust enrichment claim must be dismissed. Under Massachusetts law, a claim for unjust

enrichment is not available where—like here—a plaintiff has an adequate remedy at law through another claim, such as 93A (even if not viable). *Shaulis*, 865 F.3d at 16.

Under New York law, "courts in the Second Circuit have consistently held that unjust enrichment claims are duplicative of GBL claims." *Dwyer*, 598 F. Supp. 3d at 157 (citation omitted) (dismissing claim); *Pittman*, 2022 WL 2967586, at *7 (same). Because the plaintiffs' "unjust enrichment claim is premised on the same factual allegations as [their] other claims, and [they have] not alleged any damages separate from those other claims," it should be dismissed. *Pittman*, 2022 WL 2967586, at *7; *compare* Count VII, *with* Counts I-VI and VIII.

Even if the claim was not duplicative (which it is), it still fails because: (1) Danone did not make any misleading statement, *Myers*, 2022 WL 603000, at *8 (dismissing claim where the plaintiff "has not plausibly alleged that a reasonable consumer would be misled or deceived by the Product's label"); and (2) the plaintiffs have not adequately pled that Danone was unjustly enriched. Equitable relief is not warranted if the product was purchased and used as intended. *See, e.g., Fink v. Time Warner Cable*, 837 F. Supp. 2d 279 (S.D.N.Y. 2011). The plaintiffs claim that Danone retained "non-gratuitous benefits" and the "revenues derived from . . . the . . . purchases of the Product." (FAC ¶¶ 138-39.) But the plaintiffs do not plead that they could not drink the water as intended, so they have not alleged that Danone benefited at their expense or that equity and good conscience require the return of her payment.

## VIII.   **The Claim for Equitable Relief Fails**.

Ms. Dorris' equitable claim brought under the CLRA, and demand for equitable remedies throughout the FAC, independently fail because she cannot demonstrate the inadequacy of legal remedies. A plaintiff seeking equitable relief must establish that there is no adequate "remedy at law" available. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 842-43 (9th Cir. 2020). Although Ms. Dorris summarily states that no legal remedy would be adequate (FAC ¶ 79), her legal claims

for money damages mirror the equitable restitution she seeks, fatally undermining her claim. *Sonner,* 971 F.3d at 844-45 (affirming grant of motion to dismiss and dismissing UCL restitution claim with prejudice).

As for injunctive relief, Ms. Dorris lacks Article III and statutory standing to pursue it because she does not allege an intent to purchase the Product in the future. *In re Coca-Cola Prods. Mktg.*, 2021 WL 3878654, at *2-3 (9th Cir. Aug. 31, 2021) (no Article III standing where plaintiffs did not allege they would purchase the product again)*; Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 647 (S.D.N.Y. 2011), *on reconsideration,* 2011 WL 5121068 (S.D.N.Y. Oct. 28, 2011) (plaintiff lacked CLRA standing for injunctive relief).

## IX.    **The Dismissal Should Be with Prejudice.**

The Court should dismiss the FAC with prejudice and deny further leave to amend. "[A] plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend." *Myers*, 2022 WL 603000, at *8 (citing *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim"). Here, the plaintiffs have already amended once. Then, Danone's pre-motion letter provided notice of the FAC's deficiencies, and the plaintiffs declined to fix those deficiencies. Their claims fail as a matter of law, and they should not receive another bite at the apple to try to save them.

## CONCLUSION

There is no misrepresentation here. Danone respectfully requests that this Court dismiss the Complaint in its entirety with prejudice.

Dated: March 13, 2023                    Respectfully submitted,

                                         **DLA Piper LLP (US)**

                                         */s/ Keara M. Gordon*
                                         Keara M. Gordon
                                         *Attorney for Defendant*
                                         *Danone Waters of America*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on March 13, 2023, the foregoing Memorandum of Law in

Support of Danone's Motion to Dismiss the Complaint was served on the following counsel via

electronic mail:

**BURSOR & FISHER, P.A.**
Max S. Roberts
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: mroberts@bursor.com

Brittany S. Scott (Pro Hac Vice Forthcoming)
Emily A. Horne (Pro Hac Vice Forthcoming)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: bscott@bursor.com
        ehorne@bursor.com

*Attorneys for the plaintiffs*

Dated: March 13, 2023

                                                    */s/ Keara M. Gordon*
                                                    Keara M. Gordon