**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEPHANIE DORRIS and JOHN AXIOTAKIS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DANONE WATERS OF AMERICA,<br><br>Defendant. | Case No. 7:22-cv-08717-NSR<br><br>Hon. Nelson S. Román |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Dated: April 12, 2023

**BURSOR & FISHER, P.A.**
Philip L. Fraietta
Max S. Roberts
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com
        mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Brittany S. Scott*
Emily A. Horne*
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: bscott@bursor.com
        ehorne@bursor.com

*Attorneys for Plaintiff*

*\*Pro Hac Vice Application Forthcoming*

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ................................................................................................1

LEGAL STANDARD.........................................................................................2

ARGUMENT ......................................................................................................3

    I.      PLAINTIFFS PLAUSIBLY ALLEGE CONSUMER DECEPTION .........3

        A.      Consumer Deception Is A Question Of Fact ...................................3

        B.      Plaintiffs Plausibly Allege A Reasonable Consumer Would Be
                Misled By The "Carbon Neutral" Claim .........................................5

        C.      The Product's Third-Party Logo Does Not Cure The Misleading
                Claim...............................................................................................7

    II.      THE FTC GREEN GUIDES ILLUSTRATE WHY THE CLAIM IS
        MISLEADING.........................................................................................12

    III.    PLAINTIFFS SUFFICIENTLY ALLEGE INJURY................................13

    IV.    PLAINTIFFS PLAUSIBLY PLEAD A CLAIM UNDER 93A ...............16

    V.      PLAINTIFFS HAVE ALLEGED VIOLATION OF GBL §§ 349 AND
        350....................................................................................................17

    VI.    PLAINTIFFS HAVE SUFFICIENTLY ALLEGED THEIR FRAUD
        CLAIM UNDER FED. R. CIV. P. 9(B) ....................................................18

    VII.   PLAINTIFF DORRIS PLAUSIBLY ALLEGES A BREACH OF
        IMPLIED WARRANTY UNDER CALIFORNIA ..................................20

    VIII.  PLAINTIFFS MAY PLEAD UNJUST ENCRICHMENT IN THE
        ALTERNATIVE.......................................................................................22

CONCLUSION.................................................................................................23

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Aghaeepour v. Northern Leasing Systems, Inc.*,
  2015 WL 7758894 (S.D.N.Y Dec. 1, 2015) ................................................................. 18

*Allred v. Frito-Lay North America, Inc.*,
  2018 WL 1185227 (S.D. Cal. March 7, 2018) .............................................................. 20

*Anthony v. Pharmavite*,
  2019 WL 109446 (N.D. Cal. Jan. 4, 2019) ..................................................................... 4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................................... 2

*Axon v. Florida's Nat. Growers, Inc.*,
  813 F. App'x 701 (2d Cir. 2020) ................................................................................... 14

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................................... 2,3

*Branca v. Bai Brands, LLC*,
  2019 WL 1082562 (S.D. Cal. March 7, 2019) ............................................................. 20

*Choi v. Kimberly-Clark Worldwide, Inc.*,
  2019 WL 4894120 (C.D. Cal. Aug. 28, 2019) ............................................................. 22

*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008) ..................................................................................... 21

*Colpitts v. Blue Diamond Growers*,
  527 F. Supp. 3d 562 (S.D.N.Y. 2021) .......................................................................... 15

*Crane v. Sexy Hair Concepts, LLC*,
  2017 WL 8728961 (D. Mass. Oct. 10, 2017) ............................................................... 16

*Cristostomo v. New Balance Athletics, Inc.*,
  2022 WL 17904394 (D. Mass. Dec. 23, 2022) ........................................................ 4, 20

*Cruz v. FXDirectDealer, LLC*,
  720 F.3d 115 (2d Cir. 2013) .................................................................................... 17, 18

*DaCorta v. AM Retail Group, Inc.*,
  2018 WL 557909 (S.D.N.Y. Jan. 23, 2018) ................................................................. 15

*Daniel v. Tootsie Roll Industries, LLC*,
  2018 WL 3650015 (S.D.N.Y. Aug. 1, 2018) ............................................................... 17

*Donnefeld v. Petro, Inc.*,
   2018 WL 4356727 (E.D.N.Y. Sept. 12, 2018) ........................................................ 17

*Downing v. Keurig Green Mountain, Inc.*,
   2021 WL 2403811 (D. Mass. June 11, 2021) .................................................... 9, 13

*Dumont v. Reily Foods Co.*,
   934 F.3d 35 (1st Cir. 2019) ................................................................. 1, 3, 5

*Duran v. Henkel of America Inc.*,
   450 F. Supp. 3d 337 (S.D.N.Y. 2020) ...................................................... 14

*Dwyer v. Allbirds*,
   598 F. Supp. 3d 137 (S.D.N.Y 2022) ...................................................... 9, 10

*Ebin v. Kangadis Food Inc.*,
   2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013) .......................................... 20

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ................................................................. 7

*Fieldstone Co. v. Briggs Plumbing Prod., Inc.*,
   54 Cal. App. 4th 357 (1997) ................................................................. 21

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
   8 F. Supp. 3d 467 (S.D.N.Y. 2014) ...................................................... 3

*Greene v. Gerber Prods. Co.*,
   262 F. Supp. 3d 38 (E.D.N.Y. 2017) ...................................................... 14

*Grossman v. Simply Nourish Pet Food Co. LLC*,
   2021 WL 293774 (E.D.N.Y. Jan. 27, 2021) .......................................... 2

*Gustavsen v. Alcon Laboratories, Inc.*,
   903 F.3d 1 (1st Cir. 2018) ................................................................. 14

*Gutierrez v. Lemonade, Inc.*,
   2022 WL 3214852 (S.D.N.Y Aug. 9, 2022) .......................................... 18

*Hendricks v. StarKist Co.*,
   30 F. Supp. 3d 917 (N.D. Cal. 2014) ...................................................... 21

*Holve v. McCormick & Co., Inc.*,
   2018 WL 3861406, (W.D.N.Y. Aug. 14, 2018) .......................................... 17

*Hughes v. Ester C Co.*,
   930 F. Supp. 2d 439 (E.D.N.Y. 2013) ...................................................... 4

*In re Frito-Lay N. Am., Inc. All Natural Litig.*,
  2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ......................................................... 3

*In re KIND LLC*,
  2022 WL 4125065 (S.D.N.Y Sept. 9, 2022) ............................................................ 7

*Jovel v. i-Health, Inc.*,
  2013 WL 5437065 (E.D.N.Y. Sept. 27, 2013) ........................................................ 20

*Kacocha v. Nestle Purina Petcare Co.*,
  2016 WL 4367991 (S.D.N.Y Aug. 12, 2016) .......................................................... 15

*Kang v. P.F. Chang's China Bistro, Inc.*,
  844 Fed. Appx. 969 (9th Cir. 2021) ........................................................................ 7

*Kelly v. Beliv LLC*,
  2022 WL 16836985 (S.D.N.Y. Nov. 9, 2022) ........................................................ 17

*Koenig v. Boulder Brands, Inc.*,
  995 F. Supp. 2d 274 (S.D.N.Y 2014) .................................................................... 4, 9

*Langan v. Johnson & Johnson Consumer Cos.*,
  897 F.3d 88 (2d Cir. 2018) ................................................................................ 17, 18

*Mantikas v. Kellogg Co.*,
  910 F.3d 633 (2d Cir. 2018) .................................................................................... 5

*Martinez v. Metabolife Int'l, Inc.*,
  113 Cal. App. 4th 181 (2003) ................................................................................ 20

*Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*,
  412 F.3d 215 (1st Cir. 2005) .................................................................................. 23

*McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*,
  775 F.3d 109 (1st Cir. 2014) .................................................................................. 13

*Mogull v. Pete and Garry's Organics, LLC*,
  2022 WL 602971 (S.D.N.Y. Feb. 28, 2022) .......................................... 8, 9, 11, 20

*Morris v. Mott's LLP*,
  2019 WL 948750 (C.D. Cal. Feb. 26, 2019) ..................................................... 20, 21

*Myers v. Starbucks Corp.*,
  2020 WL 13302437 (C.D. Cal. July 29, 2020) ................................................. 10, 11

*Orlander v. Staples, Inc.*,
  802 F.3d 289 (2d Cir. 2015) ................................................................................... 15

*Parino v. BidRack, Inc.*,
  838 F. Supp. 2d 900 (N.D. Cal. 2011) ................................................................. 22

*Patellos v. Hello Prod., LLC*,
  523 F. Supp. 3d 523 (S.D.N.Y. 2021)................................................................... 20

*Pershouse v. L.L. Bean, Inc.*,
  368 F. Supp. 3d 185 (D. Mass. 2019) ............................................................. 22, 23

*Polk v. Del Gatto, Inc.*,
  2021 WL 3146291 (S.D.N.Y. July 23, 2021) ....................................................... 18

*Quinn v. Walgreen Co.*,
  958 F. Supp. 2d 533 (S.D.N.Y. 2013)..................................................................... 1

*Rodriguez v. Hanesbrands Inc.*,
  2018 WL 2078116 (E.D.N.Y. 2018)...................................................................... 14

*Romero v. Flowers Bakeries, LLC*,
  2015 WL 2125004 (N.D. Cal. May 6, 2015) ..................................................... 22, 23

*Rossi v. Gem Nation Corp.*,
  2021 WL 7906550 (E.D.N.Y. July 27, 2021) ....................................................... 19

*Sec. Exchange Commission v. One or More Unknown Traders in Sec. of Onyx Pharm., Inc.*,
  296 F.R.D. 241 ...................................................................................................... 23

*Segedie v. Hain Celestial Group, Inc.*,
  2015 WL 2168374 (S.D.N.Y. May 7, 2015) ......................................................... 16

*Shield v. Citytrust Bancorp, Inc.*,
  25 F.3d 1124 (2d Cir. 1994)................................................................................. 19

*Segovia v. Vitamin Shoppe, Inc.*,
  2017 WL 638747 (S.D.N.Y. Dec. 12, 2017) ........................................................ 14

*Stoltz v. Fage Diary Processing Industry, S.A.*,
  2015 WL 5579872 (E.D.N.Y. 2015)........................................................................ 4

*Twohig v. Shop-Rite Supermarkets, Inc.*,
  2021 WL 8728961 (S.D.N.Y. Feb. 11, 2021)........................................................ 18

*Veera v. Banana Republic, LLC*,
6 Cal. App. 5th 907 (2016) ................................................................................... 14

*Vieira v. First American Title Ins. Co.*,
  668 F. Supp. 2d 282 (D. Mass. 2009) .................................................................. 22

*Warrant v. Stop & Shop Supermarket, LLC*,
  2022 WL 815300 (S.D.N.Y. March 16, 2022) .......................................................................... 3

*Williams v. Gerber Prod. Co.*,
  552 F.3d 934 (9th Cir. 2008) ..................................................................................... 1, 2, 3, 5

*Zimzam Telecard, Inc. v. New Jersey's Best Phonecards,*
  524 F. Supp. 3d 136 (D. Mass. 2007) ....................................................................................... 22

**STATUTES**

Cal. Com. Code § 2314 ..................................................................................................................... 21

Mass. Gen. Laws ch. 93A .................................................................................................................. 16

**RULES**

FED. R. CIV. P. 8(d) ......................................................................................................................... 22

FED. R. CIV. P. 9(B)18 ................................................................................................................ i, 18

FED. R. CIV. P.23(b)(3) ................................................................................................................... 17

**REGULATIONS**

16 C.F.R. § 260.4 ...................................................................................................................... 12, 13

16 C.F.R. § 260.4(b) .................................................................................................................. 13, 14

16 C.F.R. § 260.5 ...................................................................................................................... 12, 13

## INTRODUCTION

"Defendant manufactures, markets, advertises, labels, packages, and sells … Evian Natural Spring Water [] in a variety of sizes … and in a variety of packaging."  First Amended Complaint ("FAC") ¶ 37.  Defendant represents that these water bottles ("the Product") are "carbon neutral," and "reasonable consumers reviewing the Product's label and packaging would believe [that claim to mean that] the manufacturing of the Product is sustainable and does not leave a carbon footprint."  *Id.* ¶¶ 7, 38.  However, "the Product is not actually 'carbon neutral' as that term is understood by reasonable consumers."  *Id.* ¶ 9.  Instead, the "representation is false: Defendant's manufacturing of the Product still causes carbon dioxide ("CO2") to be released into the atmosphere."  *Id.* ¶ 7.

Defendant primarily argues that Plaintiffs "cannot demonstrate that the statement 'carbon neutral' was misleading to a reasonable consumer acting reasonably and the claims must be dismissed."  Motion to Dismiss ("MTD") at 8.  Contrary to Defendant's assertion, that is not a question for the Court at this stage.  "[W]hether [a] label ha[s] the capacity to mislead consumers" is a question of fact.  *Dumont v. Reily Foods Co.*, 934 F.3d 35, 40 (1st Cir. 2019) (under Massachusetts law, "whether the label had the capacity to mislead consumers, acting reasonably under the circumstances … That question is one of fact.") (internal citations omitted); *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) ("California courts, however, have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer."); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013) ("[W]hether a particular act or practice is deceptive is usually a question of fact.").

Moreover, the question is not whether Plaintiffs' understanding of "carbon neutral" matches the dictionary definition.  Rather, it is whether a reasonable consumer would understand

1

the "carbon neutral" label to mean that the Product did not produce carbon emissions.  *See*, *e.g.*, *Williams*, 552 F.3d at 939 *1194 ("[T]he statement that Fruit Juice Snacks was made with 'fruit juice and other All Natural ingredients' could easily be interpreted by consumers as a claim that all the ingredients in the product were natural, which appears to be false."); *Grossman v. Simply Nourish Pet Food Co. LLC*, 2021 WL 293774, at *9 (E.D.N.Y. Jan. 27, 2021) ("[P]laintiff plausibly alleged that a reasonable consumer viewing the Products' label may interpret the 'natural' claim to mean that the Products do not contain synthetic ingredients and that all of the Products' ingredients – including the 'added vitamins and minerals' – are natural. It is not unreasonable as a matter of law for a consumer to expect that a product labeled 'natural' to contain only natural, and not synthetic ingredients.").  Here, Plaintiffs allege that a reasonable consumer would not expect a "carbon neutral" product to emit carbon into the atmosphere, yet "Defendant's manufacturing of the Product still causes carbon dioxide to be released into the atmosphere."  FAC ¶ 7.  Nothing more is required.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).  A claim is plausible on its face "when the pleaded [facts] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  The factual allegations pled "must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 55.

## ARGUMENT

## I.    PLAINTIFFS PLAUSIBLY ALLEGE CONSUMER DECEPTION

Defendant argues Plaintiffs fail to allege "that the statement 'carbon neutral' was misleading to a reasonable consumer acting reasonably" and thus "the claims must be dismissed."  Motion to Dismiss ("MTD") at 8.  Specifically, Defendant contends that (1) "no reasonable consumer would interpret 'carbon neutral' to mean that the Product does not emit any carbon dioxide whatsoever during its entire life cycle"; (2) "the Product's label accurately states that the Carbon Trust, an independent third party, certified the Product as 'carbon neutral'"; and (3) "the plaintiffs cannot rely on purported violations of the FTC Green Guides to support their claims."  *Id.*  These arguments fail.

### A.    Consumer Deception Is A Question Of Fact

As an initial matter, Defendant asks the Court to find, as a matter of law, that no reasonable consumer would be misled by the Product's advertising because the "carbon neutral" claim is true and because the claim "reflect[s] that the Product is certified as 'carbon neutral' by the Carbon Trust."  MTD at 9.  But, it is well-settled that "[t]he question whether a reasonable consumer would likely be deceived … is a factual dispute" that is "generally not resolved on a motion to dismiss."  *In re Frito-Lay N. Am., Inc. All Natural Litig.*, 2013 WL 4647512, at *15 (E.D.N.Y. Aug. 29, 2013) (internal citations omitted); *see also Warrant v. Stop & Shop Supermarket, LLC*, 2022 WL 815300, at *7 (S.D.N.Y. March 16, 2022) (Román, J.) (finding the Court is "hardly in a position to declare that reasonable consumers would not be misled" at the pleadings stage); *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 478-80 (S.D.N.Y. 2014) (Román, J.) (explaining that whether a practice is misleading is usually "a question of fact" and that "the Court cannot hold as a matter of law that the product labels are not misleading to a reasonable consumer"); *see also Williams*, 552 F.3d at 938 (same); *Dumont*, 934

F.3d at 41 (same).  Accordingly, it is premature for the Court to determine whether a reasonable

consumer would be misled by Defendant's "carbon neutral" claim.

Moreover, Defendant cannot rely on the link to its website on the back label to

"disabuse[] anyone of the notion that there is no carbon emitted during the manufacturing,

production, and distribution processes."  MTD at 14; *see id.* at 4-5.  It is well established that

"directing consumers to [a] disclaimer" does not cure a deceptive claim because "there is a

question of fact whether a reasonable consumer would notice [the direction] and follow it to the

disclaimer."  *Anthony v. Pharmavite*, 2019 WL 109446, at *4 (N.D. Cal. Jan. 4, 2019); *Hughes v.

Ester C Co.*, 930 F. Supp. 2d 439, 463-65 (E.D.N.Y. 2013) (denying motion to dismiss because

"[a]t this early stage …, it cannot be determined whether a disclaimer on the back … eliminates

the possibility of a reasonable consumer being mislead"); *see also Cristostomo v. New Balance

Athletics, Inc.*, --- F. Supp. 3d ---, 2022 WL 17904394, at *4 (D. Mass. Dec. 23, 2022)

("[P]laintiffs plausibly allege that the disclaimer too inconspicuous for the qualification to be

brought to the consumers attention").  "[T]he significance of a disclaimer depends upon factors

such as the font size and placement of the disclaimer as well as the relative emphasis placed on

the disclaimer and the allegedly misleading statement."  *Stoltz v. Fage Diary Processing

Industry, S.A.*, 2015 WL 5579872, at *16 (E.D.N.Y. 2015*); see Koenig v. Boulder Brands, Inc.*,

995 F. Supp. 2d 274, 287-88 (S.D.N.Y 2014) (holding that disclosure did not, as a matter of law,

cure alleged misrepresentation because "a reasonable consumer might … focus on the more

prominent portion of the product label … and overlook the smaller text [of the disclosure]").

Here, there is no explicit disclaimer of the "carbon neutral" claim on the Product.

Instead, Defendant asks consumers to turn to the back of the product, notice the label "We are

Certified Carbon Neutral evian.com," go to Defendant's website, then search for its

4

sustainability page to understand the "carbon neutral" claim.  *See* MTD at 4-5, 14.  If "a reasonable consumer should not be expected to consult … the side of the [product] to correct misleading information … on the front of the [product]," then a reasonable consumer should not be expected to consult the back of Defendant's Product, then go to its website, and then search for the sustainability webpage to correct the misleading information.  *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018); *Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) (holding that a back label that did not conform what was on the front label could not defeat a pleading stage challenge to plaintiff's consumer protection claims); *Dumont*, 934 F.3d at 37-38 (sustaining claims for deceptive acts where front label stated "Hazelnut Crème" but back label made clear there was no hazelnut in the coffee).  Accordingly, the back label's mention of Defendant's website does not prevent the "carbon neutral" claim from being deceptive.

### B.     Plaintiffs Plausibly Allege A Reasonable Consumer Would Be Misled By The "Carbon Neutral" Claim

To the extent the Court addresses the "reasonable consumer" inquiry at this stage—and it should not—the Court cannot conclude as a matter of law that a reasonable consumer would be misled by the Product's "carbon neutral" claim.  The Product is not actually "carbon neutral" as that term is understood by reasonable consumers, and a third-party's logo on the Product does not cure that deception.

Defendant contends that because "no carbon zero products exist yet" then reasonable consumers "could [not] misunderstand 'certified carbon neutral' to mean that … [the Product] emits no carbon."  MTD at 13.  Defendant further asserts that because Merriam-Webster defines "carbon neutral" as "counterbalancing the emission of carbon dioxide with carbon offsets," then a reasonable consumer could not misunderstand the "carbon neutral" label to mean the Product produced zero carbon emissions.  *Id.*  These arguments are wrong.

Despite Defendant's contentions, Plaintiffs sufficiently plead that a reasonable consumer would be misled by the "carbon neutral" claim on the Product.  Here, Plaintiffs allege that a recent study found that "nearly sixty percent of American consumers do not understand what the term 'carbon neutral' means," and "reasonable consumers often mistake 'carbon neutral' for 'carbon zero.'"[1]  FAC ¶¶ 26, 28.  Specifically, forty-one percent of respondents correctly defined "carbon neutral," twenty-nine percent incorrectly defined "carbon neutral," and thirty percent did not know what "carbon neutral" meant.  *Id.* n.31; *see also* MTD at 15.

Defendant argues that if thirty percent of respondents did not know what carbon neutral means, then those consumer "could not reasonably claim to be swayed one way or the other." MTD at 15.  Thus, under Defendant's logic, forty-one percent of respondents who understand the term plus thirty percent of respondents who do not understand the term equals "seventy-one percent of … consumers [who] could not reasonably be mislead by a 'carbon neutral' claim." MTD at 15.  This argument defies common sense.  If survey respondents do not understand what "carbon neutral" means, then they are exactly the type of consumers who would be reasonably swayed by misleading marketing practices.  Furthermore, Plaintiffs allege that over half of Americans who identify as environmentalists (*i.e.*, those who have changed their consumer behavior due to a concern about climate change) do not understand the "carbon neutral" claim.[2] FAC ¶ 27.  Even "politicians, businesses, scientists, and experts driving the climate conversate use climate action terminology interchangeably, which only increases consumers' confusion of what carbon neutral actually means." *Id.* ¶ 27.

---

[1] "'Carbon neutral is technically defined as 'having or resulting in no net addition of carbon dioxide in the atmosphere,'" whereas "[c]arbon zero companies do not produce *any* carbon in the entire supply chain, including the raw materials, logistics, and packaging." FAC ¶¶ 26, 28 (emphasis in original).

[2] Twenty-four percent do not know what "carbon neutral" means while twenty-nine percent incorrectly define the term.  FAC ¶ 27 n.32.

Despite the inexistence of "carbon zero" products, despite the dictionary definition, and despite Defendant's attempt to recharacterize the survey data, the facts remain—a majority of American consumers do not understand the "carbon neutral" claim, a majority of self-identified environmentalists do not understand the "carbon neutral" claim, and leaders within the environmental space conflate terminology to cause further confusion amongst consumers. *See* FAC ¶¶ 26-28. Accordingly, Plaintiffs sufficiently allege that the "carbon neutral" claim would mislead a significant portion of the general consuming public to reasonably believe the Product does not emit any $CO_2$ in its production process. *See Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) ("[T]he reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be mislead") (internal citations omitted); *see*, *e.g.*, *Kang v. P.F. Chang's China Bistro, Inc.*, 844 Fed. Appx. 969, 971 (9th Cir. 2021) (finding reasonable consumers would be misled by "krab mix" because it is not a commonly understood term).[3]

### C. The Product's Third-Party Logo Does Not Cure The Misleading Claim

Defendant contends the label is not misleading because the claim merely "reflect[s] that the Product is certified as carbon neutral by the Carbon Trust." MTD at 9. As an initial matter, the Carbon Trust logo, or any other form of third-party disclaimer, does not appear next to each "carbon neutral" claim on the Product. *Id.* at 3-5; FAC ¶¶ 5, 44. Instead, the only place that the Product states that it is "certified carbon neutral" is on the back of the Product, which, as discussed above, a reasonable consumer should not have to turn to in order to understand a

---

[3] Defendant relies on *In re KIND LLC*, 2022 WL 4125065, at *9 (S.D.N.Y Sept. 9, 2022) to assert that allegations that a diversity of views does not demonstrate that a reasonable consumer would be mislead. However, *In re KIND LLC* was decided on summary judgement, not at a motion to dismiss. Thus, in *In re KIND LLC*, the court assessed evidence that Plaintiffs here have not had the opportunity to produce.

misleading label.  MTD at 4-5; FAC ¶¶ 5, 44; *see* Argument § I.A, *supra*.  Therefore, Defendant cannot argue a reasonable consumer would understand "carbon neutral" to mean the Product meets some third-party standard because there is nothing on the label to indicate that is what is meant by "carbon neutral."

Even if Defendant intended the "carbon neutral" claim to only mean that the Product meets certain third-party standards, the claim is still misleading.  *Mogull v. Pete and Garry's Organics, LLC*, 2022 WL 602971 (S.D.N.Y. Feb. 28, 2022) (Briccetti, J.), is instructive.  In *Mogull*, the plaintiff challenged the defendant's claim that its farm eggs were from "free-range" hens, despite the hens being packed into "henhouses 20,000 at a time, many of which are unable to ever access outside space." *Id.* at *4.  There, like here, the defendant argued that "the challenged statements [were] true because its farming practices [met] the 'Certified Humane Free-Range' qualifications" and were therefore not deceptive. *Id.* at *3.  Judge Briccetti rejected defendant's argument, finding "it is plausible a reasonable consumer would not understand 'free-range eggs' to convey that [defendant's] eggs meet the 'Certified Humane' standard." *Id.* Specifically, Judge Briccetti focused on the fact that "'free-range' is displayed as a standalone phrase throughout defendant's packaging, and only appears once directly adjacent to 'Certified Humane.'" *Id.*

The same is true here.  Defendant states, in large font on the front of the Product's packaging, that the Product is "carbon neutral."  FAC ¶ 5.  On the front of the 1L bundled package, the "carbon neutral" claim appears *completely separate* from the Carbon Trust logo, without any explanation that this environmental claim is actually a certification instead of an affirmation by Defendant.  MTD at 3; FAC ¶¶ 5, 44.  On the front of the singular bottle, the "carbon neutral" claim similarly *stands completely alone*, without any explanation about the

claim or mention of certification.  MTD at 4-5; FAC ¶¶ 5, 44.  Instead, for the singular bottle, the Carbon Trust logo and the statement that the Product is "certified carbon neutral" is *only* on the back, which does not sufficiently disclose to a reasonable consumer what the "carbon neutral" claim means.  MTD at 4-5; *see* Argument § I.A, *supra*.

Furthermore, "[e]ven assuming it was clear that, by 'carbon neutral,' Defendant meant the Product meets Carbon Trust standards, the claim would still be misleading.  Nowhere on the packaging or the bottle does Defendant explain what Carbon Trust is, what their carbon neutral logo means, or how Defendant goes about achieving the Carbon Trust's standards."  FAC ¶ 45.  And even on Defendant's website, "the phrase ['carbon neutral'] is stated separately from the [Carbon Trust certification or what those standards encompass]."  *Mogull*, 2022 WL 602971, at *3; *see also* FAC ¶ 46; *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014) ("[A] reasonable consumer might also focus on the more prominent portion of the product label that touts the product as 'Fat Free Milk and Omega–3s,' and overlook the smaller text that discloses the fat content on the front of the carton or the nutrition label."); *Downing v. Keurig Green Mountain, Inc.*, 2021 WL 2403811, at *6 (D. Mass. June 11, 2021) ("The warning 'check locally' did not make [] customers unreasonable in assuming the Pods were recyclable.").

Defendant's reliance on *Dwyer v. Allbirds*, 598 F. Supp. 3d 137 (S.D.N.Y 2022), is misplaced.  There, the defendant advertised their wool shoes as environmentally friendly.  *Id.* at 144.  The plaintiff alleged that the environmental claims were misleading because the methodology and data used to calculate the shoes' environmental impact were unreliable and thus misleading.  *Id.* at 145-46.  However, the court dismissed the claims because the allegations were a criticism of the "calculation of the [shoes'] carbon footprint" rather than "a description of a false, deceptive, or misleading [label on] the Product."  *Id.* at 149.  Notably, the court explained

that the defendant "[did] not mislead the reasonable consumer because [defendant] makes clear what *is* included in the carbon footprint calculation," and "it [was] not plausible that a consumer would be misled into thinking that Defendant undertook its carbon-footprint calculation in any manner other than the one it describes in its literature." *Id.* at 150 (emphasis in original). In other words, the defendant's advertising of the product in *Dwyer* clearly and conspicuously informed consumers it calculated its carbon emissions or the basis for its sustainability claims.

By contrast, "[n]owhere on the packaging or the bottle does Defendant explain … how Defendant goes about achieving Carbon Trust's standards." FAC ¶ 45. "Even on Defendant's website … Defendant does not clearly explain Carbon Trust's certification process or standard." *Id.* ¶ 45. Accordingly, unlike *Dwyer*, 598 F. Supp. 3d at 151, Plaintiffs' allegations are not "simply a critique of [the 'carbon neutral' certification] methodology." Instead, Plaintiffs allege that Defendant's "carbon neutral" label is "a description of a false, deceptive, or misleading statement about the Product" that Defendant does not dispel or clarify. *Id.* at 149.

Defendant's reliance on *Myers v. Starbucks Corp.*, 2020 WL 13302437 (C.D. Cal. July 29, 2020), is similarly unavailing. There, the plaintiff alleged that the chocolate in food products was not ethically sourced, as labeled. *Id.*, at \*2. *First*, the court found that the statement "supports sustainably sourced cocoa" could not mislead a reasonable consumer because "aspirational language," such as "promotes, aims, and supports," "constitute[s] mere puffery upon which a reasonable consumer could not rely." *Id.*, at \*4-5. *Second*, the court found that the label "Rainforest Alliance Certification," without any other information "about the labor practices … [in] the Rainforest Alliance program," could not possibly give consumers an impression regarding child labor one way or the other. *Id.*, at \*5. Accordingly, the court

dismissed the claims because the third-party certifications could not mislead a reasonable consumer.

Here, the "carbon neutral" claim is not "aspirational."  *Id.* at *4-5.  The claim does not *promote* carbon neutrality, *aim to be* carbon neutral, or *support* carbon neutrality.  *See id.* Instead, the Product's label gives a reasonable consumer the impression that the Product *is* carbon neutral (*i.e.*, that the Product's lifecycle does not produce carbon emissions), and Plaintiffs sufficiently allege as such.  Argument §§ I.A-B, *supra*.  Furthermore, the court in *Myers* did not dismiss the claims because the third-party certification "explains" the labels at issue or because the third-party certification "prompts curious customers to go to [the defendant's] website to 'learn more.'"  *See* MTD at 10-11.  Instead, the *Myers* court rejected those claims because the plaintiffs did not allege that the labels at issue would mislead a reasonable consumer, unlike here.

Last, Defendant's contention that the Carbon Trust logo provides a shorthand, like the "USDA Organic" label, to explain what "carbon neutral" means also fails.  MTD at 11.  *First*, the Carbon Trust logo is not ubiquitous like the "USDA Organic" label.  *See id.*  Indeed, the "USDA Organic" label requires government certification whereas the "Certified Humane" standard in *Mogull*, 2022 WL 602971, at *3, and the "Carbon Trust" logo are third-party standards that are not regulated by the U.S. government.  FAC ¶ 43.  *Second*, the Carbon Trust logo does not state that it is a certification with an industry standard.  *Finally*, Plaintiffs adequately allege the logo does not clarify a consumer's confusion because its placement is not near the "carbon neutral" claim: "[t]hrough its use of the footprint logo, Defendant *may* be attempting to represent that 'carbon neutral' means its Product meets the Carbon Trust standard. However, that is far from clear."  FAC ¶ 44.  "The 'carbon neutral' claim … is placed *completely*

*separate* from Carbon Trust's logo. … Thus, a reasonable consumer would not understand whether the 'carbon neutral' claim is based on Defendant's calculations or Carbon Trust's calculations because nowhere on the label or packaging does Defendant clarify what it means by 'carbon neutral.'" *Id.*; *see also Cristostomo*, 2022 WL 17904393, at *4 ("The Court finds that the plaintiffs have sufficiently plead that New Balance sold shoes in its 'made' series without adequately disclosing the foreign content of its shoes. In their complaint, Plaintiffs point to several examples where a consumer would see the shoes presented as being 'Made in the USA' without any qualification … with any disclaimer featured less prominently elsewhere.").

Accordingly, the Carbon Trust's third-party logo does not cure the Product's misleading "carbon neutral" claim.

## II.   THE FTC GREEN GUIDES ILLUSTRATE WHY THE CLAIM IS MISLEADING

Defendant argues that "the FTC Green Guides do not create legal obligations or any private right of action." MTD at 15. Defendant misconstrues the purpose of Plaintiffs' allegations.

The FTC created the Green Guides to "help marketers avoid making environmental marketing claims that are unfair or deceptive." 16 C.F.R. § 260.5. To determine "[w]hether a particular claim is deceptive [to a general audience of consumers]," the guidelines provide that:

> [i]t is deceptive to misrepresent, directly or by implication, that a product … offers a general environmental benefit. Unqualified general environmental benefit claims are difficult to interpret and likely convey a wide range of meanings … *Because it is highly unlikely that marketers can substantiate all reasonable interpretations of these claims, marketers should not make unqualified general environmental benefit claims.*

16 C.F.R. § 260.4 (emphasis added).

Here, Plaintiffs allege that the Guides *illustrate* "that environmental marketing claims are unfair and/or deceptive if they go unqualified or without a clear explanation." FAC ¶ 34. In

particular, Plaintiffs allege that the "carbon neutral" claims are precisely the type of "unqualified general environmental benefit" claims that the FTC cautions marketers not to make "[b]ecause it is highly unlikely that marketers can substantiate all reasonable interpretations [(*i.e.*, that the Product does not produce carbon)] of these claims."  16 C.F.R. § 260.4(b); *see also* FAC ¶ 36. "Indeed, the FTC specifically created guidelines for carbon offset marketing because the complexity of offsets creates a heightened risk of misleading consumers."  *Id.* ¶ 33; *see* 16 C.F.R. § 260.5.  Because of the complexity of carbon offsets, "the FTC indicates why it is crucial for companies to properly and conspicuously advertise their reliability of the claimed emission reductions.  Otherwise, environmental claims such as Defendant's … are likely to deceive consumers."  FAC ¶ 34.

Moreover, contrary to Defendant's argument, "Massachusetts has folded the FTC Act into Chapter 93A," and thus, "unfair or deceptive conduct that violates the FTC Act also violates Chapter 93A."  *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 775 F.3d 109, 122 (1st Cir. 2014).  As such, at minimum, Plaintiff Axiotakis *can* rely on violations of the FTC Green Guides.  *See*, *e.g.*, *Downing v. Keurig Green Mountain, Inc.*, 2021 WL 2403811, at *5-6 (D. Mass. June 11, 2021) (denying motion to dismiss because plaintiff sufficiently alleged 93A claim under the Green Guides).  And here, Defendant's conduct does violate 16 C.F.R. § 260.4 because (i) interpreting "carbon neutral" to mean the Product does not release any carbon emissions in its manufacturing process is a reasonable interpretation of the claim (Argument § I.B, *supra*); (ii) Defendant cannot substantiate this interpretation (*id.*); and (iii) Defendant does not conspicuously (or at all) qualify what it means by "carbon neutral."

## III.   PLAINTIFFS SUFFICIENTLY ALLEGE INJURY

Defendant contends that Plaintiffs lack standing because they "improperly conflate deception and injury" and their "price premium injury is insufficiently pled."  MTD at 18.

13

Defendant further asserts that Plaintiffs "must set forth allegations supported by facts, such as identifying the competitors and how the Product's price was inflated compared thereto." *Id.* These arguments are wrong.

"An actual injury … typically requires a plaintiff to allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase. A plaintiff can show this injury by alleging an overpayment, or 'price premium,' whereby a plaintiff pays more than she would have but for the deceptive practice." *Duran v. Henkel of America Inc.*, 450 F. Supp. 3d 337, 350 (S.D.N.Y. 2020) (cleaned up).[4]  Indeed, numerous courts in this Circuit have "found sufficient a plaintiff's general allegation that she would not have paid a price premium but for the defendant's misrepresentations." *Rodriguez v. Hanesbrands Inc.*, 2018 WL 2078116, at *5 (collecting cases), *report and recommendation adopted*, 2018 WL 1686105 (E.D.N.Y. Mar. 30, 2018).  The *Rodriguez* court specifically rejected the "defendant's contention that a plaintiff 'must identify a precisely comparable product in order to allege [an injury] under a price premium theory … [because it] contradicts the weight of the law in this Circuit.'" *Id.* (quoting *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 69 (E.D.N.Y. 2017)); *see also Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 703-04 (2d Cir. 2020) (stating that plaintiff's "failure to identify the prices of competing products to establish the premium that she paid 'is not fatal to [plaintiff's] claim'" at the motion to dismiss stage).[5]  Further, "Plaintiff

---

[4] A plaintiff similarly has standing under California and Massachusetts law where the plaintiff "(1) establish[es] a loss or deprivation of money or property sufficient to qualify as an injury in fact, i.e., *economic injury*, and (2) show[s] that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Veera v. Banana Republic, LLC*, 6 Cal. App. 5th 907, 916 (2016); *see also*, *Gustavsen v. Alcon Laboratories, Inc.*, 903 F.3d 1, 7 (1st Cir. 2018).

[5] Defendant's reliance on *Segovia v. Vitamin Shoppe, Inc.*, 2017 WL 638747, at *4 (S.D.N.Y. Dec. 12, 2017) (Román, J.) is misplaced.  Summary judgment requires a different standard than a motion to dismiss, such as here, when reviewing whether Plaintiffs properly allege injury.

must allege a connection between the misrepresentation and any harm, from, or failure of, the product." *DaCorta v. AM Retail Group, Inc.*, 2018 WL 557909, at *7 (S.D.N.Y. Jan. 23, 2018) (Román, J.) (internal citations omitted); *see also Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015) (requiring allegations that, "on account of a materially misleading practice, [plaintiff] purchased a product and did not receive the value of her purchase").

Here, Plaintiffs allege an injury because they assert that they paid a price premium as a result of Defendant's misrepresentations (*i.e.*, the "carbon neutral" claim) and that they would not have purchased the Product (or not purchased it on the same terms) had they known about the misrepresentation.  Plaintiffs specifically allege that they relied on the "carbon neutral" claim in deciding to purchase the Product at a premium.  FAC ¶¶ 11, 12.  However, the "carbon neutral" claim is misleading.  *Supra* Section I.1.  Therefore, because Plaintiffs "were deprived of the benefit of their bargain in that they paid a price premium for a product they believed was 'carbon neutral,' but instead received a product that was not 'carbon neutral,'" they suffered an economic injury sufficient to confer standing.  FAC ¶ 9; *see also id.* ¶¶ 11-12 (Plaintiffs "would not have purchased the Product on the same terms had [they] known those representations were not true.  In making [their] purchases, Plaintiff[s] paid a substantial price premium due to the false and misleading carbon neutral claim.  Had [Plaintiffs] known that the carbon neutral claim [were] false and misleading, [Plaintiffs] would not have purchased the Product."); *see also*, *e.g.*, *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) ("Such an allegation that a plaintiff would not have purchased a product or would not have paid the same amount comfortably satisfies the injury-in-fact prong of Article III standing."); *Kacocha v. Nestle Purina Petcare Co.*, 2016 WL 4367991, at *7 (S.D.N.Y Aug. 12, 2016) (holding that the

15

plaintiff's allegation that he paid a price premium and would not have had he known the truth about the product sufficiently alleged an injury).

## IV.    PLAINTIFFS PLAUSIBLY PLEAD A CLAIM UNDER 93A

Defendant argues that the 93A claim fails because "the 'carbon neutral' statement is true, reasonable consumers would not interpret it to mean anything other than what it says—that [Defendant] offsets its carbon emissions and is certified by the Carbon Trust—and there is no injury."  MTD at 19.  However, this is not the case.  "To state a claim under Mass. Gen. Laws ch. 93A, a complaint must allege (1) a deceptive act or practice on the part of the seller; (2) an injury or loss suffered by the consumer; and (3) a causal connection between the seller's deceptive act or practice and the consumer's injury."  *Crane v. Sexy Hair Concepts, LLC*, 2017 WL 8728961, at *2 (D. Mass. Oct. 10, 2017) (citation omitted).  Plaintiffs sufficiently allege that: (1) Defendant's "carbon neutral" claim is a deceptive act (Argument §§ I.A-C, *supra*); (2) they suffered an injury (Argument § III, *supra*); and (3) the "carbon neutral" claim caused the injury (*id.*).

Next, Defendant contends that "Mr. Axiotakis was not deceived by the Product's 'carbon neutral' labeling" because he bought the Product "*after* Ms. Dorris initiated the present action." MTD at 19 (emphasis in original).  However, whether Plaintiff Axiotakis knew that Plaintiff Dorris brought this case prior to his most recent purchase of the Product is a question of fact, not appropriate to determine at this stage of litigation.  *See Segedie v. Hain Celestial Group, Inc.*, 2015 WL 2168374, at *12 (S.D.N.Y. May 7, 2015).  Regardless, this fact does not impact Plaintiff Axiotakis's claims as to all prior purchases.  FAC ¶ 12 (alleging "Plaintiff Axiotakis has purchased the Product multiple times," including "*[m]ost recently*, in or about November 2022") (emphasis added).

Last, Plaintiff Axiotakis does not seek "damages under 93A on behalf of a nationwide putative class of consumers."  MTD at 20.  Rather, Plaintiff Axiotakis brings this claim individually and on behalf of the members of the Massachusetts Subclass against Defendant. FAC ¶ 105.  Plaintiff Axiotakis does bring his other claims on behalf of the nationwide Class.

## V.      PLAINTIFFS HAVE ALLEGED VIOLATION OF GBL §§ 349 AND 350

Defendant asserts that Plaintiffs' GBL §§ 349 and 350 claims fail because "[t]here is no connection alleged between the plaintiffs and New York."  MTD at 20.  Defendant's request is premature at this stage.

The Second Circuit, in *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 93 (2d Cir. 2018), explained that "as long as the named plaintiffs have standing to sue the named defendant[], any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws in a question of predominance under Federal Rule of Civil Procedure 23(b)(3), and not a question of 'adjudicatory competence' under Article III."  *Daniel v. Tootsie Roll Industries, LLC*, 2018 WL 3650015, at *5 (S.D.N.Y. Aug. 1, 2018); *see also Donnefeld v. Petro, Inc.*, 2018 WL 4356727, at *12 (E.D.N.Y. Sept. 12, 2018), *Holve v. McCormick & Co., Inc.*, 2018 WL 3861406, (W.D.N.Y. Aug. 14, 2018).  However, "[w]hile *Langan* forecloses dismissal of Plaintiff's multi-state claims for lack of standing, it does not preclude dismissal for failure to state a claim under the other states' laws."  *Kelly v. Beliv LLC*, 2022 WL 16836985, at *7 (S.D.N.Y. Nov. 9, 2022).  So long as plaintiffs sufficiently state a claim under the other states' laws, it is procedurally premature to dismiss plaintiffs' consumer protection claims at this stage.  *See id.*[6]

---

[6] In *Kelly*, 2022 WL 16836985, at *7, the court applied *Langan* and denied a motion to dismiss out-of-state plaintiffs' claims because plaintiffs sufficiently stated a claim under the GBL, which has the same pleading standard as the consumer protection claims in Massachusetts and Connecticut.  However, the court dismissed plaintiffs' Connecticut Unfair Trade Practices Act,

Furthermore, the Second Circuit has held that out-of-state plaintiffs may bring a claim under GBL § 349. *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 123 (2d Cir. 2013). In *Cruz*, out-of-state plaintiffs were permitted to plead a GBL § 349 claim where the defendant allegedly directed communications to a New York location, was paid in New York, and had a New York choice-of-law and forum-selection clause in its agreement with its customers. *Id.* at 123-24; *see also Polk v. Del Gatto, Inc*., 2021 WL 3146291, at *10 (S.D.N.Y. July 23, 2021) (finding an out-of-state plaintiff had statutory standing under GBL § 349); *Gutierrez v. Lemonade, Inc.*, 2022 WL 3214852, at *3 (S.D.N.Y Aug. 9, 2022) (same); *Aghaeepour v. Northern Leasing Systems, Inc.*, 2015 WL 7758894, at *16 (S.D.N.Y Dec. 1, 2015) (same).

"To state a claim under [GBL §§ 349 and 350], Plaintiffs must show first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Twohig v. Shop-Rite Supermarkets, Inc.*, 2021 WL 8728961, at *3 (S.D.N.Y. Feb. 11, 2021). Here, Plaintiffs sufficiently plead that a reasonable consumer would be mislead by Defendant's "carbon neutral" claim and that they suffered an injury as a result. Argument §§ I.A-C, II, *supra*. Accordingly, under *Langan* and *Cruz*, plaintiffs have sufficiently plead a claim for GBL §§ 349 and 350 at this stage in the litigation. *See Langan*, 897 F.3d at 93; *Cruz*, 720 F.3d at 123.

## VI.   PLAINTIFFS HAVE SUFFICIENTLY ALLEGED THEIR FRAUD CLAIM UNDER FED. R. CIV. P. 9(B)

Defendant argues that "[t]he FAC does not adequately plead fraudulent intent." MTD at 20. Not so.

---

which requires in-state residency of a class representative. *Id.* That is not the case here. *See Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 123 (2d Cir. 2013).

To state a claim of fraud under New York law, a "plaintiff must establish that: (1) the defendant made a material false representation; (2) the defendant intended to defraud the plaintiff thereby; (3) the plaintiff reasonably relied upon the representation; and (4) the plaintiff suffered damage as a result of such reliance." *Rossi v. Gem Nation Corp.*, 2021 WL 7906550, at *2 (E.D.N.Y. July 27, 2021) (internal quotations and citations omitted).  A strong inference of fraudulent intent "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shield v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, at 1128 (2d Cir. 1994).  Plaintiffs have done so here.

Plaintiffs allege that Defendant's "carbon neutral" is an example of intentional "greenwashing."  FAC ¶ 50.  "Greenwashing is the process of conveying a false impression or providing misleading information about how a company's products are more environmentally sound … [C]ompanies engaged in greenwashing typically exaggerate their claims or the benefits in an attempt to mislead consumers.'"  FAC ¶ 50.  "Companies [such as Defendant] make greenwashing claims to 'capitalize on the growing demand for environmentally sound products." *Id.* ¶ 51.

Further, Plaintiffs allege that Defendant's deceptive labeling is conscious misbehavior because the "carbon neutral" claim is misleading per the FTC's Green Guides.  *Id.* ¶ 48.  "As the Green Guides explain: 'Even if a marketer explains … the product's specific environmental attributes, *this explanation will not adequately qualify a general environmental benefit claim if the advertisement otherwise implies deceptive claims*.  Therefore, marketers should ensure that the advertisement's context does not imply deceptive environmental claims.'"  *Id.*  "Here, … reasonable consumers could and do interpret the 'carbon neutral' claim to mean, that the

manufacturing of the Product … is sustainable and does not leave a carbon footprint.  … [S]uch

a claim is false because the Product's lifestyle still releases CO2 into the Earth's atmosphere.

And, Defendant has not properly qualified the 'carbon neutral' claim [per the FTC Green

Guides]."  *Id.* ¶ 48.

Accordingly, "there is ample particularization of [Plaintiffs'] allegations."  *Jovel v. i-Health, Inc.*, 2013 WL 5437065, at *11 (E.D.N.Y. Sept. 27, 2013); *see also Ebin v. Kangadis Food Inc.*, 2013 WL 6504547, at *4 (S.D.N.Y. Dec. 11, 2013); *Patellos v. Hello Prod., LLC*, 523 F. Supp. 3d 523, 531 (S.D.N.Y. 2021); *Mogull*, 2022 WL 602971, at *4-5; *Cristostomo*, 2022 WL 17904394, at *7.

## VII.   PLAINTIFF DORRIS PLAUSIBLY ALLEGES A BREACH OF IMPLIED WARRANTY UNDER CALIFORNIA

Defendant asserts that the implied warranty claims fails because "the Product was fit for

human consumption," Plaintiffs "do not allege facts showing that [Defendant] knew the

'particular purpose' for which the Product was intended," and "there is no privity as required in

… California."[7]  MTD at 21.  That is wrong.

*First*, "[t]he implied warranty of merchantability 'is breached where the goods do not

conform to the promises or affirmations contained on the container or label or are not fit for the

ordinary purposes for which the goods are used.'"  *Allred v. Frito-Lay North America, Inc.*, 2018

WL 1185227, at *6 (S.D. Cal. March 7, 2018) (citing *Martinez v. Metabolife Int'l, Inc.*, 113 Cal.

App. 4th 181, 189 (2003)).  Here, Plaintiffs allege that the Product is not "carbon neutral" in the

way that a reasonable consumer understands the term.  FAC ¶ 9; *see* Argument §§ I.A-B, *supra*.

Thus, because the Product does not conform to the affirmation on the label, Plaintiffs sufficiently

---

[7] Plaintiffs concede implied warranty claims under New York and Massachusetts law.

allege a breach of implied warranty of merchantability.  *Morris v. Mott's LLP*, 2019 WL 948750, at *5-6 (C.D. Cal. Feb. 26, 2019) (snack products); *Branca v. Bai Brands, LLC*, 2019 WL 1082562, at *11 (S.D. Cal. March 7, 2019) (beverage products).

*Second*, to state a claim for breach of the implied warranty for a particular purpose, Plaintiff Dorris must allege that "(1) the purchaser at the time of the purchase intended to use the goods for a particular purpose, (2) the seller at the time of purchase had reason to know of this particular purpose, (3) the buyer relied on the seller's skill or judgment to select of furnish goods suitable for the particular purpose, and (4) the seller at the time of purchase had reason to know that the buyer was relying on such skill or judgement." *Morris*, 2019 WL 948750, at *6 (cleaned up); *see also* Cal. Com. Code § 2314.

Here, Plaintiff alleges that Defendant manufactures and sells the Product, a range of water bottles with the "carbon neutral" claim.  FAC ¶¶ 2, 5.  In addition, Plaintiff alleges that a defect existed because the Product is not actually "carbon neutral" as that term is understood by reasonable consumers.  *Id.* ¶ 9.  Specifically, as alleged, "[p]rior to her purchase[s] of the Product, Plaintiff Dorris reviewed the Product's labeling and packaging and saw that the Product was labeled and marketed as 'carbon neutral.'"  *Id.* ¶ 11.  Plaintiff relied on those representations and decided to purchase the Product because "consumers have increasingly sought out environmentally sustainable products" as a result of the climate crisis.  *Id.* ¶ 23.  "Defendant expressly preys on such consumers by charging more for its Product based on the 'carbon neutral' representation that it otherwise would."  *Id.* ¶ 53.  Nothing more is required to allege breach of implied warranty.

*Last*, "privity is not required [in California] where plaintiff relied on defendant's promotional materials."  *Fieldstone Co. v. Briggs Plumbing Prod., Inc.*, 54 Cal. App. 4th 357,

21

371 (1997); *see also Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (finding an exception to the privity requirement "where the plaintiff relies on written labels or advertisements of a manufacturer"); *Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 932 (N.D. Cal. 2014) (implied warranty claims involving food products).  As discussed above, Plaintiff Dorris relied on the packaging and plead sufficient facts demonstrating this to be the case.  *See* Argument §§ I.A-B, *supra*.  Regardless, "[a]n exception to the general privity rule has been recognized in the case of foodstuffs," which the Product qualifies as.  *Choi v. Kimberly-Clark Worldwide, Inc.*, 2019 WL 4894120, at *10 (C.D. Cal. Aug. 28, 2019).  Accordingly, Defendant's argument must necessarily fail.

## VIII.   PLAINTIFFS MAY PLEAD UNJUST ENRICHMENT IN THE ALTERNATIVE

Defendant argues unjust enrichment is not available under California and Massachusetts law.[8]  MTD at 23-24.  Defendant overlooks a large swatch of case law demonstrating that Plaintiffs may plead alternative legal theories, including unjust enrichment, under Federal Rule of Civil Procedure 8(d).  *See Vieira v. First American Title Ins. Co.*, 668 F. Supp. 2d 282, 295 (D. Mass. 2009) ("The plaintiffs had the right to plead alternative theories of liability, *see* Fed. R. Civ. P. 8(d), and their exercise of that right did not debar them from an independent review of each set of claims.") (citation omitted); *see also Zimzam Telecard, Inc. v. New Jersey's Best Phonecards,* 524 F. Supp. 3d 136, 139 (D. Mass. 2007) (denying motion to dismiss unjust enrichment claim even where pleading contained a breach of contract claim); *Parino v. BidRack, Inc.*, 838 F. Supp. 2d 900, 908 (N.D. Cal. 2011) (same).

---

[8] Plaintiffs did not bring an unjust claim under New York law.  *See* FAC ¶ 135.

To state a claim for unjust enrichment, a plaintiff must allege (1) a benefit is conferred upon the defendant by plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention of the benefit by the defendant under circumstances which make such acceptance or retention inequitable.  *Pershouse v. L.L. Bean, Inc.*, 368 F. Supp. 3d 185, 190 (D. Mass. 2019); *see also Romero v. Flowers Bakeries, LLC*, 2015 WL 2125004, at *9 (N.D. Cal. May 6, 2015) (plaintiff sufficiently plead unjust enrichment in the alternative where she plead that Defendant "enticed [consumers] to purchase the products at issue through false and misleading packaging and label" and thus "Defendant was unjustly enriched") (cleaned up).

Here, Defendant's representations that the Product is "carbon neutral" led Plaintiffs to confer a benefit upon Defendant by purchasing the Product.  FAC ¶¶ 136; 9; 11-12. *See Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 234 (1st Cir. 2005).  The revenue generated from the sale of the Product was understood by Defendant to be a benefit and Defendant retained the benefit despite Defendant's misrepresentations.[9]  *See Pershouse*, 368 F. Supp. 3d at 190; FAC ¶¶ 9; 11-12, 138.  Thus, Plaintiffs have stated a viable claim for unjust enrichment.

## CONCLUSION

Accordingly, Plaintiff respectfully request this Court to deny Defendant's motion to dismiss or, alternatively, grant Plaintiffs leave to amend.[10]  *Sec. Exchange Commission v. One or More Unknown Traders in Sec. of Onyx Pharm., Inc.*, 296 F.R.D. 241, 254 (S.D.N.Y. 2013

---

[9] The fact the Product is drinkable does not change the analysis, as Defendant suggest.  MTD at 24.  In *Romero*, 2015 WL 2125004, at *1, the products at issue—bread products—were safe to consume despite the defendant's false advertising that the product were natural.  The court did not dismiss the unjust enrichment claims, which were plead in the alternative, because the defendant was "unjustly enriched" through "false and misleading packaging and labels." *Id.*, at *9.  Accordingly, the fact that the Product here was drinkable does not negate the fact that Defendant was unjustly enriched from the misleading "carbon neutral" claim.

[10] Plaintiffs voluntarily dismiss their claim for equitable relief without prejudice.

("When a court grants a motion to dismiss, it is often appropriate to grant leave to amend the complaint").

Dated: April 12, 2023                    Respectfully submitted,

                                         **BURSOR & FISHER, P.A.**

                                         By: */s/ Max Roberts*
                                                 Max Roberts

                                         Philip L. Fraietta
                                         Max S. Roberts
                                         888 Seventh Avenue
                                         New York, NY 10019
                                         Telephone:  (646) 837-7150
                                         Facsimile:  (212) 989-9163
                                         Email: pfraietta@bursor.com
                                                 mroberts@bursor.com

                                         **BURSOR & FISHER, P.A.**
                                         Brittany S. Scott*
                                         Emily A. Horne*
                                         1990 North California Boulevard, Suite 940
                                         Walnut Creek, CA  94596
                                         Telephone:  (925) 300-4455
                                         Facsimile:  (925) 407-2700
                                         Email:  bscott@bursor.com
                                                 ehorne@bursor.com

                                         *Attorneys for Plaintiff*

                                         *\*Pro Hac Vice Application Forthcoming*

24