UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: **01/10/2024**

STEPHANIE DORRIS and JOHN AXIOTAKIS,
*individually and on behalf of all others similarly
situated*,

                              Plaintiffs,

          -against-

DANONE WATERS OF AMERICA,

                              Defendant.

No. 22 Civ. 8717 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiffs Stephanie Dorris and John Axiotakis (together, "Plaintiffs") commenced this putative class action against Defendant Danone Waters of America ("Defendant" or "Danone") alleging false and misleading advertising and marketing of Defendant's "evian Natural Spring Water" bottled water (the "Product"). Specifically, Plaintiffs bring claims for violations of the consumer protection statutes of New York, Massachusetts, and California, breach of express and implied warranties, unjust enrichment, and fraud. Before this Court is Defendant's motion to dismiss Plaintiffs' First Amended Complaint ("FAC") pursuant to the Federal Rule of Civil Procedure 12(b)(6).

For the following reasons, Defendant's motion to dismiss is granted in part and denied in part.

## BACKGROUND

### I. Procedural Background

Plaintiffs commenced this putative class action by filing their Complaint on October 13, 2022. ("Compl.," ECF No. 1.) On December 6, 2022, the Parties jointly sought an extension of time for Plaintiffs to file an Amended Complaint and for Defendant to file its response, which the

Court granted on the same day. (ECF Nos. 6-7.) On January 5, 2023, Plaintiffs filed their First Amended Complaint ("FAC"), along with exhibits consisting of two notice and demand letters sent to Defendant, one dated September 8, 2022 from Plaintiff Danone and the other dated January 4, 2023 from Plaintiff Axiotakis. ("FAC," ECF Nos. 8-10.) On April 27, 2023, with leave of the Court, the Parties filed their respective briefings on the instant motion: Defendant filed its Motion to Dismiss (ECF No. 21), Memorandum of Law in Support ("Def. Mem," ECF No. 22), Reply ("Reply," ECF No. 26), and Declaration of Keara M. Gordon in Support ("Gordon Decl.," ECF No. 24); and Plaintiffs filed their Memorandum of Law in Opposition ("Pl. Opp.," ECF No. 23). On May 10, 2023 and July 14, 2023, Defendant filed notices of supplemental authority in support of its motion to dismiss (ECF Nos. 27, 29), both of which Plaintiffs opposed on May 22, 2023 and July 18, 2023, respectfully (ECF No. 28, 30).

Plaintiffs bring their claims on behalf of all persons in the United States who purchased the product (the "Class"), as well as a class of persons who purchased the Product in California (the "California Subclass") and a class of persons who purchased the Product in Massachusetts (the "Massachusetts Subclass") (together, the "Subclasses"). (FAC ¶¶ 55-57.)

## II.    Factual Background

The following facts are drawn from Plaintiffs' FAC and are taken as true for the purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Human activities have increased the concentration of carbon dioxide, or CO2, in the atmosphere, driving climate change. (FAC ¶¶ 18-20.) As the Earth's climate continues to change, Americans are experiencing increased wildfires, extreme heat and rain, rising sea levels and costal storms, disruptions to agriculture and marine-based food production, and increased pollen production, causing them harm. (FAC ¶ 21.) As a result of widespread concerns about climate

change, consumers increasingly seek out environmentally sustainable products and are willing to pay a higher price for such products. (*Id.* ¶ 23.) The increase in consumer demand of environmentally friendly products has led companies to engage in a marketing tactic called "greenwashing," which is "the process of conveying a false impression or providing misleading information about how a company's products are environmentally sound." (*Id.* ¶ 24.) Plaintiffs allege Defendant has engaged in such "greenwashing" through its advertising and marketing of "evian Natural Spring Water" water bottles (the "Product"). (*Id.* ¶ 25.)

Defendant manufactures and sells the Product, which its website describes as "a wide range of convenient plastic water bottles to help hydrae and revitalize [consumers] throughout the day." (FAC ¶ 4.) The Product is sold individually, in six-packs, and in twenty-four packs, and comes in five different sizes: 300 milliliters, 500 milliliters, 750 milliliters, 1 Liter, and 1.5 Liter. (*Id.* ¶ 4, 37.)  All versions of Defendant's Product include a representation that the Product is "carbon neutral," as depicted below[1]:

---

[1] The Gordon Declaration, filed by Defendant in support of its motion to dismiss, includes the following exhibits: the front and back label of the 1-liter bottle of evian water, the front and back label of a single bottle of evian water, current and archived versions of evian water's webpage titled "Climate impact: Carbon neutrality," an excerpted portion of the Amazon webpage where Plaintiff Dorris purchased the Product, and current and archived versions of the Carbon Trust's webpages titled "What we do" and "Carbon neutral certification." (Gordon Decl. Ex. 1-6a.) Defendant states the Court "may take judicial notice of documents and information from websites that the FAC incorporates" and "the Product's label." (Def. Mem. at 1 n.1.) Because Plaintiffs reference these documents and information and rely on them in their FAC, the Court considers the identified webpages and product labels. *See Stewart v. Riviana Foods Inc.*, No. 16-CV-6157 (NSR), 2017 WL 4045952, at *7 (S.D.N.Y. Sept. 11, 2017) (taking judicial notice of product packaging incorporated by reference in the complaint).





Plaintiff Stephanie Dorris, a citizen of California, most recently purchased a 1-liter sized bottle of the Product from Amazon for approximately $19.99 on August 16, 2022. (FAC ¶ 11.) Plaintiff John Axiotakis, a citizen of Massachusetts, most recently purchased a bottle of the Product from a BJ's store in or about November 2022. (FAC ¶ 12.) Both Plaintiffs decided to purchase the Product because of their understanding that the Product was "carbon neutral," which they both understood to mean "the Product's manufacturing did not produce CO2 or otherwise cause pollution." (*Id.* ¶¶ 11, 12.) Had either Plaintiff known that the Product was not carbon neutral, he or she would not have purchased the Product. (*Id.*)

4

"Carbon neutral" is technically defined as "having or resulting in no net addition of carbon dioxide to the atmosphere." (*Id.* ¶ 26 (citing *Carbon-neutral*, MERRIAM-WEBSTER (2022); *see also A Beginner's Guide to Climate Neutrality*, UNITED NATIONS CLIMATE CHANGE, (Feb. 26, 2021), https://unfccc.int/blog/a-beginner-s-guide-to-climate-neutrality).) Plaintiffs allege that Defendant's "carbon neutral" representation is false and misleading because "reasonable consumers reviewing the Product's label and packaging would believe the manufacturing of the Product is sustainable and does not leave a carbon footprint." (*Id.* ¶ 7.) However, Plaintiffs allege, "[t]hat representation is false: Defendant's manufacturing of the Product still causes carbon dioxide ("CO2") to be released into the atmosphere." (*Id.*) Moreover, even if "carbon neutral" refers to offsetting the Product's carbon emissions or the standards set by the third-party agency Carbon Trust, Plaintiffs allege Defendant's representations are still false and misleading. (*Id.* ¶ 8.) Specifically, Plaintiffs allege Defendant fails to disclose "how it calculates its carbon neutrality, the meaning of the Carbon Trust standard and how Defendant complies to that standard, and whether the standards themselves are 'carbon neutral' in that any pollution output is truly offset by other projects." (*Id.*) As a result of Defendant's misrepresentations, Plaintiffs paid a "price premium" for the Product due to its environmentally friendly representations. (*Id.* ¶ 9.)

Defendant seeks to dismiss Plaintiffs' FAC for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) on several grounds, but Defendant's principal argument is that the Product's label is not misleading. Specifically, Defendant argues: (1) "the Product's label accurately states the Carbon Trust, an independent third party, certified the Product "carbon neutral"; (2) "no reasonable consumer would interpret carbon neutral to mean the Product does not emit any carbon dioxide whatsoever during its entire life cycle"; and (3) Plaintiffs cannot rely

on violations of the Federal Trade Commission ("FTC") Green Guides to support their claims. (Def. Mem. at 8.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

On behalf of the Class and the Subclasses, Plaintiffs assert claims against Defendant for (1) violation of New York General Business Law ("GBL") § 349; (2) violation of GBL § 350; (3) violation of Massachusetts General Laws ch. 93A ("Chapter 93A"); (4) breach of express warranty; (5) breach of implied warranty; (6) unjust enrichment; and (7) fraud. On behalf of the

California Subclass, Plaintiffs assert claims against Defendant for violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*

For the reasons stated below, the Court grants Defendant's motion to dismiss Plaintiffs' claims for violation of GBL §§ 349-350 and breach of implied warranty and denies Defendant's motion to dismiss Plaintiffs' claims for violations of Chapter 93A, violations of the CLRA, breach of express warranty, unjust enrichment, and fraud.

## Consumer Protection Claims

### I.    New York General Business Law §§ 349 and 350

GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade, or commerce . . . in this state" and GBL § 350 prohibits "[f]alse advertising in the conduct of any business, trade, or commerce . . . in this state." N.Y. Gen. Bus. Law §§ 349(a), 350. The Second Circuit has interpreted "in this state" as unambiguously requiring the misconduct to occur in New York. *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 324-25, 774 N.E.2d 1190 (2002). Thus, to state a claim under either section, "the transaction in which the consumer is deceived must occur in New York." *Id.* at 325. The territoriality requirement "must be pleaded in order for a claim brought under [Sections 349 and 350] to survive. *Miramontes v. Ralph Lauren Corp.*, 2023 WL 3293424, at *4 (S.D.N.Y. May 5, 2023) (citing *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 99 (2d Cir. 2023)). Finally, "[t]his test does not turn on the residency of the parties, or on where the defendant allegedly hatched a scheme to deceive consumers." *English v. Danone North America Public Benefit Corporation*, No. 22 CV 5105 (VB), 2023 WL 4187515, at *2 (S.D.N.Y. June 26, 2023) (citing *Goshen*, 98 N.Y.2d at 324-25)). Because Plaintiffs fail to allege that they were deceived in New York, their claims arising under GBL §§ 349 and 350 must be dismissed.

Plaintiff Axiotakis (a Massachusetts citizen) purchased the Product "multiple times," most recently in Massachusetts. (FAC ¶ 12.) Plaintiff Axiotakis does not otherwise identify any other location he purchased the Product. Although Plaintiff Dorris (a California citizen) purchased the Product via the online retailer Amazon, she fails to allege that the online purchased occurred in New York or that she received the Product from New York. (*See* FAC ¶ 11.) While it is unclear where all the alleged deceptive transactions occurred, Plaintiffs have not plead any occurred in New York as required under the statute. Instead, Plaintiffs allege "[i]mportant decisions regarding Defendant's manufacturing, labeling, and marketing occur at its New York headquarters," and such conduct provides out-of-state plaintiffs standing to sue. (FAC ¶¶ 85, 97.) However, these allegations regarding the alleged "hatching of [Defendant's] scheme" in New York is insufficient to satisfy the nexus requirement. *Goshen*, 98 N.Y.2d at 324-25. Accordingly, the Court dismisses Plaintiffs' GBL §§ 349 and 350 claims. *See English*, 2023 WL 4187515, at *2-3 (despite defendant's principal place of business being in New York, deceptive transaction occurred in Texas, where product was purchased); *Miramontes*, 2023 WL 3293424, at *4-5 (similar).

## II.   Massachusetts General Laws Ch. 93A

Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, §2(a). "Under Chapter 93A, an act or practice is unfair if it falls 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness'; 'is immoral, unethical, oppressive, or unscrupulous'; and 'causes substantial injury to consumers.'" *Walsh v. TelTech Sys., Inc.*, 821 F.3d 155, 160 (1st Cir. 2016) (citing *PMP Assocs. v. Globe Newspaper Co.*, 366 Mass, 593, 321 N.E.2d 915, 917 (1975) (quoting 29 Fed. Reg. 8325, 8355 (1964)). Moreover, to rise to the level of an

"unfair" act or practice, "the defendant's conduct must generally be of an egregious, non-negligent nature." *Id.*; *see also Baker v. Goldman, Sachs & Co.*, 771 F.3d 37, 51 (1st Cir. 2014).

An act or practice is deceptive pursuant to Chapter 93A "if it possesses a tendency to deceive and if it could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted," *Walsh*, 821 F.3d at 160 (citing *Aspinall v. Philip Morris Cos., Inc.*, 442 Mass. 381, 813 N.E.2d 476, 486–87 (2004) ) (quotation marks omitted), or, in other words, if it has the capacity "to entice a reasonable consumer to purchase the product." *Aspinall*, 813 N.E.2d at 487–88 (noting that this standard is "more difficult to satisfy because it depends on the likely reaction of a reasonable consumer rather than an ignoramus"). "In determining whether an act or practice is deceptive, regard must be had, not to fine spun distinctions and arguments that may be made in excuse, but to the effect which [the act or practice] might reasonably be expected to have upon the general public." *Id.* at 487. "Whether conduct is deceptive is initially a question of fact, to be answered on an objective basis." *Id.* at 486.

Plaintiffs allege that Defendant's marketing and advertising of the Product is deceptive because Defendant "misrepresented that the Products are carbon neutral." (FAC ¶109.) Defendant argues Plaintiffs have failed to plausibly allege "carbon neutral" is misleading because (1) no reasonable consumer would understand carbon neutral to mean the Product emits no carbon dioxide; (2) Defendant accurately represented that Carbon Trust certified the Product "carbon neutral"; and (3) Plaintiffs cannot challenge the Carbon Trust certification as false or misleading. (Def. Mem. at 8.) After careful consideration, the Court concludes that it cannot determine as a matter of law that "carbon neutral" does not have the capacity to mislead.

> a.  *Plaintiff Axiotakis's Standing to Bring the Claim*

First, Defendants argue Plaintiff Axiotakis cannot bring this claim because he was not deceived by the Product's "carbon neutral" labelling—Plaintiff Axiotakis purchased the Product in November 2022 after Plaintiff Dorris publicly commenced the action. (Def. Mem. at 19.) Specifically, Defendant contends "[a] plaintiff cannot reasonably rely on a false interpretation of a statement when he knows the truth." *Id.* In the cases Defendant cites in support, however, the courts' determination is based on the factual record. *Stigman v. Nickerson Enters, Inc.*, 2000 Mass. App. Div. 223, 225 (Mass. App. Ct. 2000) (appeal of trial judge's findings of fact); *Makhnevich v. Bougopoulos*, 2023 WL 197297, at *7 (E.D.N.Y. Jan. 15, 2023) (summary judgment motion); *Pac. Cycle, Inc. v. PowerGroup Int'l, LLC*, 969 F. Supp. 2d 1098, 20 1112-13 (W.D. Wis. 2013) (summary judgment motion). Here, the Court cannot determine on a motion to dismiss whether Plaintiff Axiotakis was misled by the Product's "carbon neutral" label. Therefore, the Court declines to grant Defendant's motion on this basis. Accordingly, the Court will proceed to its analysis of whether "carbon neutral" has a capacity to deceive.

> b.  *Consumers' Understanding of "Carbon Neutral"*

Plaintiffs allege reasonable consumers interpret "carbon neutral" to mean "the Product's lifecycle does not emit CO2 into the atmosphere," which is misleading because "the Product's lifecycle *does* emit CO2 into the atmosphere." (FAC ¶ 54 (emphasis in original).) Plaintiffs further allege a consumer would not understand Defendant's carbon neutral claim to be based on the Carbon Trust certification, and even if they did, the claim is still misleading because Defendant fails to explain the meaning of the Carbon Trust, their use of "carbon neutral," or how Defendant meets their standards. (*Id.* ¶¶ 44–45.) Finally, Plaintiffs challenge the "Carbon Trust" offsetting standards as "inherently problematic"—Plaintiffs allege the "carbon offsetting market is awash

with challenges, fuzzy math and tough-to-prove claims with a long history of overpromising and underdelivering." (*Id.* ¶ 47 (citing Umair Irfan, *Can You Really Negate Your Carbon Emissions? Carbon Offsets, Explained.*, VOX (Feb. 27, 2020), https: bon-offset-climate-change- net-zero-neutral-emissions) (cleaned up).)

According to Defendants, "carbon neutral" means "the Product was certified carbon neutral by the Carbon Trust." (Def. Mem. at 1.) Accordingly, Defendant argues that Plaintiffs' understanding of the term "carbon neutral" as "emitting no carbon dioxide at all" is "contrary to science, logic, the FAC, and controlling case law." (Def. Mem. at 12.) No reasonable consumer, Defendant contends, could reasonably believe the Product is transported from their factories in the French Alps to California and Massachusetts without emitting any carbon at all. (*Id.* at 13.) More specifically, Defendant points to the following in support of its argument: "(1) no carbon zero products exit, (2) the dictionary definition of 'carbon neutral' describes the use of offsets to balance emissions, and (3) the Product's website explains evian® water's approach to reducing and offsetting carbon emissions." (*Id.* at 14.)

Furthermore, having argued that Plaintiffs' understanding of the term "carbon neutral" as "without a carbon footprint" is unreasonable, Defendant further argues it has accurately represented "carbon neutral" as meaning "certified by the Carbon Trust." (*Id.* at 9.) Specifically, Defendant argues "carbon neutral" appears immediately next to the symbol for Carbon Trust on the front or back label of the Product to indicate that the Product is certified carbon neutral. (*Id.*) Moreover, the Product's label prompts consumers to visit evian water's website to learn more about the Carbon Trust, where it explains the meaning of the certification and its use of the international PAS 2060 standard for evaluation. (*Id.* at 11.) Considering both parties' arguments, the Court sides with Plaintiffs.

*First*, a reasonable consumer could plausibly be misled by the "carbon neutral" representation on the Product's label. The Merriam-Webster dictionary identifies two definitions of the term, both of which lack specificity and may be difficult to comprehend: carbon neutral means (1) "having or resulting in no net addition of carbon dioxide to the atmosphere" or (2) "counterbalancing the emission of carbon dioxide with carbon offsets." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/carbon-neutral (last visited Jan. 2, 2024). "Counterbalancing," "carbon offsets," and "net addition" each possess their own precise definitions, which are not reflected in the definition itself. Rather than possessing a common, everyday meaning, the term "carbon neutral" is more technical and scientific, unfamiliar to and easily misunderstood by the reasonable consumer. Consumers thus may reasonably become confused with the term "carbon neutral" if it has not previously been explicitly defined for them— as in, before seeing it on the Product's label.  It is plausible then that the ambiguous term "carbon neutral," a technical word not within an average consumer's common parlance and carrying multiple meanings, could mislead a reasonable consumer.

Therefore, the Court finds "carbon neutral" analogous to "crème" as used on coffee product labels in *Dumont* where the common understanding of the term potentially strayed from its precise definition. *Dumont v. Reily Foods Company*, 934 F.3d 35, 41 (the Court itself admitting that one judge understood crème as a fancy word for cream). While "carbon neutral" may be understood by manufacturers, distributors, and other entities within the industry, the common consumer may attach a layperson's understanding to the term. A reasonable consumer may plausibly understand "carbon neutral," a term whose meaning varies even within its own industry, to mean "zero carbon emissions." Or such a consumer could understand it to carry Defendant's offsetting definition. Or even some third meaning. It is most appropriate for the jury, not this Court, to determine. *Dumont*

at 41 (finding "it best that six jurors, rather than three judges, decide on a full record" whether defendant's product label is misleading) (citing *Aspinall*, 813 N.E. 2d at 488).

*Second*, the FTC Green Guides support this conclusion. Chapter 93A incorporates FTC regulations. *Downing v. Keurig Green Mountain, Inc.*, No. 1:20-CV-11673-IT, 2021 WL 2403811, at *5 (D. Mass. June 11, 2021) (citing Mass. Gen. Laws ch. 93A § 2(b)). The FTC published the Green Guides as guidance "to help marketers avoid making environmental marketing claims that are unfair or deceptive" under the FTC Act. 16 C.F.R. § 260.1. Specifically, the regulation provides in pertinent part:

> Unqualified general environmental benefit claims are difficult to interpret and likely convey a wide range of meanings. In many cases, such claims likely convey that the product, package, or service has specific and far-reaching environmental benefits and may convey that the item or service has no negative environmental impact. Because it is highly unlikely that marketers can substantiate all reasonable interpretations of these claims, marketers should not make unqualified general environmental benefit claims.

16 C.F.R. § 260.4(b). Plaintiffs allege "'carbon neutral' is precisely the type of 'unqualified general environmental benefit' claim that the FTC cautions marketers not to make." (FAC ¶ 36.) Defendant, however, challenges Plaintiffs' reliance on the FTC Green Guides, arguing Plaintiffs cannot rely on them because they do not create legal obligations or a private right of action, and even if they did, "carbon neutral" complies with the Green Guides as a "specific environmental benefit . . . supported by a third-party certification." (Def. Mem. at 15-16.) Defendant misconstrues the purpose of the Green Guides in Plaintiffs' FAC; the Green Guides merely "illustrate" how the term "carbon neutral" may be unfair or deceptive as an unqualified or not clearly explained environmental marketing claim. (Pl. Opp. at 12.) Despite Defendant's arguments, "carbon neutral" may plausibly deceive and mislead as a type of general environmental benefit claim that the FTC warns against. Accordingly, Plaintiffs' allegations are sufficient to plausibly allege "carbon neutral" is likely to mislead.

*Third*, the factual allegations in Plaintiffs' FAC are sufficient to support the Court's conclusion. The average American consumer does not know the term's technical definition, as "nearly sixty percent . . . do not understand what the term 'carbon neutral' means." (FAC ¶ 26 (citation omitted).)[2] Moreover, "reasonable consumers often mistake 'carbon neutral' for 'carbon zero or carbon free,'" even if "carbon zero" products do not currently exist. (FAC ¶ 29 (citation omitted).) Finally, consumer confusion over the term's definition is furthered by imprecise usage of certain climate action terminology by individuals in the climate change industry and companies deviating from the technical definition. (FAC ¶¶ 27, 29 (citation omitted).) Consumers' general confusion about "carbon neutral" demonstrate that the term has a reasonable likelihood to deceive. Despite Defendant challenging these facts, Plaintiffs' factual allegations "raise a right to relief above a speculative level" sufficient to survive a motion to dismiss. *Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 636, 888 N.E.2d 879 (2008) (citing *Twombly*, 127 S.Ct. at 1964-65) ("Factual allegations must be enough to raise a right to relief above the speculative level.").

*Finally*, Defendant argues that Plaintiffs' claims would require the Product's label to "expound at length upon carbon neutrality and calculations on its label," which is neither required by the law or expected by consumers. (*Id.* at 11.) In support, Defendant points to the "USDA Organic" label, which acts a shorthand for meeting USDA certification standards. (*Id.* at 11 (citing *Gedalia v. Whole Food Mktg. Servs., Inc.*, 53 F. Supp. 943, 955 (S.D. Tex. 2014) (dismissing complaint; plaintiff failed to plead "that the reasonable consumer would assume" that the products were "any more organic that what organic certifying agencies require.")).) While Plaintiffs allege

---

[2] Defendant alleges that 71% of survey respondents "could not reasonably be mislead by a 'carbon neutral' claim," comprised of 41% of those who understood the term and 30% of those who did not understand the term. (Def Mem. at 15.) As Plaintiffs argue, "[t]his argument defies common sense" because although respondents may not understand the precise definition of the term, they could still be persuaded by the environmentally friendly sounding representation. (Pl. Opp. at 6.) As Plaintiffs argue, "they are exactly the type of consumers who would be reasonably swayed by misleading marketing practices." (*Id.*)

Defendant fails to define carbon neutral or direct consumers to another source for a supplemental definition (FAC ¶ 39), as Plaintiffs acknowledge in their opposition, Defendant does link to its website on the back label and directs consumer to "learn more" about its carbon neutral certification. (Pl. Opp. at 5.) That said, the Court remains unpersuaded. "Reasonable consumers are not expected to look beyond misleading representations on the front of the container" or "to do research." *Downing*, 2021 WL 4203811, at *6. The research Defendant expects of a consumer is not minimal either—reasonable consumers should not be expected to visit two separate websites and read several pages to fully understand the meaning of "carbon neutral" and "certified by Carbon Trust." *Id.* (reasonable consumers not expected to research whether product was recyclable, despite warning to "check locally). Moreover, even if a consumer viewing the Carbon Trust logo completely understood "carbon neutral" meant the Product is certified by the third-party organization, the "carbon neutral" representation may still be misleading-A        Q`1.        The consumer would still be required to visit two webpages to understand the meaning of "carbon neutral" pursuant to the Carbon Trust's standards and how the Carbon Trust certifies products.

"Carbon neutral" is an ambiguous term, and evidence shows that consumers are confused by it. Defendant also expects too much from consumers to learn what it means when it places "carbon neutral" on the Product's label. Accordingly, the Court concludes that at this stage it cannot determine as a matter of law that a reasonable consumer could not be confused or mislead by the "carbon neutral" representation. The Court thus denies Defendant's motion to dismiss this claim. *Koenig v. Boulder Brands, Inc.*, 995 F.Supp.2d 274, 287-88 (S.D.N.Y. 2014) (denying Defendant's motion to dismiss on the grounds that it was unclear whether consumers could be misled or confused about the fat content of Smart Balance milk products); *see Hesse v. Godiva Chocolatier, Inc.*, 463 F.Supp.3d 453, 467 (S.D.N.Y. 2020) (a reasonable consumer could conclude

that Godiva brand chocolates with "Belgium 1926" on its front logo represented the place of the founding of the company and that Defendant continued to manufacture its chocolate there).

### III.    California Consumers Legal Remedies Act

California's CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices listed in this subdivision undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). Section 1760 further provides that the CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." *Id.* § 1760. Like Massachusetts Chapter 93A claims, the CLRA is subject to the "reasonable consumer" test—plaintiff must show "members of the public are likely to be deceived" by the product packaging. *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Whether a product label is likely to deceive is usually a question of fact inappropriate for a decision on a motion to dismiss. *Id.* (citations omitted). Accordingly, "[c]ourts grant motions to dismiss on this ground only where the advertising itself makes it impossible for the plaintiff to prove that a reasonable consumer is likely to be deceived or whether the facts alleged otherwise compel the consumer as a matter of law that consumers are not likely to be deceived." *Takahashi-Mendoza v. Coop. Regions of Organic Producer Pools*, No. 22-CV-05086-JST, 2023 WL 3856722, at *6 (N.D. Cal. May 19, 2023) (cleaned up).

Plaintiffs allege Defendant violated (1) "Section 1770(a)(5) by representing that the Product has characteristics use or benefits which they do not have[]"; (2) "Section 1770(a)(7) by representing that the Product "are of a particular standard, quality, or grade then they are of another[]"; and (3) "Section 1770(a)(9) by advertising the Product "with the intent not to sell them

as advertised."[3] (FAC ¶ 72 (cleaned up).) Defendants put forth the same arguments against this claim here as against Plaintiffs' Chapter 93A claims: the Product is not false and misleading because (1) no reasonable consumer would understand carbon neutral to mean the Product emits no carbon dioxide; (2) Defendant accurately represented that Carbon Trust certified the Product "carbon neutral"; and (3) Plaintiffs cannot challenge the Carbon Trust certification as false or misleading. (Def. Mem. at 8.) Defendants otherwise do not challenge Plaintiffs' CLRA claim.

As the Court determined above, a reasonable consumer may be misled by the "carbon neutral" representation on the Product's packaging. (*See supra* Section II.b.); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 RRM RLM, 2013 WL 4647512, at *13-16 (E.D.N.Y. Aug. 29, 2013) (applying California law, reasonable consumer's understanding of "All Natural" cannot be resolved on a motion to dismiss). The Court thus declines to determine as a matter of law that "carbon neutral" is not false, misleading, or deceptive. Plaintiffs have otherwise sufficiently pled a CLRA claim, and therefore the Court denies Defendant's motion to dismiss this claim. *See Hughes v. Ester C Co.*, 930 F. Supp. 439, 466 (E.D.N.Y. 2013) (plaintiffs adequately pled violation of CLRA where they detailed the challenged representations, identified the sections defendants allegedly violated, and described how defendants violated them).

## IV.  Plaintiffs Pleading an Injury

To assert claims under California's and Massachusetts's consumer protection laws, Plaintiffs must assert an injury. *See Geanacopoulos v. Philip Morris USA Inc.*, No. 98-6002-BLS1, 2016 WL 757536, at *14 (Mass. Super. Feb. 24, 2016) (Chapter 93A action requires plaintiffs to prove they "suffered a distinct injury or harm that arises from the claimed unfair or deceptive act itself."); *Jou v. Kimberly-Clark Corp.*, No. C-13-03075 JSC, 2013 WL 6491158, at *3 (N.D. Cal.

---

[3] Plaintiffs assert their CLRA claim only on behalf of the California Subclass. (FAC ¶ 66.)

Dec. 10, 2013) (CLRA claims "require the plaintiff to show that he or she has suffered an economic injury) (citation omitted).

Defendant argues Plaintiffs have failed to allege an injury, for all claims, by "improperly conflat[ing] deception and injury." (Def. Mem. at 18.) Specifically, Defendant argues Plaintiffs have not sufficiently plead a "price premium" injury because they failed to "set forth allegations supported by facts, such as identifying the competitors and how the Product's price was inflated compared thereto." (*Id.*) Plaintiffs argue they have sufficiently alleged an injury by alleging (1) "they paid a price premium as a result of Defendant's misrepresentation" and (2) "they would not have purchased the Product (or not purchased it on the same terms) had they known about the misrepresentation." (Pl. Opp. at 15.) The Court agrees with Plaintiffs.

Courts have recognized "overpayment," "benefit of the bargain," or "price premium" claims—where a plaintiff alleges that alleged misrepresentations induced her to purchase a product at an inflated price which she otherwise would not have paid—as alleging a cognizable injury. *See O'Hara v. Diageo*, 306 F.Supp.3d 441, 453 (D. Mass. 2018) ("Allegations that the deceptive conduct inflated the product's price, causing the plaintiff to overpay, suffice.") (citation omitted); *Beltran v. Avon Prod., Inc.*, No. SACV1202502CJCANX, 2012 WL 12303423, at *2 (C.D. Cal. Sept. 20, 2012) (citing *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 329, 246 P.3d 877 (2011)) ("[C]onsumers that relied on the label and were deceived by the misrepresentation into making a purchase suffered an injury in fact.").

While courts do reject deception-as-injury claims, courts have found a plaintiff alleging that the misrepresentation affected whether plaintiff purchased the product and the price he or she ultimately paid as sufficient to state an injury. *O'hare*, 306 F.Supp.3d 441, 460 (plaintiff suffered an injury from misrepresentation of location beer was brewed because it "influences consumers'

decisions to purchase the beer and its price."); *Crane v. Sexy Hair Concepts, LLC*, No. CV 17-10300-FDS, 2017 WL 8728961, at *3 (D. Mass. Oct. 10, 2017) (plaintiff purchased sulfate-free shampoo, which was more expensive, that contained sulfates, and thus suffered an injury); *Jou v. Kimberly-Clark Corp.*, No. C-13-03075 JSC, 2013 WL 6491158, at *3 (N.D. Cal. Dec. 10, 2013) (plaintiffs would not have purchased diapers labeled as "natural" at a "premium price" without alleged misrepresentations); *c.f. Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 12 (1st Cir. 2017) (plaintiff failed to state an injury because she did not allege that the sweater was "worth less than the selling price"). Put another way, to assert a "price premium" argument Plaintiffs must allege "a connection between the misrepresentation and any harm from, or failure of, the product," such as not receiving the value of her purchase. *DaCorta v. AM Retail Grp., Inc.*, No. 16-CV-01748 (NSR), 2018 WL 557909, at *7 (S.D.N.Y. Jan. 23, 2018) (citing *Orlander v. Staples, Inc.*, 802 F.3d 289, 302)). Plaintiffs' allegations that the Product was worth less than they paid because Defendant misrepresented it was "carbon neutral," and thus less environmentally friendly, do just that.

## Common Law Claims

### V.   Breach of Express and Implied Warranties

#### a.   Choice of Law

Before assessing Plaintiffs' express and implied warranty claims, the Court must determine the applicable law. A federal district court "sitting in diversity must generally apply the choice of law rules of the state in which it sits." *In re Coudert Bros.*, 673 F.3d 180, 186 (2d Cir. 2012). "[U]nder New York conflicts principles, controlling effect is accorded to the law of the jurisdiction which has the greatest concern with, or interest in, the specific issue raised in the litigation." *David Tunick, Inc. v. E.W. Kornfeld,* 813 F.Supp. 988, 994 (S.D.N.Y.1993) (quotations and citations omitted). In product liability actions, New York courts apply the law of the place of the injury. *Id.*

(citing *Cooney v. Osgood Machinery, Inc.*, 81 N.Y.2d 66, 74, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993)). As discussed above in the Court's analysis of Plaintiffs' claims under the GBL, Plaintiff Dorris is a citizen of California and purchased the Product via an online retailer and Plaintiff Axiotakis is a citizen of Massachusetts and most recently purchased the Product in Massachusetts. (*See supra* Section I; FAC ¶¶ 11-12.) Accordingly, the Court applies California and Massachusetts law to their respective breach of warranty claims. *Solak v. Hain Celestial Grp., Inc.*, No. 317CV0704LEKDEP, 2018 WL 1870474, at *10 (N.D.N.Y. Apr. 17, 2018).

Applying Massachusetts and California law, the Court grants Defendant's motion to dismiss Plaintiffs' breach of express warranty claim under Massachusetts law and Plaintiffs' breach of implied warranty claim under California law. The Court denies Plaintiffs' breach of express warranty claim under California law. Accordingly, only Plaintiffs' breach of express warranty claim under California law survives.

### b. Breach of Express Warranty

*California*. To assert a claim for breach of express warranty under California law, a plaintiff must prove that "(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal.App.4th 1213, 103 Cal. Rptr. 3d 614, 626 (2010); see also Cal. Com. Code § 2313(1). For a "statement or representation to provide the basis for an express warranty claim, it still must meet the threshold requirement of being material to a reasonable consumer." *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 985 (C.D. Cal. 2015). "Statements on a products label are part of the bargain between buyer and seller, and create express warranties." *LeGrand v. Abbott Lab'ys*, 655 F. Supp. 3d 871, 897 (N.D. Cal. 2023) (citing *Weinstat*, 180 Cal.App.4th at 1227; *Mattero v. Costco Wholesale Corp.*, 336 F. Supp. 3d

1109, 1115-16 (N.D. Cal. 2018) (citing several cases)). To determine whether an express warranty has been made, "courts look to the context of the statement, including other content on the label." *Mattero*, 336 F.Supp.3d at 1116 (statement "environmentally responsible" on defendant's liquid dish soap sufficient to create a warranty). "The determination as to whether a particular statement is an expression of opinion or an affirmation of a fact is often difficult, and frequently is dependent upon the facts and circumstances existing at the time the statement is made." *Keith v. Buchanan*, 173 Cal. App. 3d 13, 21, 220 Cal.Rptr. 392 (1985). Accordingly, "courts liberally construe sellers' affirmations of quality in favor of injured consumers." *Jones v. Nutiva, Inc.*, No. 16-CV-00711-HSG, 2016 WL 5210935, at *9 (N.D. Cal. Sept. 22, 2016) (cleaned up).

Plaintiffs allege Defendant breached its express warranty by representing that the Product was "carbon neutral," meaning that it does not leave a carbon footprint, despite "the manufacturing process of the Product still caus[ing] carbon dioxide to be released into the atmosphere." (FAC ¶¶ 116-17.) Beyond its assertions that Plaintiffs failed to allege its representations are false and misleading, Defendant otherwise does not challenge Plaintiffs' claim for breach of express warranty under California law. As discussed above, the Court declines to determine as a matter of law whether Defendant's carbon neutral representation is false or misleading. (*See supra* Sections II-III.) Accordingly, the Court denies Defendant's motion to dismiss Plaintiffs' express warranty claim under California law.

*Massachusetts.* Defendant argues Plaintiffs' express warranty claim fails under Massachusetts law pursuant to the economic loss doctrine because Plaintiffs' claims "sound in tort" and Plaintiffs fail to plead non-economic damages. (Def. Mem. at 22.) Under Massachusetts law, "[t]he economic loss doctrine generally bars recovery for certain tort and warranty claims in the absence of personal injury or property damage." *Fitzgerald v. Polar Corp.*, 2020 WL 6586628,

at *4 n.9 (D. Mass. Nov. 10, 2020). Massachusetts courts have defined economic loss as "damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits without any claim of personal injury or damage to other property." *Sebago, Inc. v. Beazer E., Inc.*, 18 F. Supp. 2d 70, 89 (D. Mass. 1998) (citing *Marcil v. John Deere Indus. Equip. Co.,* 9 Mass.App.Ct. 625, 630 n. 3, 403 N.E.2d 430 (1980)). In their opposition, Plaintiffs do not challenge Defendant's economic loss doctrine argument. Regardless, Plaintiffs lack grounds to do so. Plaintiffs' alleged damages in its breach of express warranty claim are purely economic losses, as they alleged they "would not have purchased the Product, or would have paid substantially less for it," but for Defendant's alleged misrepresentation. (FAC ¶ 118.) Accordingly, the Court grants Defendant's motion to dismiss Plaintiffs' express warranty claim under Massachusetts law. *See Goldstein v. Walmart Inc.*, 637 F.Supp.3d 95, 113 n.7.

      *c.   Breach of Implied Warranty*

Plaintiffs concede their claims for breach of implied warranty under New York and Massachusetts law. (Pl. Opp. at 20 n.7.) Accordingly, the Court only addresses whether Plaintiffs have sufficiently alleged a claim under California law. Plaintiffs allege that in the sales contract for the Product, Defendant "impliedly warranted that the Product was carbon neutral." (FAC ¶ 123.) Defendant breached this implied warranty, Plaintiffs claim, because (1) "it could not pass without objection in the trade under the contract description" and (2) "the Product does not conform to the representation because the Product manufactured by the Defendant was not carbon neutral." (FAC ¶ 124.) Defendants allege Plaintiffs failed to state a claim because (1) there is no privity between Defendant and Plaintiffs as required under California law; (2) the Product was fit for human consumption; and (3) Plaintiffs failed to allege facts showing Defendant knew of the particular purpose for which the Product was intended. (Def. Mem. at 21.)

The California Commercial Code provides "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314. California law requires, however, a plaintiff to "stand in vertical contractual privity with the defendant." *Martin v. Tradewinds Beverage Co.*, No. CV16-9249 PSG (MRWX), 2017 WL 1712533, at *10 (C.D. Cal. Apr. 27, 2017), *on reconsideration*, No. 16-CV-9249 PSG (MRW), 2018 WL 313123 (C.D. Cal. Jan. 4, 2018) (citing *Clemens v. Daimler*, 534 F.3d 1017, 1023 (9th Cir. 2008); *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2005)). "A buyer and seller stand in privity if they are in adjoining links of the distribution chain." *Id.* at *11 (quoting *Osbourne v. Subaru of Am. Inc.*, 198 Cal. App. 3d 646, 656 n.6 (1988)). Thus, plaintiff-consumers who purchase products from online or brick-and-mortar retail stores are not in vertical privity with defendant-manufacturers. *See Martin*, 2017 WL 1712533, at *11 ("[A]n end consumer . . . is not in privity with the [d]efendant manufacturer."); *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 470-71 (S.D.N.Y. 2020) (no vertical privity where plaintiffs did not allege they purchased chocolates from defendant's physical store or online). No vertical privity exists here either. California Plaintiff Dorris alleges she purchased the Product from Amazon, rather than an evian store. (FAC ¶ 11.)

The two exceptions to the vertical privity rule that Plaintiffs identify do not apply here. Plaintiffs argue that privity is not required because (1) Plaintiffs relied on Defendant's packaging and (2) Defendant's product is a "foodstuffs," which California courts have recognized as an exception to the rule. (Pl. Opp. at 21-22.) The first exception applies only to express warranties, not implied warranties. *See Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 696 (1954) ("[T]he ... exception, where representations are made by means of labels or advertisements, is applicable only to express warranties.").

23

On its face, the second exception appears to apply in this case here involving bottled water, ostensibly a food product. The Court agrees with Defendant, however, that the exception applies where the plaintiff has alleged a physical injury or that the foodstuff is otherwise unfit for human consumption. (Def. Mem. at 22 n.11.) California courts have declined to apply the "foodstuffs" exception where the plaintiff failed to allege physical injury or the product is unfit for human consumption. *See Andrade-Heymsfield v. NextFoods, Inc.*, No. 321CV01446BTMMSB, 2022 WL 1772262, at *6-7 (S.D. Cal. Apr. 27, 2022) (dismissing plaintiff's implied warranty claim alleging juice drinks are "generally harmful to health" as "too speculative to support a claim of injury or that the juice drinks are unfit for human consumption"); *Hammock v. Nutramarks, Inc.*, No. 15CV2056 BTM (NLS), 2016 WL 4761784, at *5 (S.D. Cal. Sept. 12, 2016) (policy behind California's foodstuffs exception does not apply where the product was fit for human consumption but did not perform as advertised); *Mexicali Rose v. Superior Ct.*, 1 Cal. 4th 617, 621-23, 822 P.2d 1292 (1992) (breach of implied warranty claim fails where chicken pot pie containing chicken bones was reasonably fit for consumption); *c.f. Klein v. Duchess Sandwich Co., Ltd.*, 14 Cal.2d 272, 273-74, 93 P.2d 799 (1939) (sandwich infested with maggots); *Choi v. Kimberly-Clark Worldwide, Inc.*, No. SACV190468DOCADSX, 2019 WL 4894120, at *10 (C.D. Cal. Aug. 28, 2019) (tampons causing infection, irritation, and localized injury); *Bland v. Sequel Nat. Ltd.*, No. 18-CV-04767-RS, 2019 WL 4674337, at *3 (N.D. Cal. Aug. 2, 2019) (protein drinks containing lead and cadmium); *but see Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 933 (N.D. Cal. 2014) (plaintiff stated a claim for breach of warranty by alleging tuna cans "were not adequately packaged, consistent with an implied promise they were adequately filled with tuna").

Even if the privity exception did apply, Plaintiffs' claim still fails because Plaintiffs do not allege the Product is unfit for its ordinary use. "The California Commercial Code implies a

warranty of merchantability that goods '[a]re fit for ordinary purposes for which such goods are used.'" *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (quoting Cal. Com. Code § 2314(2)(c)). Under California law, the implied warranty of merchantability can be violated if (1) the product is not "fit for the ordinary purposes for which such good [is] used," or (2) does not "[c]onform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2).

Here, Plaintiffs did not allege the Product was contaminated, undrinkable, or otherwise unfit for human consumption. (*See* Def. Mem. at 22.) Nor did Plaintiffs allege the Product caused them physical injury or physical harm. Plaintiffs' allegations that the product fails to adhere to the affirmations and promises on its packaging are insufficient to state an implied warranty claim. Without an assertion that the Product is unsafe or defective, or otherwise not merchantable and fit for use as bottled drinking water, Plaintiffs' claim fails. *See Strumlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025, 1032 (N.D. Cal. 2016) ("[A] well-pled claim [for breach of implied warranty of merchantability] must assert that the product was unfit for its ordinary use."); *Liou v. Organifi, LLC*, 491 F. Supp. 3d 740 (S.D. Cal. 2020); *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877 (C.D. Cal. 2013). Accordingly, the Court dismisses Plaintiffs' breach of implied warranty claim.

## VI.   Unjust Enrichment

Plaintiffs allege "defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and members of the Class and Subclasses' purchases of the Product."[4] (FAC ¶ 138.) Defendant seeks to dismiss this claim on the grounds that under both California and Massachusetts law, unjust enrichment is not available to Plaintiffs as a legal remedy.[5] (Def. Mem.

---

[4] Plaintiffs state their claim for unjust enrichment is brought under the laws of the States of California and Massachusetts. (FAC ¶ 135.)

[5] In its Reply, Defendants raise the additional argument that Plaintiffs cannot assert an unjust enrichment claim because they voluntarily dismissed their claim for equitable relief, and restitution is an equitable remedy. (Def. Mem. at 10 (citing Pl. Opp. at 23 n. 10).) Restitution, however, may be an equitable or legal remedy: "whether it is legal or equitable depends on the basis for the party's claim and the nature of the underlying remedies sought."

23-24.) While the Plaintiffs cannot assert a claim for unjust enrichment under Massachusetts law,

Plaintiffs have plausibly alleged an unjust enrichment claim under California law.

Under Massachusetts law, an unjust enrichment claim is unavailable to a party with an

adequate remedy at law. *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017). Whether

Plaintiffs claims are viable is irrelevant; "[i]t is the availability of a remedy at law, not the viability

of that remedy, that prohibits a claim for unjust enrichment." *Id.* Plaintiffs argue they may plead

unjust enrichment in the alternative under Federal Rule of Civil Procedure 8(d). (Pl. Opp. at 22.)

While Plaintiffs are correct under Massachusetts law, the availability of a Chapter 93A claim still

bars an unjust enrichment claim. *Patenaude v. Orgain*, *LLC*, 594 F. Supp. 3d 108, 116 (D. Mass.

2022), *appeal dismissed*, No. 22-1255, 2022 WL 4844337 (1st Cir. July 18, 2022).

Under California law, "[u]njust enrichment is not a cause of action, just a restitution claim."

*Hill v. Roll Internat. Corp.*, 195 Cal. App. 4th 1295,1307, 128 Cal. Rptr. 3d 109 (2011). That said,

a plaintiff may assert a claim for unjust enrichment where the plaintiff conferred a benefit on the

defendant "through mistake, fraud, coercion, or request." *Astiana v. Hain Celestial Grp., Inc.*, 783

F.3d 753, 762 (9th Cir. 2015) (citing 55 Cal. Jur. 3d Restitution § 2). "When a plaintiff alleges

unjust enrichment, a court may construe an unjust enrichment claim as a "quasi-contract claim

seeking restitution." *Id.* "To allege a claim for quasi-contract or unjust enrichment, a plaintiff must

assert (1) receipt of a benefit and (2) unjust retention of the benefit at the expense of

another." *Upper Deck Co. v. Flores*, 569 F. Supp. 3d 1050, 1071 (S.D. Cal. 2021) (*Peterson v.

Cellco Partnership*, 164 Cal. App. 4th 1583, 1593, 80 Cal.Rptr.3d 316 (2008)) (cleaned up).

---

*Schuman v. Microchip Tech. Inc.*, 372 F. Supp. 3d 1054, 1058 (N.D. Cal. 2019) (citing *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002)) (cleaned up).

Plaintiffs allege Defendant were unjustly enriched "in retaining revenue derived from Plaintiffs' and members' of the Class and Subclasses purchases of the Product" because "Defendant misrepresented that the Product was capable of being composted and charged a price premium based on those representations." (FAC ¶ 138.) Moreover, Plaintiffs' FAC seeks restitution for unjust enrichment. (FAC ¶ 139.) Plaintiffs' allegations and request for restitution are sufficient to state a quasi-contract claim. Accordingly, Defendant's motion to dismiss Plaintiffs' unjust enrichment claim under California law is denied. *Astiana*, 783 F.3d at 762 (plaintiffs pled an unjust enrichment claim in alleging the defendant "enticed them to purchase their products through false and misleading labelling, and [defendant] was unjustly enriched as a result").

**VII.   Fraud**

Defendant challenges Plaintiffs' fraud claims on the grounds that Plaintiffs failed to adequately plead fraudulent intent. (Def. Mem. 20-21.) Specifically, Defendants argue Plaintiffs' put forth conclusory allegations insufficient to "establish a strong inference—or any inference—of fraudulent intent." (*Id.* at 21.) The Court disagrees.

Generally, to state a cause of action for fraud, a plaintiff must plead: (1) Defendant made a false misrepresentation; (2) Defendant had knowledge of its falsity; (3) Defendant intended to defraud the plaintiff; (4) plaintiff justifiably relied on the false misrepresentation; and (5) plaintiff suffered damages. *See, e.g.*, *Myers v. Wakefern Food Corp.*, No. 20 CIV. 8470 (NSR), 2022 WL 603000, at *7 (S.D.N.Y. Mar. 1, 2022) (citation omitted); *Sullivan v. Five Acres Realty Tr.*, 487 Mass. 64, 166 N.E.3d 463, 472 (2021); *Kalnoki v. First Am. Tr. Servicing Sols., LLC*, 8 Cal. App. 5th 23, 214 Cal. Rptr. 3d 292, 301 (2017). The Second Circuit requires "plaintiffs to plead the factual basis which give rise to a strong inference of fraudulent intent. *Myers*, 2022 WL 603000,

at *7 (S.D.N.Y. Mar. 1, 2022) (quoting *United States ex rel. Tessler v. City of New York*, 712 F. App'x 27, 29 (2d Cir. 2017)). "This inference may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 337 (E.D.N.Y. 2018) (internal citations and quotation marks omitted).

Here, Plaintiffs allege Defendant engages in intentional "greenwashing," defined as "the process of conveying a false impression or providing misleading information about how a company's products are more environmentally sound." (FAC ¶ 24.) "Companies engaged in greenwashing typically exaggerate their claims or the benefits in an attempt to mislead consumers." (*Id.*) Plaintiffs allege Defendant "preys" on consumers by charging a higher price for the Product based on the "carbon neutral" representation, "capitaliz[ing] on the growing demand for environmentally sound Products. (FAC ¶¶ 24-25, 50-51, 53.) In alleging Defendant intentionally relied on the misleading "carbon neutral" representation to induce consumers to purchase the Product at a higher price, Plaintiffs have plausibly plead a fraud claim.

Plaintiffs' allegations are distinguishable from those in the cases cited by Defendant. In those cases, the plaintiffs made conclusory allegations that the Defendant's knowledge of the misrepresentation was evidence itself of fraudulent intent. *Spurck v. Demet's Candy Co., LLC*, No. 21 CV 05506 (NSR), 2022 WL 2971957, at *6 (S.D.N.Y. July 27, 2022) (plaintiff alleged fraudulent intent is "evinced by [Defendant's] knowledge that the Product was not consistent with its representations."); *Myers*, 2022 WL 603000, at *8 (plaintiff alleged fraudulent intent is "evinced by [Defendant's] failure to accurately disclose the attributes and qualities of the Product when it knew not doing so would mislead consumers.") (cleaned up); *Santiful v. Wegmans Food*

*Markets, Inc.*, No. 20-CV-2933 (NSR), 2022 WL 268955, at *7 (S.D.N.Y. Jan. 28, 2022) (plaintiff alleged fraudulent intent is "evinced by [Defendant's] failure to accurately identity the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and mislead consumers."); *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 808 (S.D.N.Y. 2021) (plaintiff alleged fraudulent intent is "evinced by [Defendant's] failure to accurately identify the Products on the front label when it knew this was not true."). The basis of Plaintiffs' claims goes a bit further by establishing a clear motive—Defendant put the misleading "carbon neutral" label on its Product to make the Product appear more environmentally friendly, which makes the Product more attractive to consumers and allows Defendant to charge more for the Product. Coupled with Plaintiffs' allegations that consumers "seek[] out ostensibly eco-friend products" (FAC ¶ 24), such "circumstantial evidence" is sufficient to create a strong inference of fraudulent intent. Accordingly, the Court denies Defendant's motion to dismiss Plaintiffs' fraud claim.

## CONCLUSION

For the forgoing reasons, Defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART. The Court GRANTS Defendant's motion to dismiss Plaintiffs' claims for (1) violation of GBL § 349; (2) violation of GBL § 350; and (3) breach of implied warranty. Accordingly, the Court dismisses those claims without prejudice. Yet, the Court DENIES Defendant's motion to dismiss Plaintiffs' claims for (1) violation of Chapter 93A; (2) violation of CLRA; (3) breach of express warranty; (4) unjust enrichment; and (5) fraud.

As Plaintiffs' First Amended Complaint was the first complaint for which motion practice occurred, the claims the Court dismisses are deemed dismissed without prejudice and the parties are granted leave to file amended pleadings. Specifically, Plaintiffs are granted leave to file a Second Amended Complaint by February 2, 2024, consistent with this Order. Plaintiffs are advised

that the Second Amended Complaint will replace, not supplement, the First Amended Complaint, and so any claims that they wish to pursue must be included in, or attached to, the Second Amended Complaint. Should Plaintiffs file a Second Amended Complaint, Defendant is directed to answer or otherwise respond by March 4, 2024. If Plaintiffs fail to file a Second Amended Complaint within the time allowed, those claims that were dismissed without prejudice will be deemed dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 21.

Dated:   January 10, 2024                                   SO ORDERED:
         White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge

30