# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| STEPHANIE DORRIS and JOHN AXIOTAKIS, individually and on behalf of all others similarly situated, | Civil Action No. 7:22-cv-08717-NSR |
| Plaintiffs, | **ORAL ARGUMENT REQUESTED** |
| v. |  |
| DANONE WATERS OF AMERICA, |  |
| Defendant. |  |

## DEFENDANT DANONE WATERS OF AMERICA'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL RECONSIDERATION

Keara M. Gordon
Colleen Carey Gulliver
**DLA PIPER LLP**
1251 Avenue of the Americas
New York, New York 10020
Tel.: (212) 335-4500
Fax: (212) 335-4501
keara.gordon@us.dlapiper.com
colleen.gulliver@us.dlapiper.com
haley.torrey@us.dlapiper.com

George Gigounas*
**DLA PIPER LLP**
555 Mission Street, Suite 2400
San Francisco, CA 94105
Tel.: (415) 836-2500
Fax.: (415) 836-2501
george.gigounas@us.dlapiper.com


*Admitted *pro hac vice*

*Counsel for Defendant Danone Waters of America*

## <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT ..................................................................................1

BACKGROUND ......................................................................................................4

    A.    Factual Background ................................................................................4

    B.    Danone's Motion to Dismiss ..................................................................5

    C.    The January 10 Decision ........................................................................6

LEGAL STANDARD ..............................................................................................7

ARGUMENT ...........................................................................................................8

I.      THE CLRA AND CHAPTER 93A CLAIMS MUST BE DISMISSED BECAUSE
      THE COURT OVERLOOKED AND MISAPPREHENDED AUTHORITY FOR
      CLARIFYING AN AMBIGUOUS STATEMENT........................................8

    A.    The Court Overlooked Ninth Circuit Authority Holding That the Back
           Label Must Be Considered When the Front Label is Ambiguous. .........9

    B.    The Court Misapprehended Massachusetts Law, Which Also Requires an
           Ambiguous Statement to Be Viewed in its Full Context......................16

II.    THE CLRA AND CHAPTER 93A CLAIMS MUST ALSO BE DISMISSED
      BECAUSE THE COURT OVERLOOKED PREVIOUSLY RAISED
      ARGUMENTS.................................................................................18

    A.    The Plaintiffs' Proffered Interpretation is Unreasonable as a Matter of
           Law. .................................................................................................19

    B.    The Plaintiffs Conceded that Danone Complied with the Green Guides. .............21

III.   THE COURT SHOULD GRANT RECONSIDERATION AND DISMISS THE
      PLAINTIFFS' FRAUD CLAIM BECAUSE IT MISAPPLIED THE LAW. ...................22

IV.   THE BREACH OF EXPRESS WARRANTY CLAIM SHOULD BE
      DISMISSED. ...................................................................................24

V.    THE DERIVATIVE UNJUST ENRICHMENT CLAIM MUST BE DISMISSED. ........25

CONCLUSION....................................................................................................25

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Baines v. Nature's Bounty (NY), Inc.*,
2023 WL 8538172 (2d Cir. Dec. 11, 2023) ............................................................13

*Bardsley v. Nonni's Foods LLC*,
2022 WL 814034 (S.D.N.Y. Mar. 16, 2022) (Román, J.) ....................................4, 23

*Booker v. Griffin*,
2019 WL 3423262 (S.D.N.Y. July 30, 2019) (Román, J.) ........................................7

*Brown v. Madison Reed, Inc.*,
2023 WL 8613496 (9th Cir. Dec. 13, 2023) ......................................................9, 10

*Dalewitz v. P&G Co.*,
2023 WL 6215329 (S.D.N.Y. Sept. 22, 2023) (Román, J.)......................................23

*Dash v. Seagate Tech. (US) Holdings, Inc.*,
2015 WL 1537543 (E.D.N.Y. Apr. 1, 2015) ..........................................................24

*Dashnau v. Unilever Mfg. (US), Inc.*,
529 F. Supp. 3d 235 (S.D.N.Y. 2021)....................................................................25

*Devinsky v. Kingsford*,
2008 WL 2704338 (S.D.N.Y. July 10, 2008) ........................................................21

*Dorris v. Danone Waters of Am.*,
2024 WL 112843 (S.D.N.Y. Jan. 10, 2024) ................................................. *passim*

*Downing v. Keurig Green Mountain, Inc.*,
2021 WL 2403811 (D. Mass. June 11, 2021) ........................................................17

*Doyle v. Hasbro, Inc.*,
103 F.3d 186 (1st Cir. 1996)..................................................................................22

*Duchimaza v. Niagara Bottling, LLC*,
619 F. Supp. 3d 395 (S.D.N.Y. 2022)....................................................................24

*Dumont v. Reily Foods Co.*,
934 F.3d 35 (1st Cir. 2019)...............................................................................2, 17

*Dwyer v. Allbirds, Inc.*,
598 F. Supp. 3d 137 (S.D.N.Y. 2022)................................................................14, 15

*Dzielak v. Whirlpool Corp.*,
    83 F.4th 244 (3d Cir. 2023) ............................................................................15

*Empire Today LLC v. Nat'l Floors Direct, Inc.*,
    788 F. Supp. 2d 7 (D. Mass. 2011) ................................................................16

*Foster v. Whole Foods Mkt. Grp., Inc.*,
    2023 WL 8520270 (2d Cir. Dec. 8, 2023) ......................................................13

*Garcia v. Sony Comput. Entm't Am., LLC*,
    859 F. Supp. 2d 1056 (N.D Cal. 2012) ..........................................................20

*Grimes v. Bd. of Trs. for Northcentral Univ.*,
    2024 WL 150724 (S.D. Cal. Jan. 12, 2024)....................................................20

*Hardy v. Olé Mexican Foods, Inc.*,
    2023 WL 3577867 (2d Cir. May 22, 2023) ....................................................13

*Hartwich v. Kroger Co.*,
    2021 WL 4519019 (C.D. Cal. Sept. 20, 2021) ...............................................25

*Herceg v. Chobani, LLC*,
    2023 WL 6162939 (S.D.N.Y. Sept. 21, 2023)................................................15

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018) ....................................................................14, 24

*Homa v. GC Servs. Ltd. P'ship*,
    2019 WL 2193462 (E.D.N.Y. May 21, 2019) ..............................................8, 22

*Hovsepian v. Apple, Inc.*,
    2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) ...............................................25

*In re Intel Corp. CPU Mktg., Sales Pracs. & Prod. Liab. Litig.*,
    2023 WL 7211394 (9th Cir. Nov. 2, 2023).....................................................25

*Kennard v. Kellogg Sales Co.*,
    2022 WL 4241659 (N.D. Cal. Sept. 14, 2022) ..............................................24

*Kramer v. Time-Warner, Inc.*,
    937 F.2d 767 (2d Cir. 1991)...........................................................................24

*Landesbank Baden–Wurttemberg v. Goldman, Sachs & Co.*,
    478 F. App'x 679 (2d Cir. 2004) ...................................................................23

*Lee v. Can. Goose US, Inc.*,
    2021 WL 2665955 (S.D.N.Y. June 29, 2021) ................................................15

*Lima v. Post Consumer Brands, LLC,*
   2019 WL 3802885 (D. Mass. Aug. 13, 2019) ........................................................16

*A.G. ex rel. Maddox v. Elsevier, Inc.,*
   732 F.3d 77 (1st Cir. 2013) ..........................................................................19, 20

*McGinity v. P&G Co.,*
   69 F.4th 1093 (9th Cir. 2023) ..................................................................... *passim*

*Melendez v. Sirius XM Radio, Inc.,*
   50 F.4th 294 (2d Cir. 2022) .................................................................................19

*Moore v. Trader Joe's Co.,*
   (*see* Mot. at 11 (citing 4 F.4th 874 (9th Cir. 2021)).................................................1

*Ngambo v. Bank of Am., N.A.,*
   2022 WL 2067942 (S.D.N.Y. June 8, 2022) (Román, J.)........................................19

*Oldrey v. Nestlé Waters N. Am., Inc.,*
   2022 WL 2971991 (S.D.N.Y. July 27, 2022) (Román, J.) .....................................14

*Perez v. N.Y. Presbyterian Hosp.,*
   2006 WL 988371 (S.D.N.Y. Apr. 14, 2006)...........................................................8

*Removatron Int'l Corp. v. FTC,*
   884 F.2d 1489 (1st Cir. 1989).............................................................................16

*Reyes v. Upfield US Inc.,*
   2023 WL 6276685 (S.D.N.Y. Sept. 26, 2023)........................................................23

*Ross v. Bolton,*
   904 F.2d 819 (2d Cir. 1990)................................................................................22

*RSM Prod. Corp. v. Fridman,*
   2008 WL 474144 (S.D.N.Y. Feb. 19, 2008).......................................................2, 18

*Sahni v. Staff Att'ys Ass'n,*
   2016 WL 3766214 (S.D.N.Y. May 13, 2016) (Román, J.)......................................18

*Sarachek v. Aaronson,*
   2019 WL 3456888 (S.D.N.Y. July 31, 2019) (Román, J.) .......................2, 8, 13, 22

*Scruggs v. Mars,*
   2023 WL 8263364 (C.D. Cal. Nov. 9, 2023)...............................................10, 13, 25

*Smith v. City of Chicago,*
   1992 WL 191119 (N.D. Ill. Aug. 5, 1992) ............................................................21

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013) ................................................................20

*Spruce Env't Techs., Inc. v. Festa Radon Techs., Co.*,
    248 F. Supp. 3d 316 (D. Mass. 2017) ....................................................16

*In re Stac Elecs. Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996) ................................................................22

*Swearingen v. Healthy Beverage, LLC*,
    2017 WL 1650552 (N.D. Cal. May 2, 2017) .........................................14

*Tomasella v. Nestlé USA, Inc.*,
    962 F.3d 60 (1st Cir. 2020) ...................................................................17

*Vaughn v. Consumer Home Mortg. Co.*,
    470 F. Supp. 2d 248 (E.D.N.Y. 2007), *aff'd*, 297 F. App'x 23 (2d Cir. 2008) ......................21

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
    956 F.2d 1245 (2d Cir. 1992) ..........................................................8, 13

*In re Wachovia Equity Sec. Litig.*,
    753 F. Supp. 2d 326 (S.D.N.Y. 2011) ..................................................24

*Wallace v. Wise Foods, Inc.*,
    2021 WL 3163599 (S.D.N.Y. July 26, 2021) .......................................25

*Wargo v. Hillshire Brands Co.*,
    599 F. Supp. 3d 164 (S.D.N.Y. 2022) (Román, J.) ..............................23

*Warren v. Stop & Shop Supermkt., LLC*,
    592 F. Supp. 3d 268 (S.D.N.Y. 2022) (Román, J.) .........................16, 23

*Weiss v. Trader Joe's Co.*,
    2018 WL 6340758 (C.D. Cal. Nov. 20, 2018), *aff'd sub nom. Weiss v. Trader Joe's*, 838 F. App'x 302 (9th Cir. 2021) ..............................25

*Williams v. Gerber Products Co.*
    552 F.3d 934 (9th Cir. 2008) ...............................................10, 11, 13, 17

**Other Authorities**

16 C.F.R. § 260.6 .....................................................................................21, 22

87 Fed. Reg. 77766 (Dec. 20, 2022) (to be codified at 16 C.F.R. pt. 260) ................................3, 21

Rule 9(b) .......................................................................................................22

## PRELIMINARY STATEMENT

Danone[1] respectfully seeks reconsideration of this Court's January 10, 2024 opinion (the "January 10 decision"), which permitted the plaintiffs' CLRA, Chapter 93A, breach of express warranty, and unjust enrichment claims under California law and the fraud claim to proceed.

In its Motion, Danone asserted that the "[w]e are certified carbon neutral" statements on the Product—largely appearing adjacent to the Carbon Trust's logo—conveys to a reasonable consumer that the Carbon Trust, which is an independent third party with a rigorous assessment process and standards, certified the Product as "carbon neutral," and the Product directs consumers to evian® water's website if they wish to "learn more" about that certification. This Court disagreed, found the applicable statement was "carbon neutral," and concluded that such was an "ambiguous term" that "carr[ies] multiple meanings." *Dorris v. Danone Waters of Am.*, 2024 WL 112843, at *5 (S.D.N.Y. Jan. 10, 2024). But, as a matter of law, that finding does not lead to the conclusion that the term is deceptive. Instead, under both California and Massachusetts law, when a reasonable consumer is faced with an "ambiguous" statement, they (and the Court) ***must*** then consider the full context of the Product's label and other information about the Product itself to clarify the ambiguous statement. If that additional context clarifies the ambiguity, there is no deception, and the claims should be dismissed. That is the case here, but the January 10 decision does not undertake this analysis.

In its analysis of this issue, the Court overlooked the Ninth Circuit's ruling in *Moore v. Trader Joe's Co.* (*see* Mot. at 11 (citing 4 F.4th 874 (9th Cir. 2021)) and did not follow *McGinity v. P&G Co.*, 69 F.4th 1093, 1098-99 (9th Cir. 2023) (which the Ninth Circuit decided after briefing

---

[1] Undefined terms have the same meaning as in Danone's motion to dismiss ("Motion" or "Mot.") and reply in support of its motion to dismiss ("Reply"). (*See* ECF Nos. 22, 26.)

on Danone's Motion concluded). *McGinity* held that courts "**must** consider what additional information other than the front label was available to consumers" when, as here, "a front label is ambiguous." 69 F.4th at 1098-99 (emphasis added). Under Massachusetts law, the Court misapprehended the First Circuit's decision in *Dumont v. Reily Foods Co. See Dorris*, 2024 WL 112843, at *6 (citing 934 F.3d 35 (1st Cir. 2019)). The front label in that case, unlike here, was held to be deceptive, and thus, a reasonable consumer would "see no need to search . . . the back of the package." *Dumont*, 934 F.3d at 40.

Here, once the Court held that "carbon neutral" was ambiguous, California and Massachusetts law dictate that, because a reasonable consumer would review a product's back label and other available information in its full context, the Court had to do the same. On the back label, the Product expands on the front label "carbon neutral" statement next to the Carbon Trust logo to explain that it means that "[w]e are certified carbon neutral." (Mot. at 4-5.) That statement is directly adjacent to the Carbon Trust certification mark, which clarifies that a third-party, the Carbon Trust, certified the Product as carbon neutral and directs consumers to its website to "learn more." (*See* Mot. at 10-11; Reply at 3-5.) The website then explains in detail what that means.

A motion for reconsideration may be granted where, as here, "the moving party can point to controlling decisions . . . that the court overlooked" or "the Court misapplied the law." *Sarachek v. Aaronson*, 2019 WL 3456888, at *2, *4 (S.D.N.Y. July 31, 2019) (Román, J.) (citation omitted) (granting motion for reconsideration). Here, the Court's holding overlooked and misapplied California and Massachusetts law. These errors provide ample justification for reconsideration.

Respectfully, the Court also overlooked two of Danone's arguments, which is an independent basis for reconsideration. *See RSM Prod. Corp. v. Fridman*, 2008 WL 474144, at *2 (S.D.N.Y. Feb. 19, 2008) (a motion for reconsideration "allows a party to direct the court to an

argument the party has previously raised but the court has overlooked." (citation omitted)). First, the Court overlooked Danone's argument that the plaintiffs' subjective interpretation of "certified carbon neutral" defied common sense and was unreasonable as a matter of law because no reasonable consumer viewing the "[w]e are certified carbon neutral" statement on the Product directly adjacent to the Carbon Trust certification logo could reasonably conclude that instead of meaning the Product had achieved Carbon Trust certification, it promised that the Product "emitted zero carbon during the entire process of manufacturing it and transporting it from the French Alps to their homes" in California and Massachusetts. (*See* Mot. at 1, 7, 12-17.) Not only does that interpretation defy science and common sense, it is dispelled by evian® water's website, which, for example, explains what it means by "carbon neutral," including: "Well, for us, it means bringing you our natural spring water while contributing to reduce our emissions day after day." (Mot. at 5 (citing Ex. 3b).) The website then explains that evian® has been "measuring and reducing" its carbon emissions and then offsets the "emissions that remain." (*Id.*) Those explanations plainly clarify what evian® intended by "carbon neutral," rendering the plaintiffs' proffered interpretation unreasonable as a matter of law. And the plaintiffs' professed interpretation conflicts with their own allegation acknowledging that "no carbon zero products exist." (Mot. at 13 (emphasis removed) (citing FAC ¶ 28).)

Second, the Court overlooked Danone's argument that the FTC considers "carbon neutral" to be a *specific* environmental benefit claim, not a general claim. *See* Guides for the Use of Environmental Marketing Claims, 87 Fed. Reg. 77766 (Dec. 20, 2022) (to be codified at 16 C.F.R. pt. 260) (identifying "carbon neutral" as a "[s]pecific [c]laim[.]") Indeed, the plaintiffs *conceded* that Danone's third-party certification complied with the Green Guides. (*See* Mot. at 17; Reply at 6.) A finding otherwise was thus clear error.

Danone also seeks reconsideration of the Court's decision to sustain the fraud claim. Respectfully, the Court misapplied the pleading standard for fraudulent intent when it found that allegations that Danone "engaged in greenwashing" to "capitaliz[e] on the growing demand for environmentally sound Products . . . to induce consumers to purchase the Product at a higher price" were sufficient to support a fraud claim. Dorris, 2024 WL 112843, at *13 (citation omitted). As this Court itself repeatedly has recognized, "a defendant['s] 'generalized motive to satisfy consumers' desires [or] increase sales and profits'" is "***not sufficient*** to establish fraudulent intent." *Bardsley v. Nonni's Foods LLC*, 2022 WL 814034, at *14 (S.D.N.Y. Mar. 16, 2022) (Román, J.) (emphasis added) (citation omitted) (dismissing fraud claim).

Finally, Danone seeks reconsideration of the breach of express warranty and unjust enrichment claims. Because there is no sufficiently alleged deception, these claims fall with the CLRA and 93A claims. Under well-settled principles governing reconsideration, this Court should reconsider these findings in its January 10 decision and dismiss the FAC in its entirety.

## BACKGROUND

### A.   Factual Background

Danone sells natural spring water products under the evian® water brand. *Dorris*, 2024 WL 112843, at *1-2. The Product includes a representation that the Product is "certified carbon neutral," and directly adjacent to that statement is "the Carbon Trust's logo," which informs customers that an independent third party certified the Product as "carbon neutral." (*See* Reply at 1, 3-4.) Mr. Axiotakis alleges that he purchased a Single Bottle of evian® water. That small water bottle cannot possibly contain an exhaustive dissertation describing what the Carbon Trust is or how it works. There simply would not be room. Instead, the back of that water bottle says, "We are certified carbon neutral" and directs interested consumers to evian® water's website to "learn more" about what that means. *Dorris*, 2024 WL 112843, at *5, *7.



(Ex. 2.) When one visits evian® water's website, as suggested, it explains, "in 2017 our products in the US and Canada were certified as carbon neutral to the international standard PAS 2060 by the Carbon Trust . . . . In April 2020, evian® water was globally certified as carbon neutral by Carbon Trust." (Mot. at 4 (citing Exs. 3, 3a, 3b).)

On its website, evian® water explains that carbon neutral ***does not mean zero carbon***: "What does it mean to be carbon neutral? Well, for us, it means bringing you our natural spring water while contributing *to reduce* our emissions day after day." (*Id.* at 5 (emphasis added) (citing 3b).) evian® water is "committed to operating sustainably by continuously working to measure and *reduce* [its] carbon footprint at every stage of [its] bottle's lifecycle: from the materials we use and produce, to production, transportation, and recycling." (*Id.* (alterations in original) (emphasis added).) "We set our sights on becoming certified as carbon neutral and have achieved it by continuously measuring and reducing our carbon emissions at each stage of our bottle's life cycle: from the materials we use, to production, transportation and recycling. The emissions that remain are then offset through our work with Livelihood Funds that has planted 130 million trees." (*Id.*) The website also describes Danone's efforts to lower evian® water's carbon footprint during the Product's life cycle: production, packaging, and transport. (*Id.*)

### B.     Danone's Motion to Dismiss

In its Motion, Danone argued that all claims failed as no reasonable consumer could be misled by the certified "carbon neutral" statement, because: "the Product's label accurately states the Carbon Trust, an independent third party, certified the Product," that "no reasonable consumer

. . . could reasonably believe the Product is transported from their factories in the French Alps to California and Massachusetts without emitting any carbon at all" and that the plaintiffs themselves admit that "no carbon zero products exi[s]t." *Dorris*, 2024 WL 112843, at *3, *5. Danone further argued that the statement a reasonable consumer had to interpret was not a stand-alone assertion that it was "carbon neutral" as the plaintiffs argued, but instead the statement at issue was that the Product was "certified carbon neutral" directly adjacent to the "Carbon Trust logo" because when applying the reasonable consumer standard, if the statement on the front label is ambiguous, not misleading, the consumer (and the Court) must consider information on the "back label" as well as context and common sense – particularly where, as here, a small water bottle cannot contain all facts any consumer may want to know about the Carbon Trust. (Reply at 1, 3-4.)

C.     **The January 10 Decision**

On January 10, 2024, the Court denied Danone's motion to dismiss the Chapter 93A, CLRA, breach of express warranty, and unjust enrichment claims under California law and the fraud claim. *Dorris*, 2024 WL 112843, at *13. In reaching its ruling, the Court held "'[c]arbon neutral' is an ambiguous term," which "carr[ies] multiple meanings." *Id.* at *5, *7. Rather than follow binding precedent that requires the Court to then consider "other information readily available to the consumer," including the back label, to clarify the alleged ambiguity, *Moore,* 4 F.4th at 882-85, the Court then held that use of the "unqualified" term "carbon neutral" "may be unfair or deceptive" and that, as such, a reasonable consumer should not be "expected to look beyond misleading representations on the front of the container." *Dorris*, 2024 WL 112843, at *6-7 (citation omitted).

Danone also argued that "no reasonable consumer . . . could reasonably believe the Product [wa]s transported from their factories in the French Alps to California and Massachusetts without emitting any carbon at all" and the plaintiffs conceded that "no carbon zero products exi[s]t,"

which renders unreasonable their purported interpretation of "carbon neutral." *Id.* at *5. The January 10 decision acknowledged that Danone made those arguments, but it did not address them in reaching its holding. *Id.* Moreover, Danone explained that the plaintiffs had conceded that the Carbon Trust certification complied with the Green Guides by failing to respond to Danone's argument in their Opposition (Reply at 6), yet the Court did not address the concession in its January 10 decision and instead relied on the plaintiffs' abandoned allegation to hold that the Green Guides supported the Court's ruling. *Dorris*, 2024 WL 112843, at *6.

And, in permitting the fraud claim to proceed, the Court recognized that the plaintiffs must plead that Danone "intended to defraud the plaintiff[s]" and that the Second Circuit "requires 'plaintiffs to plead the factual basis which give rise to a strong inference of fraudulent intent.'" *Id.* at *12 (citation omitted). Yet, the Court found that the plaintiffs adequately pled fraudulent intent based only on their allegations that Danone "engages in intentional 'greenwashing'" to purportedly "allow[] Defendant to charge more" and to "capitaliz[e] on the growing demand for environmentally sound Products . . . to induce consumers to purchase the Product at a higher price." *Id.* at *13. The Court apparently did not consider the detailed information that Danone provided on its website and the linked Carbon Trust website that explained that the "Carbon Trust is the world's leading independent certification body for carbon footprints. [Its] certification process follows the only internationally recognized carbon neutral standard, PAS 2060 . . . ." (Exs. 2 & 6; *see also* Exs. 3 & 5.)

## LEGAL STANDARD

The "decision to grant or deny a motion for reconsideration is within 'the sound discretion of the district court.'" *Booker v. Griffin*, 2019 WL 3423262, at *2 (S.D.N.Y. July 30, 2019) (Román, J.) (quoting *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009)). A motion for reconsideration may be granted where "the moving party can point to controlling decisions or data

that the court overlooked and that might reasonably be expected to alter the conclusion reached by the court." *Sarachek*, 2019 WL 3456888, at *2 (citation omitted). A motion for reconsideration also "allows a party to direct the court to an argument the party has previously raised but the court has overlooked." *Perez v. N.Y. Presbyterian Hosp.*, 2006 WL 988371, at *1 (S.D.N.Y. Apr. 14, 2006).

In addition, "reconsideration is appropriate if a court 'misinterpreted or misapplied' relevant case law in its original decision." *Homa v. GC Servs. Ltd. P'ship*, 2019 WL 2193462, at *2 (E.D.N.Y. May 21, 2019); *see also Sarachek*, 2019 WL 3456888, at *2, *4 (granting defendants' motion for reconsideration where "the Court misapplied the law"). In particular, "an intervening change of controlling law" is a "major ground[] justifying reconsideration." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). "Alternatively, a court may grant a motion for reconsideration to 'correct a clear error or prevent manifest injustice.'" *Sarachek*, 2019 WL 3456888, at *2 (citation omitted).

## ARGUMENT

### I.    THE CLRA AND CHAPTER 93A CLAIMS MUST BE DISMISSED BECAUSE THE COURT OVERLOOKED AND MISAPPREHENDED AUTHORITY FOR CLARIFYING AN AMBIGUOUS STATEMENT.

The Court should grant reconsideration and dismiss the CLRA and Chapter 93A claims because it overlooked and misapprehended "relevant case law in its original decision," which is an "appropriate" basis to reconsider. *Homa*, 2019 WL 2193462, at *2; *see also Sarachek*, 2019 WL 3456888, at *2, 4. Reconsideration is also proper because it would allow the Court "to 'correct a clear error.'" *Sarachek*, 2019 WL 3456888, at *2 (citation omitted). Specifically, in its January 10 decision, the Court held that "carbon neutral" is an "ambiguous term" that "carr[ies] multiple meanings," *Dorris*, 2024 WL 112843, at *5 (*see also* Reply at 1, 4), but the Court then overlooked and misapprehended California and Massachusetts law when it did not take the next step and

8

consider the back label, its reference to the Carbon Trust and to evian.com, and context as a reasonable consumer is required to seek clarification regarding an ambiguous statement.

### A.   The Court Overlooked Ninth Circuit Authority Holding That the Back Label Must Be Considered When the Front Label is Ambiguous.

Under California law, when "a front label is ambiguous," courts "***must*** consider what additional information other than the front label was available to consumers," including information on a back label. *McGinity,* 69 F.4th at 1098-99 (emphasis added); *see also Brown v. Madison Reed, Inc.*, 2023 WL 8613496, at *1 (9th Cir. Dec. 13, 2023) ("Any ambiguity arising from the . . . statement on the package front 'can be resolved by reference to the back label.'" (quoting *McGinity*, 69 F.4th at 1099)).

In *Moore*, which Danone cited in its Motion (*see* Mot. at 11), the Ninth Circuit affirmed dismissal of a CLRA claim where there was "some ambiguity" regarding the front label statement and "other information readily available to the consumer," including the back label, clarified the alleged ambiguity. 4 F.4th at 882-85. There, the plaintiff alleged that the statement "100% New Zealand Manuka Honey" on the front label was likely to deceive a reasonable consumer. *See id.* at 876-77. The Court determined the statement was ambiguous and that "reasonable consumers would necessarily require more information." *Id.* at 882. Because of this, the Court held that a reasonable consumer would then consider any other information that "puts a reasonable consumer on notice," and that the "information available to a consumer is not limited to the physical label" but instead "should take into account all the information available to consumers and the context in which that information is provided and used." *Id.* at 882, 884. Among other things, the Court considered "contextual inferences from the product itself" as well as that "[a] reasonable consumer would not understand Trader Joe's label here as promising something that is impossible to find."

*Id.* at 883. After considering the entirety of "other available information" about the product, including its "entire packaging," the Court affirmed dismissal. *Id.* at 882 (citation omitted).

In its January 10 decision, the Court overlooked the Ninth Circuit's binding 2021 decision in *Moore* and instead relied only on the plaintiffs' citation to a 2008 decision, *Williams v. Gerber Products Co.* 552 F.3d 934, 938 (9th Cir. 2008). *See Dorris*, 2024 WL 112843, at *7. But *Williams* did not address an ambiguous statement, which the Ninth Circuit has confirmed in two decisions that were issued after briefing on Danone's Motion concluded: *McGinity*, 69 F.4th at 1098-99, and *Brown*, 2023 WL 8613496, at *1.[2]

*McGinity* involved claims that a shampoo's front label's phrase "Nature Fusion," with images of an avocado on a green leaf, represented that the products were natural when they allegedly were not. 69 F.4th at 1096. The plaintiffs also alleged that their interpretation of the label was supported by a consumer survey. *Id.* at 1099. The district court found that no reasonable consumer could be deceived by the label and dismissed the case. The Ninth Circuit affirmed. *Id.*; *see also id.* at 1100. In so doing, the Court reiterated the applicable standard: "The reasonable consumer standard requires more than a mere possibility that the label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Id.* at 1097 (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)). "Rather, the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id.*

---

[2] *McGinity* has occasioned granting a motion for reconsideration in at least one other case. *Scruggs v. Mars*, 2023 WL 8263364, at *4 (C.D. Cal. Nov. 9, 2023) (granting defendant's motion for reconsideration and dismissing action because of "change in controlling law pursuant to . . . *McGinity*" and explaining that "*McGinity* distinguished *Williams v. Gerber*").

(citation omitted). "The touchstone under the 'reasonable consumer' test is whether the product labeling and ads promoting the products have a meaningful capacity to deceive consumers." *Id.*

The Ninth Circuit found that "there is some ambiguity as to what 'Nature Fusion' means in the context of its packaging" and the survey results pled further indicated ambiguity.[3] *Id.* In rejecting the argument that the Court could not review the back label to clarify the ambiguity, the Court held that "the front label must be unambiguously deceptive for a defendant to be precluded from insisting that the back label be considered together with the front label." *Id.* at 1098. Where, as here, "a front label is ambiguous," courts "***must*** consider what additional information other than the front label was available to consumers of [defendant's] products" and the Court distinguished *Williams* because the front label there was "unambiguously deceptive." *Id.* at 1098-99 (emphasis added). Considering all of that information, the Court affirmed dismissal. *Id.* at 1100. As a result, the Ninth Circuit found the District Court misapplied California law when it held that "[r]easonable consumers are not expected to look beyond ***misleading*** representations on the front of the container." *Dorris* at *7 (emphasis added) (citing *Downing v. Keurig Green Mountain, Inc.*, 2021 WL 2403811, at *6 (D. Mass. June 11, 2021)).[4]

Here, the Court held that "'carbon neutral'" is an "ambiguous term" that "carr[ies] multiple meanings" one of which was "counterbalancing the emission of carbon dioxide with carbon offsets." *Dorris*, 2024 WL 112843, at *5. But this finding of ambiguity does not mean that the term is deceptive; under Ninth Circuit law, it means that the Court "must consider what additional

---

[3] The *McGinity* Court found that the survey quoted in the complaint was "not particularly instructive or helpful," as "the survey participants did not have access to the back label of the products," which "to a degree undermines the extent to which we can fairly rely on the survey results as being instructive of how the "reasonable consumer" understands the phrase "Nature Fusion" in the context of the products." *Id.* at 1099. ***The same is true here***. (Mot. at 15.)

[4] While this finding is in the section of the January 10 decision regarding Massachusetts law, the Court incorporates it into its discussion of California law. *Dorris*, 2024 WL 112843, at *7-8.

information other than the front label was available to consumers." *McGinity*, 69 F.4th at 1098-99. As applied here, even if a consumer were confused whether "carbon neutral" on the front of the package next to the Carbon Trust symbol meant it was certified by the Carbon Trust or that it emitted no carbon ever, "other information readily available to the consumer," *Moore*, 4 F.4th at 882, context, and common sense clarify the ambiguity. Merely turning over the bottle explains that the front label means "We are Certified Carbon Neutral" and that statement is directly adjacent to Carbon Trust logo and the reference to the website to "[l]earn more." (Mot. at 3-5; Ex. 2.)

While the language on the back label is sufficient to explain that the meaning being conveyed is not a general one of "carbon neutral" but "We are Certified Carbon Neutral" by the Carbon Trust, that message is amplified on the website (which has room to expand and to explain where a bottle cannot) and by "contextual inferences." *See Moore*, 4 F.4th at 882. That additional information establishes that it is unreasonable to assume that Danone meant that no carbon was emitted during the entire lifecycle of the Product. For example, evian® water's website states:

- It is "committed to operating sustainably by continuously working ***to measure and reduce our carbon footprint*** at every stage of our bottle's lifecycle: from the materials we use and produce, to production, transportation, and recycling." (Ex. 3b (emphasis added).) This language does not promise that there is no carbon footprint and the words "measuring" and "reducing" clearly indicate that there is, in fact, a carbon footprint to measure and reduce.

- "What does it mean to be carbon neutral? Well, for us, it means bringing you our natural spring water while contributing ***to reduce our emissions*** day after day." (*Id.* (emphasis added).) Again, this language indicates there are emissions and evian® water is working toward reducing them.

- "***The emissions that remain*** **are then offset** through our work with Livelihood Funds that has planted 130 million trees." (*Id.* (emphasis added).) The only rational conclusion that a reader can draw from this sentence is that the production process generates emissions, and those are then offset in the manner described.

- The website also includes, for example, a picture of trains and an explanation that evian® water uses trains because they "produce a carbon footprint 10x smaller than trucks," necessarily disclosing that there is, in fact, a carbon footprint. (*Id.*)

The Carbon Trust's website – which evian® water links to – further explains that:

- it is "the world's leading independent certification body for carbon footprints" which "follows [an] internationally recogni[z]ed carbon neutral standard, PAS 2060" (Ex. 6);

- "PAS 2060 is the internationally recogni[z]ed specification for carbon neutrality and builds on the existing PAS 2050 environmental standard. It sets out requirements for quantification, reduction and offsetting of greenhouse gas (GHG) emissions for organizations products and events" (Ex. 6a);

- it "certifies products that are either carbon neutral through upstream natural carbon sinks (eg. plants, soil, oceans and the atmosphere), or have purchased offsets to the value of their annual emissions" (Ex. 6); and

- it "ensure[s] the robustness of carbon accounting, the strength of carbon management plans and that credible and high-quality offsets have been purchased" (*id.*).

Such disclosures should leave no room for confusion, but even the plaintiffs allege that "no carbon zero products exist." (FAC ¶ 28.) Given their admission that no carbon zero products exist, and the detailed descriptions of what evian® and the Carbon Trust actually meant, the plaintiffs' proffered interpretation is unreasonable as a matter of law.

Accordingly, the Court should grant Danone's motion for reconsideration and dismiss the plaintiffs' CLRA claims to "correct [this] clear error." *Sarachek*, 2019 WL 3456888, at *2; *see also Scruggs v. Mars*, *Inc.*, 2023 WL 8263364, at *1, *4 (C.D. Cal. Nov. 9, 2023) (granting motion for reconsideration and dismissing action because of "change in controlling law pursuant to . . . *McGinity*"; "*McGinity* distinguished *Williams*"); *accord Virgin Atl. Airways, Ltd.*, 956 F.2d at 1255 (identifying "an intervening change of controlling law" as a "major ground[] justifying reconsideration" (citation omitted)).[5]

---

[5] Like the Ninth Circuit, the Second Circuit repeatedly has held that when a "front label might be considered ambiguous," information on the back label should be considered. *See, e.g.*, *Foster v. Whole Foods Mkt. Grp., Inc.*, 2023 WL 8520270, at *2 (2d Cir. Dec. 8, 2023); *Baines v. Nature's Bounty (NY), Inc.*, 2023 WL 8538172, at *3 (2d Cir. Dec. 11, 2023) ("To the extent the front label leaves any ambiguity . . . the back label provides sufficient clarification."); *Hardy v. Olé Mexican Foods, Inc.*, 2023 WL 3577867, at *3 (2d Cir. May 22, 2023) (courts must "consider the challenged advertisement as a whole" and that "context is crucial" (citation omitted)). Indeed, this Court itself

Reconsideration is further warranted because in its January 10 decision, the Court observed that "even if a consumer viewing the Carbon Trust logo completely understood 'carbon neutral' meant the Product is certified by the third-party organization, the 'carbon neutral' representation may still be misleading" because "[t]he consumer would still be required to visit two webpages to understand the meaning of 'carbon neutral' pursuant to the Carbon Trust's standards and how the Carbon Trust certifies products." *Dorris*, 2024 WL 112843, at *7. In so holding, the Court overlooked several analogous cases in Danone's Motion (*see* Mot. 10-12, 17 n.8), which establish that disclosing the fact of a certification on a product label, without a detailed dissertation of the standards used and applied, is not misleading. *See, e.g., Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 151 (S.D.N.Y. 2022) ("[T]here is no obligation under [the] GBL . . . to provide whatever information a consumer might like to know"; dismissing claims); *Myers*, 2020 WL 13302437, at *5 (allegation that "Rainforest Alliance seal creates a misleading impression of ethical labor practices and sustainability" is "insufficient to state a claim under the . . . CLRA"); *Swearingen v. Healthy Beverage, LLC*, 2017 WL 1650552, at *4 (N.D. Cal. May 2, 2017) ("Since Plaintiffs specifically allege that they 'read and reasonably relied on the labels' on Defendants' products, . . . the materials they read include the statements on Healthy Beverage's website incorporated into the labels."); *see also Hodsdon v. Mars, Inc.*, 891 F.3d 857, 860, 867 (9th Cir. 2018) (affirming dismissal of CLRA claim where information was not disclosed "on the label itself" but was "accessible on [defendant's] website").[6]

---

has held that a "Product's labeling should be viewed as a whole" and that the back label should be considered when a front label statement "is ambiguous." *Oldrey v. Nestlé Waters N. Am., Inc.*, 2022 WL 2971991, at *4 (S.D.N.Y. July 27, 2022) (Román, J.) (citation omitted) (dismissing claims).

[6] The plaintiffs' challenge to the Carbon Trust "offsetting standards as 'inherently problematic'" is not a viable theory. *Dorris*, 2024 WL 112843 at *5 (citing FAC ¶ 47). "[A] party aggrieved by an improper certification of a product" should "seek redress from the mark's owner—as opposed

In any event, if, as the Court contemplated, a consumer viewing the Carbon Trust logo "completely understood" that carbon neutral meant that evian® water is certified by a third-party organization, then there is no deception, as the consumer understood the label statement as intended and would not have assumed that it meant, as the plaintiffs proffer, that no carbon was emitted whatsoever during the lifecycle of the product. The disclosure of additional information regarding the Carbon Trust's standards across two webpages is immaterial in that instance, as it only provides additional detail; it does not somehow render the *true* statement that evian® made false or misleading, especially where the plaintiffs do not allege that the webpages themselves are false or misleading. *See Moore*, 4 F.4th at 884-85 ("While there are no other details on the jar about what '10+' means, the presence of this rating on the label puts a reasonable consumer on notice that it must represent *something* about the product.").

In sum, the Court's holding on the CLRA claim conflicts with binding Ninth Circuit authority, which holds that courts must consider the back label and other information when the front label statement is ambiguous. Because the Court must consider the entirety of "other available information" about the product beyond the front label under California law, including the product's "entire packaging," reconsideration should be granted and the CLRA claim must be dismissed. *Moore*, 4 F.4th at 882 (citation omitted).

---

to the user of the mark." *Dzielak v. Whirlpool Corp.*, 83 F.4th 244, 262 (3d Cir. 2023) (affirming summary judgment on CLRA and breach of warranty claims); *see also Dwyer*, 598 F. Supp. 3d at 149 (dismissing action where plaintiff's allegations were "a criticism of the [certification's] methodology, not a description of a false, deceptive, or misleading statement about the Product"); *Lee v. Can. Goose US, Inc.*, 2021 WL 2665955, at *6 (S.D.N.Y. June 29, 2021) (same). After briefing on Danone's Motion concluded in April 2023, another court in this district dismissed an action alleging that the defendant's "Fair Trade Certified" statement was misleading because "Plaintiff's allegations [were], at their core, challenging the sufficiency of the standards of the certification . . . ." *Herceg v. Chobani, LLC*, 2023 WL 6162939, at *6 (S.D.N.Y. Sept. 21, 2023).

**B.      The Court Misapprehended Massachusetts Law, Which Also Requires an Ambiguous Statement to Be Viewed in its Full Context.**

Massachusetts law commands the same result regarding the Chapter 93A claim. As in California, courts applying Chapter 93A must consider the challenged statement in context and "[t]he tendency of the advertising to deceive must be judged by viewing it as a whole." *Removatron Int'l Corp. v. FTC*, 884 F.2d 1489, 1496 (1st Cir. 1989) (citation omitted) (assessing standard under Lanham Act); *see also Spruce Env't Techs., Inc. v. Festa Radon Techs., Co.*, 248 F. Supp. 3d 316, 321 (D. Mass. 2017) ("False advertising claims under the Lanham Act and Chapter 93A rise and fall together."); *Empire Today LLC v. Nat'l Floors Direct, Inc.*, 788 F. Supp. 2d 7, 26 (D. Mass. 2011) ("To establish a false advertising claim under Chapter 93A, a plaintiff must prove all of the elements of a false advertising claim under Section 43(a) of the Lanham Act.").

"Though 'whether the label had the capacity to mislead customers, acting reasonably under the circumstances' is 'one of fact,' the Court must still define the boundaries and determine 'the point at which a juror could reasonably find only one way.'" *Lima v. Post Consumer Brands, LLC*, 2019 WL 3802885 at *3 (D. Mass. Aug. 13, 2019) (quoting *Dumont*, 934 F.3d at 40-41) (explaining that whether "packaging [is] ambiguous is a question of law"). Unlike a consumer presented with an affirmative misstatement, "consumers who interpret ambiguous statements in an unnatural or debatable manner do so unreasonably if" other information on the label "would set them straight." *Id.* at *7 (citation omitted), *reconsideration denied*, 2019 WL 4889599, at *2 (D. Mass. Oct. 2, 2019) ("Plaintiffs predominantly rely on the First Circuit's decision *Dumont v. Reily Foods* . . . . The Court previously distinguished Plaintiffs' claims from *Dumont*[.]"); *see also Warren v. Stop & Shop Supermkt., LLC*, 592 F. Supp. 3d 268, 279-80 (S.D.N.Y. 2022) (Román, J.) (citing *Lima*, 2019 WL 3802885, at *7) (holding statement was not misleading "when assessing the Product's packaging as a whole").

16

Here, because the Court held that "carbon neutral" is "ambiguous," the Court's reliance on *Downing* and *Dumont*—cases involving deceptive, not ambiguous statements—was mistaken. *See Dorris*, 2024 WL 112843, at *6. In *Downing*, the district court concluded that "a reasonable consumer . . . would have believed that the Pods were recyclable" and thus, a reasonable consumer did not have to "look beyond misleading representations on the front . . . to discover the truth." 2021 WL 2403811 at *6 (citation omitted).[7]

Likewise, in *Dumont*, the Court held that the statement was misleading and thus a reasonable consumer would "see no need to search . . . the back of the package." 934 F.3d at 40. As Danone explained in its Motion, *Dumont* is similar to the Second Circuit's decision in *Mantikas* and the Ninth Circuit's decision in *Williams* in that the Court "declined to consider [the] back label because [the] front panel statement was misleading." (*See* Reply at 4.) In addition, in analyzing whether "Hazelnut Crème" was deceptive ("a close question") the *Dumont* Court was persuaded by "convention in the industry," which was to disclose the source of the flavor "on the front," and the defendant's "fail[ure] to adhere to the [FDA] rules." 934 F.3d at 40-41. Here, on the other hand, there is no industry standard as to how to present sustainability statements, and no regulatory violation. (*See* Section II.B) (explaining that the Product statements comply with the Green Guides, which the plaintiffs conceded).

Moreover, reasonable consumers are expected to consult information "publicly available through [defendants'] websites." *Tomasella v. Nestlé USA, Inc.,* 962 F.3d 60, 81-82 (1st Cir. 2020) (affirming dismissal of 93A claim and rejecting argument that consumers "cannot be expected to conduct internet research on every item they purchase" because "[o]therwise the list of information

---

[7] Moreover, unlike the Carbon Trust certification and website link provided on evian® water labels, the product's recyclable claims in *Downing* were merely accompanied by a vague suggestion to "[c]heck [l]ocally." *Downing*, 2021 WL 2403811 at *1.

that sellers would have to disclose on their product packaging would be lengthy indeed"). As Danone's Motion pointed out (but the Court did not address), even a cursory look at the website, which the plaintiffs cite (FAC ¶ 46), as well as the Carbon Trust website that is linked, disabuses anyone of the notion that there is no carbon emitted during the manufacturing, production, and distribution processes, rendering their allegations unreasonable as a matter of law. (*See* Section II.A.)

Because the Court held that "carbon neutral" is ambiguous and a reasonable consumer would be expected to consult the clarifying language "certified carbon neutral" with the Carbon Trust certification mark and consider the website statements, which clarify any confusion, Danone's motion for reconsideration should be granted and the Chapter 93A claim dismissed.

## II. THE CLRA AND CHAPTER 93A CLAIMS MUST ALSO BE DISMISSED BECAUSE THE COURT OVERLOOKED PREVIOUSLY RAISED ARGUMENTS.

The Court should also grant reconsideration and dismiss the CLRA and Chapter 93A claims because the Court overlooked arguments in Danone's Motion and reconsideration "allows a party to direct the court to an argument the party has previously raised but the court has overlooked." *RSM Prod. Corp.*, 2008 WL 474144, at *2 (citation omitted) (granting motion for reconsideration); *see also Sahni v. Staff Att'ys Ass'n*, 2016 WL 3766214, at *1-2 (S.D.N.Y. May 13, 2016) (Román, J.) (granting motion for reconsideration where Court overlooked defendant's argument in "a footnote"). In its Motion, Danone explained that the plaintiffs' interpretation of "certified carbon neutral" was unreasonable as a matter of law because no reasonable consumer could believe that evian® water "emitted zero carbon during the entire process of manufacturing it and transporting it from the French Alps to their homes" (*see* Mot. at 1, 7, 12-17), and the plaintiffs' purported interpretation conflicted with their own allegation acknowledging that "***no carbon zero products exist***" (*id.* at 13 (citing FAC ¶ 28)). While the Court noted that Danone had made the

argument, it did not address it when holding that the "certified carbon neutral" statement could be deceptive. *See Dorris*, 2024 WL 112843, at *5. Moreover, Danone explained that the plaintiffs had conceded that the Carbon Trust certification complied with the Green Guides and established that the Green Guides did not support the plaintiffs' claims. (Mot. at 17; Reply at 6.)

### A.     The Plaintiffs' Proffered Interpretation is Unreasonable as a Matter of Law.

It unreasonable as a matter of law to conclude that a significant portion of reasonable consumers would "misunderstand 'certified carbon neutral' to mean that a company manufactures and sells beverage products made [in] the French Alps emits ***no*** carbon whatsoever during its journey to the US." (*See* Mot. at 11 (citing *Wurtzburger v. KFC*, 2017 WL 6416296, at *3 (S.D.N.Y. Dec. 13, 2017) (Román, J.).) A "court should not suspend its common sense in assessing plausibility." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 305 (2d Cir. 2022) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)); *see also Ngambo v. Bank of Am., N.A.*, 2022 WL 2067942, at *1 (S.D.N.Y. June 8, 2022) (Román, J.) ("a district court must . . . 'draw on its judicial experience and common sense'" (citation omitted)); *accord McGinity*, 69 F.4th at 1096 (same); *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 83 (1st Cir. 2013) (affirming dismissal of Chapter 93A claim where the district court below "drew sagaciously 'on its judicial experience and common sense'" (citation omitted)).

For example, in *Moore*, the Ninth Circuit affirmed dismissal as a matter of law of a claim that "100% New Zealand Manuka Honey" was misleading. 4 F.4th at 883. The Court held that reasonable consumers would find the phrase ambiguous and "would necessarily require more information before they could ***reasonably conclude*** [defendant's] label promised a honey that was 100% derived from a single, floral source." *Id.* at 882 (emphasis added). The Court explained that a reasonable consumer would be expected to consider not just the label but "contextual inferences regarding the product itself." *Id.* "[G]iven the foraging nature of bees, a reasonable honey

consumer would know that it is impossible to produce honey that is derived exclusively from a single floral source." *Id.* at 883. "Although a reasonable consumer might not be an expert in honey production or beekeeping, consumers would generally know that it is impossible to exercise complete control over where bees forage down to each specific flower or plant." *Id.* Given these realities, the Court held that the plaintiff's interpretation was "unreasonable or fanciful." *Id.* (citation omitted).

The same result is compelled here. The plaintiffs' interpretation is fanciful and unreasonable because it does not consider, as a reasonable consumer must, the nature of the Product they purchased—one cannot bottle water and then magically transport it from the French Alps to California and Massachusetts without emitting any carbon whatsoever. And, as explained above, the Product's website explains as much. (*See* Section I.B.)

Moreover, it is impossible to square the plaintiffs' argument with their admission that "no carbon zero products exist." (FAC ¶ 28.) Indeed, that admission contravenes the plaintiffs' "specific, and fairly extreme, understanding" of the meaning of carbon neutral. *Garcia v. Sony Comput. Entm't Am., LLC*, 859 F. Supp. 2d 1056, 1064 (N.D Cal. 2012) (dismissing CLRA claim). As the Ninth Circuit observed in *Moore*, "[a] reasonable consumer would not understand [the] label here as promising something that is impossible to find." 4 F.4th at 883. Because the plaintiffs' idiosyncratic interpretation conflicts with their own FAC, the interpretation is implausible and unreasonable. *Somers v. Apple, Inc.*, 729 F.3d 953, 964 (9th Cir. 2013) (affirming dismissal where plaintiff's theory was "implausible in the face of . . . facts alleged in her complaint"); *see also Grimes v. Bd. of Trs. for Northcentral Univ.*, 2024 WL 150724, at *6 (S.D. Cal. Jan. 12, 2024) ("[T]he presence of . . . inconsistent factual allegations compels the Court's conclusion that Plaintiff has not adequately stated a . . . claim."); Reply at 3 (citing *Henry v. Nissin Foods (U.S.A.)*

*Co.*, 2023 WL 2562214, at *7 (E.D.N.Y. Mar. 17, 2023) (dismissing action where plaintiff's argument "directly conflict[ed] with her allegations in the Complaint")).

**B.      The Plaintiffs Conceded that Danone Complied with the Green Guides.**

The Court overlooked Danone's argument that the plaintiffs conceded that Danone's certification complied with the Green Guides (Reply at 6) and also overlooked the Green Guides' guidance regarding third party certifications and seals of approval (Mot. at 11-12) in concluding that they support the plaintiffs' speculative theory that carbon neutral is deceptive. *Dorris*, 2024 WL 112843, at *6.

First, the Court relied on the plaintiffs' allegation that "carbon neutral" was an "'unqualified general environmental benefit' claim." *Id.* (quoting FAC ¶ 36). But, as Danone explained in its Motion (Mot. at 17), that is incorrect as a matter of law. The FTC considers "carbon neutral" to be a *specific* environmental benefit claim, not an unqualified claim. *See* Guides for the Use of Environmental Marketing Claims, 87 Fed. Reg. 77766 (identifying "carbon neutral" as a "[s]pecific [c]laim[]"); *see also* 16 C.F.R. § 260.6, Example 8 ("a seal of approval from the No Chlorine Products Association, a non-profit third-party," **conveys the specific benefit claimed** and is "not deceptive"). And critically, the plaintiffs conceded this argument when they did not respond to it in their Opposition. (*See* Reply at 6.) Thus, it was clear error for the Court to rely on this allegation in support of its holding. *See Devinsky v. Kingsford*, 2008 WL 2704338, at *4 (S.D.N.Y. July 10, 2008) (granting motion for reconsideration on "claims conceded and/or abandoned"); *see also Vaughn v. Consumer Home Mortg. Co.*, 470 F. Supp. 2d 248, 268 (E.D.N.Y. 2007) (granting reconsideration of claims that had been "abandoned"), *aff'd*, 297 F. App'x 23 (2d Cir. 2008); *Smith v. City of Chicago*, 1992 WL 191119, at *1 (N.D. Ill. Aug. 5, 1992) (same).

Second, the Green Guides authorize a company to inform consumers it has received a certification and confirm that "a reference to a [website] is appropriate." 16 C.F.R. § 260.6,

Example 7. That is precisely what Danone did here. The Product is certified carbon neutral by the Carbon Trust, an independent third party, and "directs consumer[s] to 'learn more' about its carbon neutral certification." *Dorris*, 2024 WL 112843, at *7. The Green Guides' guidance regarding third-party certifications does not require a company to convey the certifier's standards or process on a product's label to avoid deception. *See* 16 C.F.R. § 260.6. Thus, the Court should grant reconsideration because its conclusion that "certified carbon neutral" was deceptive overlooked the Green Guides' guidance regarding certifications from third parties and credited an argument that the plaintiffs conceded or abandoned.

### III.   THE COURT SHOULD GRANT RECONSIDERATION AND DISMISS THE PLAINTIFFS' FRAUD CLAIM BECAUSE IT MISAPPLIED THE LAW.

As the Court held that carbon neutral is "ambiguous," *Dorris*, 2024 WL 112843, at *5, the Court should grant reconsideration on the fraud claim because Danone did not make a false statement of fact. The fraud claim must also be dismissed because the Court misapprehended the law governing fraudulent intent and "reconsideration is appropriate if a court 'misinterpreted or misapplied' relevant case law." *Homa*, 2019 WL 2193462, at *2; *see also Sarachek*, 2019 WL 3456888, at *2, *4 (granting defendants' motion for reconsideration where "the Court misapplied the law and failed to provide a lawful justification for the denial of the motion").

The federal rules apply a heightened pleading standard to fraud claims to "'safeguard[] defendant's reputation and goodwill from improvident charges of wrongdoing.'" *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990) (citation omitted); *accord Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir. 1996) (heightened pleading standard "protect[s] defendants whose reputation may be harmed by meritless claims of fraud"); *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996) ("Rule 9(b) serves to . . . protect professionals from the harm that comes from being subject to fraud charges . . . 'absent some factual basis'" (citation omitted")).

22

"[T]he Second Circuit has 'repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent.'" *Dalewitz v. P&G Co.*, 2023 WL 6215329, at *4 (S.D.N.Y. Sept. 22, 2023) (Román, J.) (quoting *United States ex rel. Tessler v. City of New York*, 712 F. App'x 27, 29 (2d Cir. 2017)); *see also Dorris*, 2024 WL 112843, at *12 ("The Second Circuit requires 'plaintiffs to plead the factual basis which give rise to a strong inference of fraudulent intent.'" (citation omitted)). "[I]t is well-settled that a company's general profit motive is insufficient to plead scienter." *Reyes v. Upfield US Inc.*, 2023 WL 6276685, at *11 (S.D.N.Y. Sept. 26, 2023); *cf. Landesbank Baden–Wurttemberg v. Goldman, Sachs & Co.*, 478 F. App'x 679, 681 (2d Cir. 2004) ("general profit motive common to all corporations" not sufficient).

This Court agrees with this proposition and repeatedly has held that "a defendant['s] 'generalized motive to satisfy consumers' desires [or] increase sales and profits' is "***not sufficient*** to establish fraudulent intent." *Bardsley*, 2022 WL 814034, at *14 (emphasis added) (citation omitted) (dismissing claim); *see also Wargo v. Hillshire Brands Co.*, 599 F. Supp. 3d 164, 178 (S.D.N.Y. 2022) (Román, J.) (same); *Warren*, 592 F. Supp. 3d at 287 (same).

Contrary to these holdings, however, in its January 10 decision the Court concluded that the plaintiffs sufficiently pled fraudulent intent because they alleged "greenwashing," which is meant to "capitaliz[e] on the growing demand for environmentally sound Products . . . to induce consumers to purchase the Product at a higher price." *Dorris*, 2024 WL 112843, at *13 (quoting FAC ¶¶ 24-25, 50-51, 53). These allegations amount to nothing more than alleging that Danone sought to "increase sales and profits," which is "not sufficient to establish fraudulent intent." *Bardsley*, 2022 WL 814034, at *14 (citation omitted). Moreover, if simply alleging that a company engaged in greenwashing was sufficient to plead fraudulent intent, any company could be sued for fraud simply because they make an environmental claim. That is not the law. *See, e.g., Duchimaza*

23

*v. Niagara Bottling, LLC*, 619 F. Supp. 3d 395, 417 (S.D.N.Y. 2022) (dismissing claim that 100% recyclable was fraudulent where complaint alleged that the defendant "marketed [the product] to 'capitalize on consumer demand for "green product,"'" which was "insufficient to give rise to a strong inference of fraudulent intent" (citation omitted)).

Moreover, Danone "link[s] to its website on the back label and directs consumer[s] to 'learn more' about its carbon neutral certification." *Dorris*, 2024 WL 112843, at *7. This public disclosure of information negates any intent to deceive as a matter of law and "fl[ies] in the face of any purported fraud claim." *Dash v. Seagate Tech. (US) Holdings, Inc.*, 2015 WL 1537543, at *3 (E.D.N.Y. Apr. 1, 2015) (dismissing fraud claim where plaintiff alleged that defendant's "website contain[ed] accurate information . . . while the product packaging falsely exaggerates such information"); s*ee also Kramer v. Time-Warner, Inc.*, 937 F.2d 767, 778 (2d Cir. 1991) (holding no "hint of any intent to deceive" in light of public disclosures); *Hodsdon*, 162 F. Supp. 3d at 1027 (affirming dismissal of CLRA claim where information was "readily available to consumers on [defendant's] website"); *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 356 (S.D.N.Y. 2011) ("The mere fact of that disclosure undermines any credible theory of scienter.").

Because the plaintiffs did not plead a deceptive statement or fraudulent intent, the Court should grant reconsideration and dismiss the fraud claim.

## IV.    THE BREACH OF EXPRESS WARRANTY CLAIM SHOULD BE DISMISSED.

The Court should grant reconsideration and dismiss the California breach of express warranty claim because "[a]n ambiguous statement is insufficient to create an express warranty." *Kennard v. Kellogg Sales Co.*, 2022 WL 4241659, at *7 (N.D. Cal. Sept. 14, 2022); *see also id.* ("a statement must be 'specific and unequivocal'" (quoting *Maneely v. GM Corp.*, 108 F.3d 1176, 1181 (9th Cir. 1997))). Thus, the Court's holding that carbon neutral is an "ambiguous term"

necessarily precludes the creation of an express warranty and sustaining the claim was clear error. *See Scruggs*, 2023 WL 8263364, at *8 (granting reconsideration and dismissing breach of express warranty claim); *Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 241 (S.D.N.Y. 2021) ("[I]f the Court concludes as a matter of law that there is no material misrepresentation in this case, none of Plaintiffs' claims can survive"); *Wallace v. Wise Foods, Inc.*, 2021 WL 3163599, at *3 (S.D.N.Y. July 26, 2021) (dismissing breach of express warranty claim "[b]ecause the Court has already determined that the . . . labeling is unlikely to deceive or mislead a reasonable consumer").

## V.   THE DERIVATIVE UNJUST ENRICHMENT CLAIM MUST BE DISMISSED.

"Under California law, '[u]njust enrichment is not a cause of action, just a restitution claim.'" *Dorris*, 2024 WL 112843, at *12 (alteration in original) (citation omitted). Where an unjust enrichment claim "is predicated on the same conduct" as a statutory claim, "the two claims . . . rise or fall together." *In re Intel Corp. CPU Mktg., Sales Pracs. & Prod. Liab. Litig.*, 2023 WL 7211394, at *1 n.3 (9th Cir. Nov. 2, 2023).

Because the plaintiffs do not plausibly allege a CLRA claim (*see* Section I.A), their derivative unjust enrichment claim must be dismissed. *See Hartwich v. Kroger Co.*, 2021 WL 4519019, at *6 (C.D. Cal. Sept. 20, 2021) ("[Plaintiff's] UCL, CLRA, and FAL claims fail, and the unjust enrichment claim is likewise dismissed."); *Weiss v. Trader Joe's Co.*, 2018 WL 6340758, at *8 (C.D. Cal. Nov. 20, 2018) (dismissing unjust enrichment claim), *aff'd sub nom. Weiss v. Trader Joe's*, 838 F. App'x 302 (9th Cir. 2021); *Hovsepian v. Apple, Inc.*, 2009 WL 5069144, at *5 (N.D. Cal. Dec. 17, 2009) ("Because [plaintiff] . . . has failed to allege a substantive claim for relief, the claim for unjust enrichment also will be dismissed without leave to amend.").

## <u>CONCLUSION</u>

For these reasons, Danone respectfully requests that the Court grant its motion for partial reconsideration of the January 10 decision and dismiss the plaintiffs' FAC in its entirety.

Dated: January 24, 2024

Respectfully submitted,

*/s/ Keara M. Gordon*
Keara M. Gordon
Colleen Carey Gulliver
**DLA PIPER LLP**
1251 Avenue of the Americas
New York, New York 10020
Tel.: (212) 335-4500
Fax: (212) 335-4501
keara.gordon@us.dlapiper.com
colleen.gulliver@us.dlapiper.com
haley.torrey@us.dlapiper.com

George Gigounas*
**DLA PIPER LLP**
555 Mission Street, Suite 2400
San Francisco, CA 94105
Tel.: (415) 836-2500
Fax.: (415) 836-2501
george.gigounas@us.dlapiper.com

*Admitted *pro hac vice*

*Counsel for Defendant Danone Waters of America*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that on January 24, 2024, the foregoing Memorandum of Law in

Support of Danone's Motion for Partial Reconsideration was served on the following counsel via

electronic mail:

**BURSOR & FISHER, P.A.**
Philip Lawrence Fraietta
Max Stuart Roberts
1330 Avenue of the Americas 32nd Floor
New York, NY 10019
646-837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com
          mroberts@bursor.com

*Attorneys for the plaintiffs*

Dated: January 24, 2024

                                                    */s/ Keara M. Gordon*
                                                    Keara M. Gordon