UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/14/2024
```

STEPHANIE DORRIS and JOHN AXIOTAKIS,
*individually and on behalf of all others similarly
situated*,

                              Plaintiffs,

        -against-

DANONE WATERS OF AMERICA,

                              Defendant.

No. 22 Civ. 8717 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

    Plaintiffs Stephanie Dorris and John Axiotakis (together, "Plaintiffs") commenced this putative class action against Defendant Danone Waters of America ("Defendant" or "Danone") alleging false and misleading advertising and marketing of Defendant's "Evian Natural Spring" bottled water. In Plaintiffs' First Amended Complaint ("FAC"), they brought claims for violations of the consumer protection statutes of New York, Massachusetts, and California, breach of express and implied warranties, unjust enrichment, and fraud. On January 10, 2024, this Court granted in part and denied in part Defendant's motion to dismiss the FAC. Defendant now brings a partial motion to reconsider (the "Motion") related to this Court's prior ruling on Defendant's motion to dismiss. For the following reasons, the Court GRANTS the Defendant's partial motion to reconsider and dismisses the balance of Plaintiffs' claims with leave to amend.

## BACKGROUND

### I.    Procedural Background

    Plaintiffs commenced this putative class action by filing their Complaint on October 13, 2022. ("Compl.," ECF No. 1.) On December 6, 2022, the Parties jointly sought an extension of time for Plaintiffs to file an Amended Complaint and for Defendant to file its response, which the

Court granted on the same day. (ECF Nos. 6-7.) On January 5, 2023, Plaintiffs filed the FAC (ECF No. 8). Briefing related to the Defendant's motion to dismiss then followed.

On January 10, 2024, this Court granted in part and denied in part Defendant's motion to dismiss. (ECF No. 31) On January 30, 2024, the parties filed a joint letter motion for extension of time related to the partial motion to reconsider, which was granted. (ECF No. 32) On March 27, 2024, Defendant filed its motion for reconsideration (ECF No. 37) along with its Memorandum of Law in Support. (ECF No. 38) Plaintiffs filed their Memorandum of Law in Opposition on the same day (ECF No. 39) followed by Defendant's Reply Memorandum of Law (ECF No. 40).

Plaintiffs bring their claims on behalf of all persons in the United States who purchased the product (the "Class"), as well as a class of persons who purchased the Product in California (the "California Subclass") and a class of persons who purchased the Product in Massachusetts (the "Massachusetts Subclass") (together, the "Subclasses"). (FAC ¶¶ 55-57.)

## II.    Factual Background

The Court assumes the parties' familiarity with the factual background and will only briefly summarize relevant facts for purposes of resolving this Motion. Plaintiffs bring this class action after purchasing bottles of Evian Natural Spring Water. On both the packaging and on the physical water bottles are labels that indicate that the bottles are "Carbon Neutral." Alongside the carbon neutral label is the logo for "Carbon Trust" a third-party agency that certifies if a company or product is carbon neutral according to the international PAS 2060 standard.[1] The labeling on the bottles and its packaging also prominently displays a disclosure that Evian sources its water from the French Alps.

---

[1] The PAS 2060 standard was developed by the British Standards Institution. The standard is a list of requirements for organizations to achieve in order to be "carbon neutral." *PAS 2060: The Ideal Standard For Carbon Neutrality*, ECOACT, https://info.eco-act.com/hubfs/0%20-%20Downloads/PAS%202060/PAS%202060%20factsheet%20EN.pdf (last visited Dec. 22, 2022).







Plaintiffs bought Evian's water because they understood the carbon neutral labeling to mean that "the Product's manufacturing did not produce CO2 or otherwise cause pollution." (FAC ¶¶ 11, 12.) According to the FAC, neither of the Plaintiffs would have made their purchases had they known that the product did, in fact, produce CO2—particularly because Evian charges a substantial premium for its environmentally friendly representations. (*Id*. at 9, 12.) Plaintiffs allege that Evian's practice of labeling its products "carbon neutral" despite producing carbon emissions is a form of "greenwashing." As Plaintiff explains it,

"'[g]reenwashing is the process of conveying a false impression or providing misleading information about how a company's products are more environmentally sound … [C]ompanies engaged in greenwashing typically exaggerate their claims or the benefits in an attempt to mislead consumers.' Companies make greenwashing claims to 'capitalize on the growing demand for environmentally sound products.'" (*Id*. at 24.)

## LEGAL STANDARD

The standard governing motions for reconsideration under S.D.N.Y. Local Civil Rule 6.3 "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). It is within the sound discretion of the district court to grant a motion to reconsider. *See Mendell ex rel. Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir.1990). But district courts will only amend a judgment "to correct a clear error of law or prevent manifest injustice." *In re Assicurazioni Generali, S.P.A.*, 592 F.3d 113, 120 (2d Cir. 2010).

## DISCUSSION

On January 10, 2024, the Court granted Defendant's motion to dismiss Plaintiffs' claims for violation of GBL §§ 349-350 and breach of implied warranty. The Court also denied Defendant's motion to dismiss Plaintiffs' claims for violations of Chapter 93A, violations of the CLRA, breach of express warranty, unjust enrichment, and fraud.

The Court previously premised its analysis of the Chapter 93A and CLRA claims with the understanding that "carbon neutral" was a "technical and scientific" term that was "unfamiliar to and easily misunderstood" by reasonable consumers. The Court noted that Merriam-Webster contained two definitions of "carbon neutral," which both contained technical words with their

own definitions that were not reflected in the definition itself. With this backdrop, the Court held that "carbon neutral" was an ambiguous term that lacked precision and could plausibly mislead a reasonable consumer. In support, the Court also took guidance from the FTC's Green Guides as well as a consumer survey that suggested that twenty-nine percent of the population misunderstood what "carbon neutral" meant and that thirty percent was unfamiliar with the term.[2] Moreover, the Court concluded that it would be premature at this stage to determine as a matter of law that a reasonable consumer could not be misled and that such a determination should be made by a jury. Upon reflection, the Court reconsiders its previous positions.

### Consumer Protection Claims

## I.    Massachusetts General Laws Ch. 93A

Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, §2(a). "Under Chapter 93A, an act or practice is unfair if it falls 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness'; 'is immoral, unethical, oppressive, or unscrupulous'; and 'causes substantial injury to consumers.'" *Walsh v. TelTech Sys., Inc.*, 821 F.3d 155, 160 (1st Cir. 2016) (citing *PMP Assocs. v. Globe Newspaper Co.*, 366 Mass, 593, 321 N.E.2d 915, 917 (1975) (quoting 29 Fed. Reg. 8325, 8355 (1964)). Moreover, to rise to the level of an "unfair" act or practice, "the defendant's conduct must generally be of an egregious, non-negligent nature." *Id.*; *see also Baker v. Goldman, Sachs & Co.*, 771 F.3d 37, 51 (1st Cir. 2014).

---

[2] The consumer survey indicates that forty-one percent of respondents correctly identified the definition of "carbon neutral," while thirty percent did not know what "carbon neutral" meant, and twenty-nine percent misidentified the definition of "carbon neutral." *See* Eliza Carter, Most U.S. Consumers Don't Know What 'Carbon Neutral' Means, MORNING CONSULT (Aug. 2, 2022), https://morningconsult.com/2022/08/02/carbon-neutral-consumer-awareness/.

An act or practice is deceptive pursuant to Chapter 93A "if it possesses a tendency to deceive and if it could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted," *Walsh*, 821 F.3d at 160 (citing *Aspinall v. Philip Morris Cos., Inc.*, 442 Mass. 381, 813 N.E.2d 476, 486–87 (2004) ) (quotation marks omitted), or, in other words, if it has the capacity "to entice a reasonable consumer to purchase the product." *Aspinall*, 813 N.E.2d at 487–88 (noting that this standard is "more difficult to satisfy because it depends on the likely reaction of a reasonable consumer rather than an ignoramus"). "In determining whether an act or practice is deceptive, regard must be had, not to fine spun distinctions and arguments that may be made in excuse, but to the effect which [the act or practice] might reasonably be expected to have upon the general public." *Id.* at 487. "Whether conduct is deceptive is initially a question of fact, to be answered on an objective basis." *Id.* at 486. But the court maintains the role of determining "the outer boundaries of its answer—i.e., the point at which a jury could reasonably only find one way." *Dumont v. Reily Foods Co.*, 934 F.3d 35, 40 (1st Cir. 2019) (citation omitted).

## A. The Reasonable Consumer Standard

Initially, the Court concluded that it was premature to determine if "carbon neutral" was not misleading as a matter of law. In reaching its conclusion, the Court principally relied on *Dumont v. Reily Foods Co.*, 934 F.3d 35 (1st Cir. 2019) and *Downing v. Keurig Green Mountain, Inc.*, No. 1:20-CV-11673-IT, 2021 WL 2403811 (D. Mass. June 11, 2021). In *Dumont*, a pack of coffee contained a front label that read "freshly ground," "100% Arabica Coffee," "Hazelnut Crème," "Medium Bodied," and "Rich, Nutty Flavor." The plaintiff thought that "Hazelnut Crème" meant that the coffee contained actual hazelnut, which it did not. The *Dumont* Court held that it was for a jury, and not a court, to determine if a reasonable consumer could be misled by such a label. Following *Dumont*'s guidance, this Court held that "carbon neutral" was analogous

6

to "crème," and concluded that a jury would be better suited to determine if a reasonable consumer would be misled by it.[3] Further, this Court looked to *Downing* for support that Defendant's back label and link to website did not cure the ambiguity there. The Court noted "[r]easonable consumers are not expected to look beyond misleading representations on the front of the container" or "to do research." 2021 WL 4203811, at *6.

Upon reflection, the Court finds that *Dumont* and *Downing* are inapposite. The *Dumont* court noted that the case before it was a "close question." 934 F.3d at 41. The court noted that a consumer may find reasonable assurance in the front label and that there would be no need to consult the back label, particularly because there was an industry convention for that type of product that such disclosures would be made on the front label. So too in *Downing*. There, coffee pods were labeled as "recyclable" even though only 30% of pods were considered recyclable by facilities that accepted them, and most facilities did not. The *Downing* court found that reasonable assurances could be taken from the front label there because of a governing regulation that indicated that "if any component limits the ability to recycle an item, any recyclable claim would be deceptive." *See* 16 C.F.R. § 260.12(d). Further, the regulation states that if the item is "not accepted in recycling programs, it should not be marketed as recyclable." *Id*. But here, there is no such industry convention or governing regulation that provides assurances to consumers about the veracity or clarity of the front label. The absence of which tips the balance in favor of Defendant's

---

[3] Moreover, the Court now finds that Plaintiffs claims are much more akin to those in *Bush v. WellPet*, LLC, 534 F. Supp. 3d 179 (D. Mass. 2021) than those in *Dumont v. Reily Foods Co.*, 934 F.3d 35, 40 (1st Cir. 2019). In *Bush*, Plaintiffs claimed that a product's label of "grain free" was misleading because they though it meant "gluten free" and the product did, in fact, contain gluten. The *Bush* court held that Plaintiff's understanding was unreasonable as a matter of law because it was premised on a logical fallacy "that is, a non sequitur, the first premise of which (gluten is a grain) is demonstrably false." 534 F. Supp. 3d at 185. So too here. Plaintiffs' understanding of "carbon neutral" is that it means carbon zero, which is demonstrably false. As the FAC admits, carbon zero products do not exist, so the idea that carbon neutral is misleading because it is not carbon zero is similarly premised on a logical fallacy. To hold otherwise would lead to the absurd result that every product that represents itself as carbon neutral, though true, would be misleading absent a lengthy disclosure about its definition of carbon neutral and the underlying standards and evaluation process that qualify it.

argument that the back label should have been consulted. The back label would have provided the consumer with a link to Evian's website to learn more. On Defendant's website, there is a fuller explanation of what "carbon neutral" means—e.g., "contributing to reduce our emissions day after day" and that any "emissions that remain are then offset through our work with Livelihood Funds that has planted 130 million trees." Evian's website would also link to Carbon Trust's website for a fuller explanation of the certification process and relevant standards. These sorts of disclosures mitigate concerns of consumers being misled at the point of sale. *See Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 82 (1st Cir. 2020) (concluding that website disclosures mitigate concerns over unethical omissions at the point of sale and that to hold otherwise would require disclosures on product packaging that would be too lengthy). Unlike *Dumont* or *Downing*—which were close questions—without a convention of disclosure on the front label or governing regulation that says otherwise, the Court concludes that a reasonable consumer would be expected to look beyond the front label to learn more about the representation and consult other additional information available.

### B. The Federal Trade Commission's Green Guides

In its initial decision, this Court held that the FTC Green Guides supported its conclusion that a reasonable consumer could be misled by Defendant's labeling. The Court now reconsiders this position. Chapter 93A is informed by FTC regulations. *Downing v. Keurig Green Mountain, Inc.*, No. 1:20-CV-11673-IT, 2021 WL 2403811, at *5 (D. Mass. June 11, 2021) (citing Mass. Gen. Laws ch. 93A § 2(b)). The FTC published the Green Guides as guidance "to help marketers avoid making environmental marketing claims that are unfair or deceptive" under the FTC Act. 16 C.F.R. § 260.1. Specifically, the regulation provides:

> Unqualified general environmental benefit claims are difficult to interpret and likely convey a wide range of meanings. In many cases, such claims likely convey

8

that the product, package, or service has specific and far-reaching environmental benefits and may convey that the item or service has no negative environmental impact. Because it is highly unlikely that marketers can substantiate all reasonable interpretations of these claims, marketers should not make unqualified general environmental benefit claims.

16 C.F.R. § 260.4(b). Plaintiffs allege "'carbon neutral' is precisely the type of 'unqualified general environmental benefit' claim that the FTC cautions marketers not to make." (FAC ¶ 36.) And that the Green Guides "illustrate" how the term "carbon neutral" may be unfair or deceptive as an unqualified or not clearly explained environmental marketing claim. (Pl. Opp. at 12.) This Court initially held that "carbon neutral" may plausibly deceive and mislead as a type of general environmental benefit claim that the FTC warns against. But upon closer review, the examples that 16 C.F.R. § 260.4 provides to illustrate what sort of claims should not be made do not seem to square with the term at issue here. For example, the sample terms provided in 16 C.F.R. § 260.4 include "eco-friendly," "greener," "eco-smart," and "environmentally friendly." All of which seem more general and vaguer than the term "carbon neutral," which speaks to a more specific method to be "eco-friendly," "greener," "eco-smart," and "environmentally friendly." Moreover, the FTC's guidance warns of claims that "convey a wide range of meanings" and the Court previously noted that there are only two codified definitions of "carbon neutral," which does not include "carbon zero."[4] Defendant points to Guides for the Use of Environmental Marketing Claims, 87 Fed. Reg. 77766 and 16 C.F.R. § 260.6 as support that carbon neutral is a specific environmental claim. But 87 Fed. Reg. at 77768 is a section under which the FTC is seeking comment on specific issues and there is no mention in this section that the FTC considers "carbon neutral" to be a specific environmental claim. Similarly, 16 C.F.R. § 260.6 does not clarify the FTC's position on "carbon neutral" as either a general or specific claim. All of this to say, the exact contours of the

---

[4] Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/carbon-neutral (last visited Nov. 10, 2024).

Green Guides are not clear. But upon reconsideration, the Court presumes without holding that "carbon neutral" is not a general environmental claim. Accordingly, the Court does not find that the Green Guides support the conclusion that "carbon neutral" is a misleading claim.

### C. Plaintiff's Consumer Survey

The Court previously held that the allegations in Plaintiffs' FAC were sufficient to support its claims. Plaintiffs proffer that "nearly sixty percent of American consumers do not understand what the term 'carbon neutral' means." (FAC ¶ 26 (citation omitted).) Moreover, "reasonable consumers often mistake 'carbon neutral' for 'carbon zero or carbon free,'" even if "carbon zero" products do not currently exist. (FAC ¶ 28 (citation omitted).) But upon closer examination of Plaintiffs' cited survey, forty-one percent of the population understood what carbon neutral meant while thirty percent did not know what carbon neutral meant. Therefore, the population that actually misunderstood carbon neutral's definition was twenty-nine percent of the sample group. Regardless of the sample size—whether twenty-nine percent or sixty percent—the extent to which there is confusion about what carbon neutral means is not the question. The relevant question is "whether the label had the capacity to mislead consumers, *acting reasonably under the circumstances*." *Dumont v. Reily Foods Co.*, 934 F.3d 35, 40 (1st Cir. 2019) (emphasis added). In other words, the Court must decide if a reasonable consumer would have looked to the back label of a product for clarity and consulted the other additional information available when confronted with an unfamiliar or ambiguous term on the front label. The Court now concludes that a reasonable consumer would have done just that. Moreover, a reasonable consumer would have been put on notice by the disclosure on the front label that Evian's water was sourced from the French Alps as a context clue that the product could not have reasonably been carbon zero and would have looked to other available information for clarity. Accordingly, though the consumer

survey does provide some evidence that some consumers might not understand what "carbon neutral" means, it ultimately does not fully answer the relevant question that must be resolved— would the label have misled a reasonable consumer acting reasonably under the circumstances. This Court now holds that a reasonable consumer would have inquired further and consulted the additional information available.

## II.    California Consumers Legal Remedies Act

California's CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices listed in this subdivision undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). Like Chapter 93A claims, the CLRA is subject to the "reasonable consumer" test—plaintiff must show "members of the public are likely to be deceived" by the product packaging. *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "The reasonable consumer standard requires more than a mere possibility that the label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.' … it requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023) (citations omitted). Put another way, there must be a "meaningful capacity to deceive consumers" and "a plaintiff's unreasonable assumptions about a product's label will not suffice." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021).

In its original decision, the Court overlooked two key decisions that would have altered its conclusion that it could not determine as a matter of law that a reasonable consumer would not be misled by the Plaintiff's labeling. The Court overlooked *Moore v. Trader Joe's Co.*, 4 F.4th 874

(9th Cir. 2021) and *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093 (9th Cir. 2023). The Court will now incorporate both into its analysis.

*Moore* is directly apposite. In *Moore*, the Ninth Circuit addressed whether a product label that read "100% Manuka Honey" could reasonably mislead a consumer. There, the Plaintiff believed that the product labeled indicated that it was honey that was 100% derived from the Manuka flower. The court noted that there was some ambiguity as to what "100%" modified— whether it meant to indicate that it was honey that was 100% Manuka Honey, that it was honey that was 100% derived from the Manuka flower (as the Plaintiff believed), or that it was honey that was 100% from New Zealand. Despite this ambiguity, the court relied on "the general principle that deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used." *Moore*, 4 F.4th at 882 (citation omitted). With this guidance, the court held that the additional information available to consumers cured any ambiguity. The court further explained that the information that should be considered by consumers is not limited to just the ingredient label but should also include "contextual inferences from the product itself and its packaging." *Id*. The court noted three context clues that should have put Plaintiff on notice that their interpretation of the label was not reasonable: (1) the impossibility of making a honey that is 100% derived from one floral source, (2) the low price of Trader Joe's Manuka Honey, and (3) the presence of the "10+" on the label, all of which was displayed on the product and readily available to consumers. The *Moore* court made sure to explain that a reasonable consumer is not expected to be an expert in honey, but they also cannot reasonably expect Trader Joe's to promise something that is impossible to find and that such an expectation would not be reasonable. Moreover, the court concluded that the Plaintiff should have been suspicious of the low price of Manuka Honey, which is normally quite costly.

12

And finally, though the "10+" label contained no other details as to what it meant, it "puts a reasonable consumer on notice that it must represent *something* about the product itself." *Id*. at 884 (emphasis in original). As a result, the court held that the Plaintiff should have inquired further to better understand the product label's claims. 4 F.4th at 883. If they had, they would have been dissuaded of their "unreasonable or fanciful" interpretation. *Id*.

Here, there are similar context clues on the product and its packaging that should have put Plaintiffs on notice that their interpretation of "carbon neutral" was not reasonable. First, and as the FAC admits, there is no such thing as a "carbon zero" product. Second, even if there was confusion about the possibility of the product being "carbon zero," the front of the package prominently displays a disclosure that Evian sources its water from the French Alps, which then traveled from France to California and Massachusetts to Plaintiff's local BJ's and Amazon distribution center. Plaintiffs could not have reasonably believed that this transportation process would have produced zero carbon emissions. Third, on the backside of the product is the Carbon Trust logo. Similar to the "10+" label in *Moore*, there are no further details that disclose what this logo means, but it should have put a reasonable consumer on notice that it meant *something* about the product in relation to its "carbon neutral" claim. And finally, there was a link adjacent to the Carbon Trust logo that brought consumers to Evian's website where there was a fuller explanation of what "carbon neutral" meant. Taken together, all these context clues should have put Plaintiff on notice that their understanding was not reasonable.

*Moore* also provides a fuller understanding of what the reasonable consumer standard requires. For example, it makes clear that the reasonable consumer standard does not make room for a plaintiff's "unreasonable" or "fanciful" interpretations of labels. *Id*. at 883. As mentioned, a reasonable consumer is not expected to be an expert of a product, but a reasonable consumer cannot

expect a seller to be "promising something that is impossible to find" and that even the most unsophisticated consumer would understand that. *See Gitson v. Trader Joe's Co.*, No. 13-CV-01333-VC, 2015 WL 9121232, at *1 (N.D. Cal. Dec. 1, 2015) (finding that even the least sophisticated consumer does not think soymilk comes from a cow). Consumer assumptions like the plaintiffs' in *Moore* and *Gitson* indicate that there is a floor to the reasonable consumer standard and when consumers make assumptions about a product that the seller is providing something that is impossible, these consumers do not meet the standard. As courts have said, those interpretations are not just "unreasonable" or "fanciful" but flatly implausible and cannot sustain a claim.

In its original decision, the Court also overlooked *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093 (9th Cir. 2023). *McGinity* stands for the proposition that if "a front label is ambiguous, the ambiguity can be resolved by reference to the back label." 69 F.4th at 1099. In other words, it formally adopts the general principle that "advertising claims should take into account all the information available to consumers and the context in which that information is provided and used." As a result, if there was any ambiguity as to what "carbon neutral" precisely meant it would have been cured not only by the context clues contained on the front of the product and its packaging, but by looking to the product's back label that would have prompted a reasonable consumer to learn more about Defendant's "carbon neutral" claim. Accordingly, the Court now finds that Plaintiffs have failed to properly state a claim under California's CLRA.

**Common Law Claims**

**III.    Breach of Express Warranty**

    *a.   Choice of Law*

The Court already ruled on the applicable choice of law, which it will not rehash again here. Instead, the Court will only review its previous decision on Plaintiffs' claim of breach of express warranty.

    *b.   Breach of Express Warranty*

To assert a claim for breach of express warranty under California law, a plaintiff must prove that "(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal.App.4th 1213, 103 Cal. Rptr. 3d 614, 626 (2010); see also Cal. Com. Code § 2313(1). For a "statement or representation to provide the basis for an express warranty claim, it still must meet the threshold requirement of being material to a reasonable consumer." *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 985 (C.D. Cal. 2015). "Statements on a products label are part of the bargain between buyer and seller, and create express warranties." *LeGrand v. Abbott Lab'ys*, 655 F. Supp. 3d 871, 897 (N.D. Cal. 2023) (citing *Weinstat*, 180 Cal.App.4th at 1227; *Mattero v. Costco Wholesale Corp.*, 336 F. Supp. 3d 1109, 1115-16 (N.D. Cal. 2018) (citing several cases)). To determine whether an express warranty has been made, "courts look to the context of the statement, including other content on the label." *Mattero*, 336 F.Supp.3d at 1116 (statement "environmentally responsible" on defendant's liquid dish soap sufficient to create a warranty). "The determination as to whether a particular statement is an expression of opinion or an affirmation of a fact is often difficult, and frequently is dependent upon the facts and circumstances existing at the time the statement is made." *Keith v. Buchanan*, 173

Cal. App. 3d 13, 21, 220 Cal.Rptr. 392 (1985). Accordingly, "courts liberally construe sellers' affirmations of quality in favor of injured consumers." *Jones v. Nutiva, Inc.*, No. 16-CV-00711-HSG, 2016 WL 5210935, at *9 (N.D. Cal. Sept. 22, 2016) (cleaned up).

Plaintiffs allege Defendant breached its express warranty by representing that the Product was "carbon neutral," meaning that it does not leave a carbon footprint, despite "the manufacturing process of the Product still caus[ing] carbon dioxide to be released into the atmosphere." (FAC ¶¶ 116-17.) For the reasons mentioned above, the Court finds that there was no breach of warranty because there was no misrepresentation on the part of Defendant.

## IV.    Unjust Enrichment

Plaintiffs allege "defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and members of the Class and Subclasses' purchases of the Product."[5] (FAC ¶ 138.) Specifically, Plaintiffs allege Defendant was unjustly enriched "in retaining revenue derived from Plaintiffs' and members' of the Class and Subclasses purchases of the Product" because "Defendant misrepresented that the Product was capable of being composted and charged a price premium based on those representations." (FAC ¶ 138.) Plaintiffs' FAC also seeks restitution for unjust enrichment. (FAC ¶ 139.)

Under California law, there is "not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citation omitted). In California, unjust enrichment and restitution "describe the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'" *Id.* (quoting 55 Cal. Jur. 3d Restitution § 2). Common law principles apply and a party is required to return a benefit when that benefit would unjustly enrich them. *Id.*

---

[5] Plaintiffs state their claim for unjust enrichment is brought under the laws of the States of California and Massachusetts. (FAC ¶ 135.)

Here, there is no fraud, coercion, or request underlying Plaintiffs' claim of unjust enrichment. Accordingly, the Court dismisses Plaintiffs' claim for unjust enrichment.

## V.    Fraud

Defendant challenges Plaintiffs' fraud claims on the grounds that Plaintiffs failed to adequately plead fraudulent intent. (Def. Mem. 20-21.) Specifically, Defendant argues that Plaintiffs put forth conclusory allegations insufficient to "establish a strong inference—or any inference—of fraudulent intent." (*Id.* at 21.) The Court now agrees.

Generally, to state a cause of action for fraud, a plaintiff must plead facts: (1) that Defendant made a false misrepresentation; (2) that Defendant had knowledge of its falsity; (3) that Defendant intended to defraud the plaintiff; (4) that plaintiff justifiably relied on the false misrepresentation; and (5) that plaintiff suffered damages. *See, e.g.*, *Myers v. Wakefern Food Corp.*, No. 20 CIV. 8470 (NSR), 2022 WL 603000, at *7 (S.D.N.Y. Mar. 1, 2022) (citation omitted); *Sullivan v. Five Acres Realty Tr.*, 487 Mass. 64, 166 N.E.3d 463, 472 (2021); *Kalnoki v. First Am. Tr. Servicing Sols., LLC*, 8 Cal. App. 5th 23, 214 Cal. Rptr. 3d 292, 301 (2017). The Second Circuit requires "plaintiffs to plead the factual basis which give rise to a strong inference of fraudulent intent. *Myers*, 2022 WL 603000, at *7 (S.D.N.Y. Mar. 1, 2022) (quoting *United States ex rel. Tessler v. City of New York*, 712 F. App'x 27, 29 (2d Cir. 2017)). "This inference may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 337 (E.D.N.Y. 2018) (internal citations and quotation marks omitted).

Plaintiffs allege Defendant engages in intentional "greenwashing" by "conveying a false impression or providing misleading information about how a company's products are more

environmentally sound." (FAC ¶ 24.) "Companies engaged in greenwashing typically exaggerate their claims or the benefits in an attempt to mislead consumers." (*Id.*) Plaintiffs allege Defendant "preys" on consumers by charging a higher price for the Product based on the "carbon neutral" representation, "capitaliz[ing] on the growing demand for environmentally sound Products. (FAC ¶¶ 24-25, 50-51, 53.)

The Court previously distinguished cases cited by Defendant. *See Spurck v. Demet's Candy Co., LLC*, No. 21 CV 05506 (NSR), 2022 WL 2971957, at *6 (S.D.N.Y. July 27, 2022) (plaintiff alleged fraudulent intent is "evinced by [Defendant's] knowledge that the Product was not consistent with its representations."); *Myers*, 2022 WL 603000, at *8 (plaintiff alleged fraudulent intent is "evinced by [Defendant's] failure to accurately disclose the attributes and qualities of the Product when it knew not doing so would mislead consumers.") (cleaned up); *Santiful v. Wegmans Food Markets, Inc.*, No. 20-CV-2933 (NSR), 2022 WL 268955, at *7 (S.D.N.Y. Jan. 28, 2022) (plaintiff alleged fraudulent intent is "evinced by [Defendant's] failure to accurately identity the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and mislead consumers."); *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 808 (S.D.N.Y. 2021) (plaintiff alleged fraudulent intent is "evinced by [Defendant's] failure to accurately identify the Products on the front label when it knew this was not true."). The Court then held that Plaintiffs' claims went "a bit further" than those cases by establishing a clear motive. The Court held that by Defendant putting the misleading "carbon neutral" label on its product to make it appear more environmentally friendly made it more attractive to consumers and allowed Defendant to charge more. The Court also considered Plaintiffs' allegations that consumers "seek[] out ostensibly eco-friend products" as sufficient to establish motive.

The Court overlooked that motive requires "concrete benefits." *See Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996). Motives that are generally possessed by most corporate directors and officers are not considered "concrete benefits." *See Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001). For example, courts have found "concrete benefits" when the defendant made false statements to delay a criminal prosecution. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994). But it is well-settled in this circuit that a defendant's self-interested desire to increase sales or profits is a general motive without concrete benefits and is, therefore, insufficient. *See Chill*, 101 F.3d at 268. The Second Circuit has noted that "[w]hile some fraud may go unpunished as a result of [the] heightened pleading standard … we cannot eliminate all opportunities for 'unremedied fraud' without creating opportunities for 'undeserved settlements.'" *Shields*, 25 F.3d at 1130. Here, though Plaintiffs claims go a bit further in that they do more than provide a conclusory statement of the alleged scheme to defraud Plaintiff, they do not provide a specific motive sufficient to establish a strong inference of fraudulent intent. Instead, Plaintiffs only provide a generalized motive of ""capitalizing on the growing demand for environmentally sound Products … to induce consumers to purchase the Product at a higher price." (FAC ¶¶ 24-25, 50-51, 53). These are generalized motives of increased sales and profits, not specific motives with "concrete benefits." Accordingly, Plaintiffs have failed to properly plead motive.

In the alternative, Plaintiffs can also establish fraudulent intent by demonstrating "conscious misbehavior." Courts have found "conscious behavior" when there are enough facts to show that a defendant knowingly made misrepresentations related to a sale. *See Cosmas v. Hassett*, 886 F.2d 8 (2d Cir.1989) (finding that defendant knowingly made misrepresentations related to a sale because they knew of import restrictions that would make such sales highly improbable). But unlike in *Cosmas*, Plaintiff has not pled sufficient facts to show that Defendant knowingly made

misrepresentations at the point of sale. Namely, because Defendant's representations are technically true and relevant disclosures are made available to consumers. Accordingly, Plaintiffs' fraud claim is dismissed for failure to state a claim.

## Leave to Amend

Courts are to "freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has counseled courts not to dismiss a complaint with prejudice prior to issuing a ruling that highlights the "precise defects" of those claims. *Williams v. Citigroup Inc.,* 659 F.3d 208, 214 (2d Cir. 2011) (per curiam). Accordingly, the Court dismisses Plaintiffs' claims without prejudice, granting leave to amend.

## CONCLUSION

For the forgoing reasons, Defendant's motion to reconsider is GRANTED. The Court dismisses Plaintiffs' claims for (1) violation of Chapter 93A; (2) violation of CLRA; (3) breach of express warranty; (4) unjust enrichment; and (5) fraud.

As Plaintiffs' First Amended Complaint was the first complaint for which motion practice occurred, the claims the Court dismisses are deemed dismissed without prejudice and the parties are granted leave to file amended pleadings. Specifically, Plaintiffs are granted leave to file a Second Amended Complaint by December 13, 2024, consistent with this Order. Plaintiffs are advised that the Second Amended Complaint will replace, not supplement, the First Amended Complaint, and so any claims that they wish to pursue must be included in, or attached to, the Second Amended Complaint. Should Plaintiffs file a Second Amended Complaint, Defendant is directed to answer or otherwise respond by January 13, 2024. If Plaintiffs fail to file a Second Amended Complaint within the time allowed, those claims that were dismissed without prejudice will be deemed dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 37.

Dated:    November 14, 2024                                    SO ORDERED:
          White Plains, New York


                                             _____
                                                    NELSON S. ROMÁN
                                                 United States District Judge